IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EXODUS HEBERT, ANTONIO MONROE, DAMEN GONZALEZ, DELEON MOFFETT, GEORGE GARCIA, JEREMIAH BROWN, ISAIHA HERRING, THAILAN HOPKINS, SHIRICE HENDRIX, DARRION LONGSTREET, ANTWON TOMPKIN, IVAN JOHNSON, KEYSHAWN NICHOLS, JESSE GARZA, NYREE DUGANS, ANTJUAN DAVIS, AMARU EVANS, ROBERT "RAVEN" MELTON, QURAN BROOMFIELD, DASHEEM PICKENS, and DELCHEVA HARRIS, on behalf of themselves and all others similarly situated, | No. 24-cv-07950<br><br>Jury Demand |
| Plaintiffs, | |
| v. | |
| ILLINOIS DEPARTMENT OF CORRECTIONS, ILLINOIS DEPARTMENT OF JUVENILE JUSTICE, and ILLINOIS STATE BOARD OF EDUCATION, | |
| Defendants. | |

## COMPLAINT

1.      This case is brought on behalf of young people with disabilities in the custody of the Illinois Department of Corrections ("IDOC"), who want to turn their lives around by earning their high school diplomas so they can be employed upon their release and positively contribute to their community.  The law is clear: students with disabilities aged 18 through the school year in which they turn 22 are entitled to special education and high school education, as well as equal access to education, while in the custody of adult correctional facilities.  Defendants bear the responsibility of providing and monitoring the delivery of such special education and high school

services. They have consistently and systemically failed to fulfill this duty by not having a policy or practice of: (i) identifying eligible students; (ii) notifying eligible students of their right to these educational services; (iii) having any special education services and high school credit-bearing courses; and (iv) providing special education or high school credit-bearing courses.[1]

2. Accordingly, to remedy Defendants' failures and to obtain the education they are entitled to, Plaintiffs Exodus Hebert, Antonio Monroe, Damen Gonzalez, Deleon Moffett, George Garcia, Jeremiah Brown, Isaiha Herring, Thailan Hopkins, Shirice Hendrix, Darrion Longstreet, Antwon Tompkin, Ivan Johnson, Keyshawn Nichols, Jesse Garza, Nyree Dugans, Antjuan Davis, Amaru Evans, Robert "Raven" Melton, Quran Broomfield, Dasheem Pickens, and Delcheva Harris (collectively, "Named Plaintiffs") on behalf of themselves and all similarly situated individuals (collectively, "Named Plaintiffs and class members"), by their undersigned counsel, bring this Complaint against Defendants IDOC, the Illinois Department of Juvenile Justice ("IDJJ"), and the Illinois State Board of Education ("ISBE") (together, "Defendants").

3. The Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq*. ("IDEA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act"); and the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq*. ("ADA") require that Defendants establish systems, policies, and procedures in order to ensure the provision of—and equal access to—a Free Appropriate Public Education ("FAPE") for students with disabilities. The provision of a FAPE includes, but is not limited to, special education and related services, and high school programming.

---

[1] One person who was incarcerated in an IDOC facility, but is not a Named Plaintiff, received very limited credit bearing high school education services pursuant to a confidential settlement agreement.

4.      Defendants' obligations extend beyond the provision of a FAPE.  Under the IDEA, Defendants must proactively identify, locate, and evaluate incarcerated adult students who have not yet graduated and were eligible for special education at their last educational placement prior to incarceration in order to provide them with a FAPE.  The IDEA also affords various due process protections to students with disabilities.  Pertinently, this includes the obligation for Defendants to notify these students of their right to special education and related services upon their entry into IDOC.

5.      Named Plaintiffs and class members, as qualified students under the IDEA, are entitled to receive a FAPE in the least restrictive environment (the "LRE").  Each of them has an Individualized Education Program ("IEP"), as provided for by the IDEA.  Defendants have failed to establish any system or practice for identifying individuals who had IEPs and did not have high school diplomas upon entering IDOC.  Defendants have likewise failed to establish any system or practice for notifying these individuals of their rights, as they are required to do under federal law. Because Defendants lack any system or practice to notify individuals of their rights, Named Plaintiffs and class members have been unaware of their rights to special education or high school programming.  As such, the two-year statute of limitations for asserting their IDEA rights is tolled until the date they knew or should have known of their right to a FAPE while in the custody of IDOC.

6.      Despite the clear mandates of the IDEA, the Rehabilitation Act, the ADA, and implementing state and federal regulations, Defendants have, ***for almost twenty years***, systemically and completely denied the specialized instruction and related services mandated by the IDEA, thereby depriving Named Plaintiffs and class members of their right to a FAPE.

7.      IDOC, IDJJ, and ISBE have failed to provide Named Plaintiffs and class members with any of their special education rights and/or high school education upon entering IDOC. There is no special education or high school programming in place within IDOC facilities, and Named Plaintiffs and class members have not received any such education or programming while in the custody of IDOC.

8.      IDOC, IDJJ, and ISBE have wholly failed to comply with their legal obligations—under both federal and state law—to provide appropriate and equal access to education to students with disabilities in IDOC's custody. Defendants have failed to establish *any* policies or practices to ensure students with disabilities in IDOC's custody are provided a FAPE, to identify students who had an IEP prior to entering IDOC with preexisting special education needs who do not have a high school diploma, or to notify students in IDOC's custody of their substantive and procedural rights under the IDEA. This lack of policies, practices and support has prevented Named Plaintiffs and class members from making meaningful progress in their education and has increased the likelihood of long-term negative economic outcomes, including an increased likelihood of recidivism and re-incarceration.

9.      Named Plaintiffs are, or were at the time of their entry into IDOC, students with disabilities who had an IEP at their last school placement and have not yet earned a high school diploma. Despite being eligible for special education services under the IDEA, these students were not identified by the Defendants as being eligible for services, were not notified of their right to receive special education and high school education, and have not received *any* form of specialized instruction, high school credit-bearing courses, or necessary related services, leaving them without the educational support they need to make progress towards their educational goals and without the opportunity to receive a high school diploma or equivalency.

4

10.     The experiences of Named Plaintiffs are emblematic of IDOC and IDJJ's systemic failures to provide a FAPE.  The violations set forth in this Complaint are not the result of an isolated error or mistake.  Rather, these violations are the result of a widespread failure to attend to the educational welfare and needs of students with disabilities who have not yet earned their high school diploma and are in IDOC's custody.  For almost twenty years, IDOC and IDJJ have knowingly and systemically failed to implement policies, procedures, and practices to provide or otherwise ensure that Named Plaintiffs and class members receive the special education and related services to which they are entitled under the IDEA, Rehabilitation Act, Illinois state law, and corresponding state and federal regulations, and have discriminated against Named Plaintiffs and class members in violation of the Rehabilitation Act and the ADA.

11.     Defendant ISBE, as the State Educational Agency ("SEA"), is also complicit in this systemic failure, neglecting its obligations to provide guidance regarding, to administer federal funding for, and to monitor and ensure the provision of special education and related services in compliance with applicable federal and state law.

12.     As detailed below, Defendants' actions and inactions are causing severe harm to Named Plaintiffs and class members, who are members of a vulnerable student population.  Unlike students in the community who have access to alternative educational resources, these individuals cannot enroll in another high school district, or access equivalent educational resources elsewhere. They are entirely dependent on Defendants to provide the special education, high school credit-bearing courses, and related services to which they are entitled.  As a result of Defendants' failures to do so, Named Plaintiffs and class members are deprived of any meaningful ability to obtain a high school diploma or GED.  They are likewise deprived of any meaningful opportunity to access IDOC's vocational programs—which could prepare them for post-release employment—as those

programs require the attainment of a high school diploma or GED. The likely results of this deprivation are negative economic outcomes of not being able to obtain work, leading to an increased likelihood of recidivism. Without this Court's swift intervention, Named Plaintiffs and class members will continue to struggle toward meeting their educational goals without the critical supports they need, causing irreparable educational harm.

13.     Accordingly, Named Plaintiffs, students with disabilities who have been deprived of special education, bring this action for declaratory, injunctive, and other equitable relief against the Defendants, on behalf of themselves and others similarly situated, to challenge Defendants' systemic failure to comply with the IDEA, 20 U.S.C. §§ 1400 *et seq*., its federal and state regulations, 34 C.F.R. §§ 300 *et seq*., 105 ILCS 5/14-1.02, 23 Ill. Adm. Code § 226, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), its federal regulations, 34 C.F.R. §§ 104 *et seq*., and the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq*., its implementing regulations, and 105 ILCS 5/13-40.

14.     Named Plaintiffs, individually and on behalf of members of the class and subclasses, seek: (i) a declaration that Defendants have violated and are violating the IDEA, the Rehabilitation Act, the ADA, and 105 ILCS 5/13-40; (ii) an injunction requiring Defendants to immediately establish systems, policies, and procedures to: identify eligible students; notify eligible students of their rights; establish special education and high school curriculum; and ensure the provision of special education services and related services and high school education to Named Plaintiffs and class members; and (iii) other relief described below.

## JURISDICTION AND VENUE

15.     This action is brought under the IDEA, 20 U.S.C. §§ 1400 *et seq*., under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and under the ADA, 42 U.S.C. §§ 12101, *et seq*. This Court has jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331

and 1343, and 20 U.S.C. § 1415(i)(2).  The venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Named Plaintiffs and class members' claims occurred in this district.

16.    Sovereign immunity is waived as to all claims.  *See* 20 U.S.C. § 1403(a); 42 U.S.C. § 2000d-7(a)(1); 42 U.S.C. § 12202.

## EXHAUSTION

17.    The exhaustion requirements of the IDEA, 20 U.S.C. §§ 1415(i)(2) and 1415(i)(3)(A), do not deprive this Court of jurisdiction to hear Named Plaintiffs' systemic claims and to award systemic relief.  Neither Named Plaintiffs nor the class members are required to exhaust their administrative remedies before proceeding with this class action under the IDEA.

18.    Named Plaintiffs, for themselves and on behalf of the class, allege structural and systemic failures by IDOC, IDJJ, and ISBE and seek system-wide reforms.  As IDOC and IDJJ successfully argued in administrative hearings, hearing officers lack jurisdiction to hear systemic claims and grant systemic relief.  Requiring Named Plaintiffs and the class members to exhaust their claims through due process hearings would be futile and inadequate.

19.    Nonetheless, in two separate proceedings, certain Named Plaintiffs *did* attempt to litigate their systemic claims and seek systemic relief before the Illinois State Board of Education in a due process hearing.  These claims were stricken by the administrative hearing officers as being outside of their jurisdiction.   The hearing officers' orders are attached hereto as Exhibits 1 and 2.

20.    Although exhaustion is not a jurisdictional requirement, Named Plaintiffs Exodus Hebert and Antonio Monroe exhausted their administrative remedies under the IDEA.  These Named Plaintiffs completed the IDEA administrative hearing process and received Final Determinations and Orders on their individual claims, attached hereto as Exhibits 3 and 4.  In this

action, Exodus Hebert and Antonio Monroe are pursuing only the systemic claims that were stricken from their due process complaints.

21.     Thus, to the extent that exhaustion is required by IDEA, 20 U.S.C. §§ 1415(i)(2) and 1415(i)(3)(A), Named Plaintiffs Exodus Hebert and Antonio Monroe completed the IDEA hearing process, received a due process hearing decision, and exhausted their administrative remedies.  Under the doctrine of vicarious exhaustion, only one Named Plaintiff needs to have exhausted his or her administrative remedies.  The remaining Named Plaintiffs and the class members need not individually exhaust their administrative remedies.

22.     The ADA and Section 504 have no exhaustion requirement.

## PARTIES

### A.     NAMED PLAINTIFFS

23.     Named Plaintiff Exodus Hebert is a 23-year-old student with a disability.  Mr. Hebert entered IDOC on March 25, 2021, at 20 years old, and is currently in IDOC custody at the Joliet Treatment Center.  Upon entering IDOC, Mr. Hebert had an IEP, dated March 7, 2018, from the Illinois Department of Juvenile Justice District 428.  Mr. Hebert does not have his high school diploma or GED.  At IDOC, Mr. Hebert was not asked if he was a special education student and was not informed that he was entitled to special education and high school education.  After entering IDOC, all students must take the Test of Adult Basic Education ("TABE").  This test measures an individual's academic achievement in the areas of reading and writing and assigns a score that is equivalent to a grade level.  Students must achieve above a 6.0 to take pre-GED classes and above an 8.0 to take the GED preparation course.  Mr. Hebert took the TABE upon entering IDOC and received a 3.0 in reading and a 2.0 in math.  Due to his low TABE score, he was not eligible to enroll in GED or pre-GED classes.  Mr. Hebert filed an administrative due process hearing to request special education services.  In preliminary motions, the Impartial Hearing

Officer denied Mr. Hebert's request for systemic relief to change the entire system as the Hearing Officer ruled that he can only award individual relief. Thereafter, on May 6, 2024, at the close of the due process hearing, the Impartial Hearing Officer found that Mr. Hebert had been denied a FAPE while in IDOC. Despite this finding, Mr. Hebert has yet to receive the specialized instruction or related services as mandated by his IEP and ordered by the hearing officer. Mr. Hebert has not received any special education, related services, or high school credit-bearing courses since his incarceration at IDOC. Without a diploma or GED, Mr. Hebert has not been able to enroll in vocational programming.

24.     Named Plaintiff Antonio Monroe is a 21-year-old student with a disability. Mr. Monroe entered IDOC on February 4, 2022, at 19 years old, and is currently in IDOC custody at the Pinckneyville Correctional Center. Upon entering IDOC, Mr. Monroe had an IEP, dated December 6, 2017, from the Peoria Public School District 150. Mr. Monroe does not have his high school diploma or GED. At IDOC, Mr. Monroe was not asked if he was a special education student and was not informed that he was entitled to special education and high school education. Mr. Monroe was never administered the TABE. Mr. Monroe filed an administrative due process hearing to request special education services. In preliminary motions, the Impartial Hearing Officer denied Mr. Monroe's request for systemic relief to change the entire system as the Hearing Officer ruled that he can only award individual relief. Thereafter, on May 21, 2024, at the close of the due process hearing, the Impartial Hearing Officer found that Mr. Monroe had been denied a FAPE and ordered him to receive special education and high school credit-bearing courses. Despite this finding, Mr. Monroe has yet to receive any of the services ordered by the hearing officer. Mr. Monroe has not received any special education, related services, or high school credit-

bearing courses since his incarceration at IDOC. Without a diploma or GED, Mr. Monroe has not been able to enroll in vocational programming.

25.    Named Plaintiff Damen Gonzalez is a 24-year-old student with a disability. Mr. Gonzalez entered IDOC on March 2, 2018, at 18 years old, and is currently in IDOC custody at the Shawnee Correctional Center. Upon entering IDOC, Mr. Gonzalez had an IEP, dated February 21, 2017, from Valley View Community Unit School District 365-U. Mr. Gonzalez does not have his high school diploma or GED. At IDOC, Mr. Gonzalez was not asked if he was a special education student and was not informed that he was entitled to special education and high school education. He took the TABE upon entering IDOC and scored below a 6.0 overall. Due to his low TABE score, he was not eligible to enroll in GED or pre-GED classes. Despite his efforts to pursue education, Mr. Gonzalez has not received any special education, related services, or high school credit-bearing courses since his incarceration at IDOC. Without a diploma or GED, Mr. Gonzalez has not been able to enroll in vocational programming.

26.    Named Plaintiff Deleon Moffett is an 18-year-old student with a disability. Mr. Moffett entered IDOC on January 13, 2023, at 18 years old, and is currently in IDOC custody at the Pinckneyville Correctional Center. Upon entering IDOC, Mr. Moffett had an IEP, dated February 21, 2021, from Rantoul High School District 193. Mr. Moffett does not have his high school diploma or GED. At IDOC, Mr. Moffett was not asked if he was a special education student and was not informed that he was entitled to special education and high school education. He took the TABE upon entering IDOC and scored below a 6.0 overall. Due to his low TABE score, he was not eligible to enroll in GED or pre-GED classes. Despite his efforts to pursue education, Mr. Moffett has not received any special education, related services, or high school credit-bearing

courses since his incarceration at IDOC. Without a diploma or GED, Mr. Moffett has not been able to enroll in vocational programming.

27. Named Plaintiff George Garcia is a 21-year-old student with a disability. Mr. Garcia entered IDOC on October 13, 2022, at 19 years old. He entered IDOC again on May 14, 2024, and is currently in IDOC custody at the Shawnee Correctional Center. Upon entering IDOC, Mr. Garcia had an IEP, dated June 6, 2019, from Collinsville Community Unit School District 10. Mr. Garcia does not have his high school diploma or GED. At IDOC, Mr. Garcia was not asked if he was a special education student and was not informed that he was entitled to special education and high school education. He took the TABE upon entering IDOC and scored below a 6.0 overall. Due to his low TABE score, he was not eligible to enroll in GED or pre-GED classes. Despite his efforts to pursue education, Mr. Garcia has not received any special education, related services, or high school credit-bearing courses since his incarceration at IDOC. Without a diploma or GED, Mr. Garcia has not been able to enroll in vocational programming.

28. Named Plaintiff Jeremiah Brown is a 20-year-old student with a disability. Mr. Brown entered IDOC on January 27, 2023, at 18 years old, and is currently in IDOC custody at the Illinois River Correctional Center. Upon entering IDOC, Mr. Brown had an IEP, dated March 1, 2018, from Joliet Public Schools District 86. Mr. Brown does not have his high school diploma or GED. At IDOC, Mr. Brown was not asked if he was a special education student and was not informed that he was entitled to special education and high school education. He took the TABE upon entering IDOC and received a 3.0 overall. Due to his low TABE score, he was not eligible to enroll in GED or pre-GED classes. Despite his efforts to pursue education, Mr. Brown has not received any special education, related services, or high school credit-bearing courses since his

incarceration at IDOC.  Without a diploma or GED, Mr. Brown has not been able to enroll in vocational programming.

29.     Named Plaintiff Isaiha Herring is a 20-year-old student with a disability.  Mr. Herring entered IDOC on January 22, 2022, at 18 years old.  Mr. Herring's parent institution at IDOC is the Joliet Treatment Center.  He is currently on a court writ at Peoria County Jail but remains in IDOC legal custody.  Mr. Herring does not have his high school diploma or GED.  Upon entering IDOC, Mr. Herring had an IEP, dated May 10, 2016, from Peoria School District 150.  At IDOC, Mr. Herring was not asked if he was a special education student and was not informed that he was entitled to special education and high school education.  He took the TABE upon entering IDOC and received a 2.0 score overall.  Due to his low TABE score, he was not eligible to enroll in GED or pre-GED classes.  Despite his efforts to pursue education, Mr. Herring has not received any special education, related services, or high school credit-bearing courses since his incarceration at IDOC.  Without a diploma or GED, Mr. Herring has not been able to enroll in vocational programming.

30.     Named Plaintiff Thailan Hopkins is a 19-year-old student with a disability.  Mr. Hopkins entered IDOC on March 6, 2023, at 18 years old, and is currently in IDOC custody at the Menard Correctional Center.  Upon entering IDOC, Mr. Hopkins had an IEP, dated February 1, 2019, from the Illinois Department of Juvenile Justice 428.  Mr. Hopkins does not have his high school diploma or GED.  At IDOC, Mr. Hopkins was not asked if he was a special education student and was not informed that he was entitled to special education and high school education. He took the TABE upon entering IDOC and got a 1.5 score overall.  Due to his low TABE score, he was not eligible to enroll in GED or pre-GED classes.  Despite his efforts to pursue education, Mr. Hopkins has not received any special education, related services, or high school credit-bearing

courses since his incarceration at IDOC. Without a diploma or GED, Mr. Hopkins has not been able to enroll in vocational programming.

31. Named Plaintiff Shirice Hendrix is a 26-year-old student with a disability. Mr. Hendrix entered IDOC on September 29, 2016, at 19 years old, and is currently in IDOC custody at the Menard Correctional Center. Upon entering IDOC, Mr. Hendrix had an IEP from Macon-Piatt Special Education District. Mr. Hendrix does not have his high school diploma or GED. At IDOC, Mr. Hendrix was not asked if he was a special education student and was not informed that he was entitled to special education and high school education. He took the TABE upon entering IDOC and scored below a 6.0 overall. Due to his low TABE score, he was not eligible to enroll in GED or pre-GED classes. Despite his efforts to pursue education, Mr. Hendrix has not received any special education, related services, or high school credit-bearing courses since his incarceration at IDOC. Without a diploma or GED, Mr. Hendrix has not been able to enroll in vocational programming.

32. Named Plaintiff Darrion Longstreet is a 23-year-old student with a disability. Mr. Longstreet entered IDOC on May 20, 2019, at 18 years old. Mr. Longstreet's parent institution is Pinckneyville Correctional Center. Mr. Longstreet is currently on parole but remains in the legal custody of IDOC. Upon entering IDOC, Mr. Longstreet had an IEP, dated May 13, 2011, from Rockford Public School District 205. Mr. Longstreet does not have his high school diploma or GED. At IDOC, Mr. Longstreet was not asked if he was a special education student and was not informed that he was entitled to special education and high school education. He took the TABE upon entering IDOC and scored below a 6.0 overall. Due to his low TABE score, he was not eligible to enroll in GED or pre-GED classes. Despite his efforts to pursue education, Mr. Longstreet has not received any special education, related services, or high school credit-bearing

courses since his incarceration at IDOC.  Without a diploma or GED, Mr. Longstreet has not been able to enroll in vocational programming.

33.  Named Plaintiff Antwan Tompkin is a 23-year-old student with a disability.  Mr. Tompkin entered IDOC on August 4, 2020, at 19 years old, and is currently in IDOC custody at the Sheridan Correctional Center.  Upon entering IDOC, Mr. Tompkin had an IEP, dated April 6, 2017, from Cahokia Community Unit School District 187.  Mr. Tompkin does not have his high school diploma or GED.  At IDOC, Mr. Tompkin was not asked if he was a special education student and was not informed that he was entitled to special education and high school education.  He took the TABE upon entering IDOC and scored below a 6.0 overall.  Due to his low TABE score, he was not eligible to enroll in GED or pre-GED classes.  Despite his efforts to pursue education, Mr. Tompkin has not received any special education, related services, or high school credit-bearing courses since his incarceration at IDOC.  Without a diploma or GED, Mr. Tompkin has not been able to enroll in vocational programming.

34.  Named Plaintiff Ivan Johnson is a 37-year-old student with a disability.  Mr. Johnson entered IDOC on April 11, 2008, at 21 years old, and is currently in IDOC custody at the Western Correctional Center.  Upon entering IDOC, Mr. Johnson had an IEP, dated May 5, 2002, from Chicago Public Schools District 299.  Mr. Johnson does not have his high school diploma or GED.  At IDOC, Mr. Johnson was not asked if he was a special education student and was not informed that he was entitled to special education and high school education.  He took the TABE upon entering IDOC and scored below a 6.0 overall.  Due to his low TABE score, he was not eligible to enroll in GED or pre-GED classes.  Despite his efforts to pursue education, Mr. Johnson has not received any special education, related services, or high school credit-bearing courses since

his incarceration at IDOC. Without a diploma or GED, Mr. Johnson has not been able to enroll in vocational programming.

35.     Named Plaintiff Keyshawn Nichols is a 24-year-old student with a disability. Mr. Nichols entered IDOC on August 9, 2018, at 17 years old, and is currently in IDOC custody at the Pinckneyville Correctional Center. Upon entering IDOC, Mr. Nichols had an IEP, dated November 7, 2016, from Peoria School District 150. Mr. Nichols does not have his high school diploma or GED. At IDOC, Mr. Nichols was not asked if he was a special education student and was not informed that he was entitled to special education and high school education. He took the TABE upon entering IDOC and scored below a 6.0 overall. Due to his low TABE score, he was not eligible to enroll in GED or pre-GED classes. Despite his efforts to pursue education, Mr. Nichols has not received any special education, related services, or high school credit-bearing courses since his incarceration at IDOC. Without a diploma or GED, Mr. Nichols has not been able to enroll in vocational programming.

36.     Named Plaintiff Jesse Garza is a 23-year-old student with a disability. Mr. Garza entered IDOC on March 25, 2022, at 20 years old, and is currently in IDOC custody at the Dixon Correctional Center. Upon entering IDOC, Mr. Garza had an IEP, dated March 12, 2018, from Glenbard Township High School District 87. Mr. Garza does not have his high school diploma or GED. At IDOC, Mr. Garza was not asked if he was a special education student and was not informed that he was entitled to special education and high school education. He took the TABE upon entering IDOC and scored a 1.0. Due to his low TABE score, he was not eligible to enroll in GED or pre-GED classes. Despite his efforts to pursue education, Mr. Garza has not received any special education, related services, or high school credit-bearing courses since his

incarceration at IDOC. Without a diploma or GED, Mr. Garza has not been able to enroll in vocational programming.

37.     Named Plaintiff Nyree Dugans is a 22-year-old student with a disability. Mr. Dugans entered IDOC on September 14, 2020, at 18 years old, and is currently in IDOC custody at the Western Correctional Center. Upon entering IDOC, Mr. Dugans had an IEP, dated April 3, 2018, from Chicago Public Schools District 299. Mr. Dugans does not have his high school diploma or GED. At IDOC, Mr. Dugans was not asked if he was a special education student and was not informed that he was entitled to special education and high school education. He took the TABE upon entering IDOC and scored a 1.0 in math and a 2.0 in reading. Due to his low TABE score, he was not eligible to enroll in GED or pre-GED classes. Despite his efforts to pursue education, Mr. Dugans has not received any special education, related services, or high school credit-bearing courses since his incarceration at IDOC. Without a diploma or GED, Mr. Dugans has not been able to enroll in vocational programming.

38.     Named Plaintiff Antjuan Davis is a 24-year-old student with a disability. Mr. Davis entered IDOC on January 27, 2021, at 21 years old, and is currently in IDOC custody at the Dixon Correctional Center. Upon entering IDOC, Mr. Davis had an IEP, dated May 29, 2018, from Chicago Public Schools District 299. Mr. Davis does not have his high school diploma or GED. At IDOC, Mr. Davis was not asked if he was a special education student and was not informed that he was entitled to special education and high school education. He took the TABE upon entering IDOC and scored below a 6.0 overall. Due to his low TABE score, he was not eligible to enroll in GED or pre-GED classes. Despite his efforts to pursue education, Mr. Davis has not received any special education, related services, or high school credit-bearing courses since his

incarceration at IDOC. Without a diploma or GED, Mr. Davis has not been able to enroll in vocational programming.

39. Named Plaintiff Amaru Evans is a 22-year-old student with a disability. Mr. Evans entered IDOC on December 16, 2022, at 20 years old, and is currently in IDOC custody at the Sheridan Correctional Center. Upon entering IDOC, Mr. Evans had an IEP, dated October 1, 2019, from Mattoon Community Unit School District 2. Mr. Evans does not have his high school diploma or GED. At IDOC, Mr. Evans was not asked if he was a special education student and was not informed that he was entitled to special education and high school education. He took the TABE upon entering IDOC and his scores ranged from a 2.0 to a 3.5. Due to his low TABE score, he was not eligible to enroll in GED or pre-GED classes. Despite his efforts to pursue education, Mr. Evans has not received any special education, related services, or high school credit-bearing courses since his incarceration at IDOC. Without a diploma or GED, Mr. Evans has not been able to enroll in vocational programming.

40. Named Plaintiff Robert "Raven" Melton is a 20-year-old student with a disability. Ms. Melton entered IDOC on November 6, 2023, at 19 years old, and is currently in IDOC custody at the Big Muddy Correctional Center. Upon entering IDOC, Ms. Melton had an IEP, dated August 4, 2022 from Hononegah Community High School District 207. Ms. Melton does not have her high school diploma or GED. At IDOC, Ms. Melton was not asked if she was a special education student and was not informed that she was entitled to special education and high school education. She took the TABE upon entering IDOC and her scores ranged from a 5.0 in Reading to an 8.0 in Math. Due to her score, she was not eligible to enroll in GED or pre-GED classes. Despite her efforts to pursue education, Ms. Melton has not received any special education, related services,

or high school credit-bearing courses since his incarceration at IDOC. Without a diploma or GED, Ms. Melton has not been able to enroll in vocational programming.

41.     Named Plaintiff Quran Broomfield is a 19-year-old student with a disability. Mr. Harris entered IDOC on July 15, 2024, at 18 years old, and is currently in IDOC custody at Big Muddy Correctional Center. Upon entering IDOC, Mr. Broomfield had an IEP dated May 3, 2024 from Woodstock Community Unit School District 200. Mr. Broomfield does not have his high school diploma or GED. At IDOC, Mr. Broomfield was not asked if he was a special education student and was not informed that he was entitled to special education and high school education. Mr. Broomfield has not been given the TABE and therefore is not eligible to enroll in GED or pre-GED classes. Despite his efforts to pursue education, Mr. Broomfield has not received any special education, related services, or high school credit-bearing courses since his incarceration at IDOC. Without a diploma or GED, Mr. Broomfield has not been able to enroll in vocational programming.

42.     Named Plaintiff Dasheem Pickens is a 21-year-old student with a disability. Mr. Pickens entered IDOC on July 1, 2021, at 18 years old, and is currently in IDOC custody at the Sheridan Correctional Center. Upon entering IDOC, Mr. Pickens had an IEP, dated May 14, 2018, from Racine Unified School District. Mr. Pickens does not have his high school diploma or GED. At IDOC, Mr. Pickens was not asked if he was a special education student and was not informed that he was entitled to special education and high school education. He took the TABE upon entering IDOC and scored below a 6.0 overall. Due to his low TABE score, he was not eligible to enroll in GED or pre-GED classes. Despite his efforts to pursue education, Mr. Pickens has not received any special education, related services, or high school credit-bearing courses since his incarceration at IDOC. Without a diploma or GED, Mr. Pickens has not been able to enroll in vocational programming.

43.     Named Plaintiff Delcheva Harris is a 31-year-old student with a disability.  Mr. Harris entered IDOC on February 14, 2014, at 20 years old, and is currently in IDOC custody at the Centralia Correctional Center.  Upon entering IDOC, Mr. Harris had an IEP from East St. Louis District 189.  Mr. Harris does not have his high school diploma or GED.  At IDOC, Mr. Harris was not asked if he was a special education student and was not informed that he was entitled to special education and high school education.  He took the TABE upon entering IDOC and scored below a 6.0 overall.  Due to his low TABE score, he was not eligible to enroll in GED or pre-GED classes.  Despite his efforts to pursue education, Mr. Harris has not received any special education, related services, or high school credit-bearing courses since his incarceration at IDOC.  Without a diploma or GED, Mr. Harris has not been able to enroll in vocational programming.

## B.     DEFENDANTS

44.     Defendant IDOC is a department of the Illinois state government responsible for operating the adult state prison system.  Established in 1970, IDOC oversees a network of correctional facilities across the state, including maximum, medium, and minimum-security prisons.  The department is led by a director appointed by the Governor of Illinois, with its headquarters located in Springfield.  IDOC's mission includes increasing public safety by promoting positive change in offender behavior, operating successful reentry programs, and reducing victimization.  Within operating successful reentry programs, they have obligations such as providing educational programs mandated by federal and state laws.  As a state-run correctional facility, IDOC is a subdivision of the state that is mandated to provide appropriate educational and support services under the IDEA to individuals with disabilities.  34 C.F.R. § 300.2(b)(1)(iv).  Despite these obligations, as well as supplemental state laws and regulations mandating the provision of special education to eligible students, IDOC has failed to ensure that students with

disabilities in its custody receive the specialized instruction and related services mandated by their IEPs. *See* 105 ILCS 5/14 1.02; 105 ILCS 5/13-40; 20 IAC 405.20(a)(1)(B), (d)(3).

45.　　Defendant IDJJ is a department of the Illinois state government that serves as the state juvenile corrections agency. IDJJ operates several Illinois Youth Center juvenile facilities across the state, all of which contain a school. As a public agency, IDJJ has an obligation to provide students with a FAPE under the IDEA, the ADA, and Illinois statutes. 34 C.F.R. § 300.2(b)(1)(iv). Established on July 1, 2006, IDJJ was formed to take over the management of juvenile facilities previously overseen by IDOC. At this time, IDJJ was also designated as the responsible Local Educational Agency ("LEA") for IDOC. Pursuant to 105 ILCS 5/13-40, IDJJ is the school district responsible for the education of youth housed within IDOC who have not yet earned a high school diploma or high school equivalency and are 21 years old or under. IDJJ was also assigned to provide educational programs allowing students the opportunity to attain the achievement level equivalent to the completion of the twelfth grade in the public school system. 730 ILCS 5/3-6-2. Despite its mandate to provide rehabilitative services, including educational programs, to eligible individuals in IDOC's custody, IDJJ has failed to ensure that students with disabilities in IDOC's custody receive the specialized instruction and related services mandated by their IEPs. Eligibility for special education expanded in 2021 to allow students to remain eligible for special education services if they turn 22 during the school year and for the remainder of that school year. *See* 2021 Ill. Legis. Serv. 102-172 (West) (modifying 105 ILCS 5/14-1.02); Ill. Admin. Code tit. 23 § 226.50(c)(4).

46.　　Defendant ISBE is a recipient of federal funds under the IDEA and is mandated by the IDEA to ensure that all children with disabilities in Illinois between the ages of three and the school year in which they turn 22 receive a FAPE. 20 U.S.C. § 1412(a)(11). This mandate

includes supervision of IDJJ to ensure that the requirements of the IDEA are met. ISBE is the
SEA within the meaning of the IDEA. ISBE is also responsible for maintaining and administering
the dispute resolution system, including due process hearings and mediation.

## CLASS ACTION ALLEGATIONS

47.     Named Plaintiffs bring this action on behalf of themselves and all others similarly
situated. The putative class consists of all persons who, as of June 1, 2006 or at any time thereafter,
(1) are or will be in the legal custody of IDOC; (2) entered IDOC prior to the expiration of their
special education eligibility and are or were eligible to receive special education; (3) had an IEP
from their last education placement at the time they entered IDOC custody and had not yet received
their high school diploma; and (4) are being, will be, or were denied special education services
and high school education while in the legal custody of IDOC. The putative class consists of two
subclasses:

> **Current and Future Eligible Subclass:** All persons who as of the filing of the Complaint
> or at any time thereafter, (1) are or will be in the legal custody of IDOC; (2) entered IDOC
> custody prior to the expiration of their special education eligibility and are eligible to
> receive special education; (3) had an IEP from their last educational placement at the time
> they entered IDOC custody and had not yet received their high school diploma; and (4) are
> being or will be denied special education services and high school education while in the
> legal custody of IDOC.

> **Formerly Eligible Subclass:** All persons who as of June 1, 2006 or at any time thereafter,
> (1) are in the legal custody of IDOC; (2) entered IDOC custody prior to the expiration of
> their special education eligibility and are now past the age of eligibility; (3) had an IEP
> from their last educational placement at the time they entered IDOC custody and had not
> yet received their high school diploma; and (4) have been denied special education services
> and high school education while in the legal custody of IDOC.

48.     The requirements of Rules 23(a)(1)-(4) and (b)(2) of the Federal Rules of Civil
Procedure are met as to the class and subclasses for the following reasons:

(A)     The class and subclasses are so numerous that joinder of all members of the class and subclasses is impracticable.  In addition, there is an unknown number of future class members, as the prison population is transient.

(B)     There are questions of law and fact common to the class and subclasses, namely whether Defendants have systemically deprived special education students in IDOC custody of a FAPE by failing to establish the systems, policies, and procedures necessary to identify, notify, establish, and provide special education and high school education programming and related services to eligible individuals.

(C)     The claims of Named Plaintiffs are typical of the claims of the class and subclasses in that each of the Named Plaintiffs has not yet received his or her high school diploma and has an IEP that requires special education and/or related services, but has not received any such education or services while in IDOC custody. No Named Plaintiffs were identified by Defendants as being eligible for special education services and no Named Plaintiffs were notified of their right to receive special education and high school education.

(D)     Named Plaintiffs will fairly and adequately represent and protect the interests of the class and subclasses.  They have no interests that are antagonistic to the class or subclasses and seek relief that will benefit all members of the class and subclasses.  They are represented by counsel with significant experience with this type of litigation.

(E)     Defendants have acted and continue to act on grounds generally applicable to the class and subclasses, thereby making appropriate final injunctive relief and  corresponding declaratory relief with respect to the class and subclasses as a whole.

## STATUTORY BACKGROUND

**A.     INDIVIDUALS WITH DISABILITIES EDUCATION ACT**

49.     In 1975, Congress enacted the Education for All Handicapped Children Act, now known as the Individuals with Disabilities Education Act, or IDEA, to ensure that the rights of children with disabilities are protected.  20 U.S.C. § 1400(d)(1)(B).

50.     The primary mandate of the IDEA is to guarantee that all children with disabilities have access to a FAPE that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living. 20 U.S.C. § 1400(d)(1)(A).

51.     The IDEA is a federal grant program administered by the U.S. Department of Education.  Under the IDEA, the Secretary of Education provides funding to states and certain other entities for the provision of special education and related services.  20 U.S.C. § 1411(a)(1). A state becomes eligible for this funding by submitting a plan to the Secretary showing that it has certain policies and procedures in effect to fulfill the aims of the statute.  20 U.S.C. § 1412(a).  A state that accepts this funding must comply with the mandates contained in the IDEA and its implementing regulations.  34 C.F.R. § 300.2.  Illinois is a "state" under the IDEA. 20 U.S.C. § 1401(31).

52.     Pursuant to the IDEA, a state receiving funding must provide a FAPE to all children with disabilities residing in the state between the ages of 3 and 21.  20 U.S.C. § 1412(a)(1)(A). This is known as the duty to provide a FAPE.  Illinois law and regulations extend this provision to

students through the end of the school year in which they turn 22 years old.  *See* 105 ILCS 5/14-1.02; Ill. Admin. Code tit. 23 § 226.50(c)(4).  *See also* disc. *supra* ¶ 5.

53.     The IDEA requires states to educate students in the LRE, meaning states must have policies and procedures to ensure that "[t]o the maximum extent appropriate, [students] with disabilities . . . are educated with [students] who are not disabled, and special classes, separate schooling, or other removal of [students] with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a [student] is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily."  20 U.S.C. § 1412(a).

54.     States implement the requirements of the IDEA through public entities designated by statute as SEAs and LEAs.  *See* 20 U.S.C. § 1401.  SEAs are the "State board[s] of education or other agenc[ies] or officer[s] primarily responsible for the State supervision of public elementary schools and secondary schools."  *Id.*  LEAs are public boards of education or other public authorities "legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools" in various political subdivisions of the state.  *Id.*

55.     In Illinois, the SEA is Defendant ISBE.  The LEA responsible for ensuring a FAPE is provided to students with disabilities is the resident district for that student.  105 ILCS 5/14-1.11.  For individuals housed within IDOC who have not yet earned a high school diploma or high school equivalency and prior to the expiration of their special education eligibility, the resident school district and LEA is IDJJ's District 428.  *See* 105 ILCS 5/13-40; *see also* 105 ILCS 5/14-1.02.

56.     All states, including Illinois, are responsible for ensuring that all students with disabilities in the state receive a FAPE in accordance with the IDEA. *See* 34 C.F.R. § 300.600. The SEA is responsible for ensuring that the requirements of the IDEA are met. 20 U.S.C. § 1412(a)(11)(A); 34 C.F.R. § 300.149. A state must ensure that when it identifies noncompliance with the requirements of the IDEA by LEAs, the noncompliance is corrected as soon as possible. 34 C.F.R. § 300.600. Furthermore, the IDEA expressly applies to all political subdivisions of the state that are involved in the education of children with disabilities, and state and local juvenile and adult correctional facilities. 34 C.F.R. § 300.2(b)(1)(i), (ii), (iv).

57.     If the SEA determines that a LEA is unable to establish and maintain programs of a FAPE that meet the requirements of the IDEA, then the SEA must provide special education and related services directly to children with disabilities residing in the area served by that LEA, or for whom that state agency is responsible. 20 U.S.C. § 1413(g)(1)(B).

58.     Each LEA is responsible for making a FAPE available for all children with disabilities. 20 U.S.C. § 1413(a)(1). School districts must develop a comprehensive plan, known as an IEP, for meeting the special education needs of each student with a disability. 20 U.S.C. § 1414(d)(2)(A). The duty to provide a FAPE means the provision of special education and related services in conformity with the IEP. 20 U.S.C. § 1401(9)(D).

59.     The LEA must implement an IEP as soon as possible, 34 C.F.R. § 300.323(c)(2), and must propose an appropriate placement for the student that can provide the special education and related services listed in the IEP. 34 C.F.R. § 300.530(a).

60.     The regulations also require the LEA to develop and implement interagency agreements with other state and local agencies that provide or pay for services required by the IDEA for students with disabilities. 34 C.F.R. §§ 300.103(a), 300.154(a).

61.     These FAPE obligations extend to all eligible students in any potential setting, including those in IDOC custody.  *See* Ill. Admin. Code tit. 23 § 226.50.  The IDEA, along with federal and state regulations, mandates a FAPE for all students who are residents of Illinois and makes clear that states are not exempt from providing a FAPE to those in correctional facilities' custody.   20 U.S.C. § 1412(a)(1)(B)(ii); 34 C.F.R. §§ 300.102(a)(2)(i), 300.713(b); 105 ILCS 5/14-1.02; Ill. Admin. Code 226 tit. 23; 730 ILCS 5/3-6-2(d).

62.     ISBE (as the relevant SEA), IDJJ (as the relevant LEA) and IDOC (as a political subdivision of the state that is involved in the education of students with disabilities, *see* 34 C.F.R. § 300.2(b)(1)) have an ongoing obligation under the IDEA to provide a FAPE to students with disabilities in IDOC custody.  *See* 34 C.F.R. § 300.2(b)(1); 105 ILCS 5/13-40.

63.     Substantive and procedural rights under the IDEA apply to students in IDOC's custody unless he or she falls within the statute's limited exception.  20 U.S.C. § 1412(a)(1)(B)(ii); 34 C.F.R. § 300.102(a)(2); Ill. Admin. Code tit. 23 § 226.50(d).  The limited exception is if a student is between 18 and 22 years of age and, "in the last educational placement prior to their incarceration in an adult correctional facility [was] not actually identified as being a child with a disability under § 300.8 and did not have an IEP under Part B of the Act."  34 C.F.R. § 300.102(a)(2)(i); Ill. Admin. Code tit. 23 § 226.50(d).  Named Plaintiffs and class members do not fall within this narrow exception.

## B.     REHABILITATION ACT

64.     Section 504 of the Rehabilitation Act ("Section 504") requires recipients of federal funds that provide educational services to ensure that young people with disabilities have an equal and effective opportunity to access education.

65.     Section 504 prohibits disability discrimination in federally funded programs. It mandates that "[n]o otherwise qualified individual with a disability in the United States…shall,

solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

66.     Defendants are federal funds recipients within the meaning of 29 U.S.C. § 794(b)(2)(B).

67.     Intent to discriminate is not a required element of a Section 504 claim.

68.     Section 504 requires that school districts provide students who qualify as "handicapped persons" with a FAPE.  *See* 34 C.F.R. § 104.33.

69.     Implementation of an IEP developed in accordance with the IDEA is one way to satisfy Section 504's requirement for a FAPE.  34 C.F.R. § 104.33(b)(2).

70.     To fulfill its obligation to provide a FAPE under Section 504, a recipient of federal funds that operates a public elementary or secondary education program must provide annual notice to adult students regarding the recipient's duty under Section 504.  *See* 34 C.F.R. §§ 104.32(b), 104.36.

## C.     AMERICANS WITH DISABILITIES ACT

71.     Title II of the ADA provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.  42 U.S.C. § 12132.

72.     A "public entity" includes state and local governments, their agencies, and their instrumentalities.  42 U.S.C. § 12131(1).

73.     Defendants were, at all times relevant to this action, and currently are "public entities" within the meaning of Title II of the ADA.

74.     The ADA prohibits discrimination against individuals with disabilities in jails and prisons.  *See* 42 U.S.C. § 12132; 29 U.S.C. § 749.

75.     The ADA applies to both adult and juvenile correctional facilities.  28 C.F.R. § 35.152(a).

76.     The ADA requires modifications to ensure that people with disabilities are not excluded from or denied the benefits of the programs as the public entity, as well as prohibiting traditional forms of discrimination, such as disparate treatment or disparate impact.  28 C.F.R. § 35.130(b)(7).

**D.     ILLINOIS SCHOOL CODE**

77.     To increase the effectiveness of the Department of Juvenile Justice and to better serve the interests of the people of Illinois, legislation was passed with the purpose to:

> enhance the quality and scope of education for inmates and wards within the Department of Juvenile Justice so that they will be better motivated and better equipped to restore themselves to constructive and law-abiding lives in the community.  The specific measure sought is the creation of a school district within the Department so that its educational programs can meet the needs of persons committed and so the resources of public education at the state and federal levels are best used, all of the same being contemplated within the provisions of the Illinois State Constitution of 1970 which provides that "A fundamental goal of the People of the State is the educational development of all persons to the limits of their capacities."

105 ILCS 5/13-40.

On July 1, 2006, the IDOC school district was transferred to IDJJ.  *Id.*  IDJJ became responsible for the education of youth within IDJJ and individuals aged 21 or under within IDOC who have not yet earned a high school diploma or a "State of Illinois High School Diploma."  *Id.*

78.     Article 14 of the Illinois School Code defines children with disabilities as "children between the ages of 3 and 21 for whom it is determined, through definitions and procedures

described in the Illinois Rules and Regulations to Govern the Organization and Administration of Special Education, that special education services are needed." 105 ILCS 5/14-1.02.

79.     Children with disabilities who "require[] continued public school educational experience to facilitate his or her successful transition and integration into adult life" are eligible to receive special education services through age 21. *Id.* In 2021, the age of eligibility for special education increased from "through age 21" to "if his or her 22nd birthday occurs during the school year, he or she is eligible to receive special education services through the end of that school year." 105 ILCS 5/14-1.02; *see also* 2021 Ill. Legis. Serv. 102-172 (West). Individuals in IDOC's custody are entitled to this increased eligibility. *See also* disc. supra ¶ 5.

80.     For any child receiving special education, an IEP must be written and agreed upon by appropriate school personnel and parents or their representatives.

81.     Title 23, Section 226 of the Illinois Administrative Code "establishes the requirements for the treatment of children and the provision of special education and related services pursuant to" IDEA, its implementing regulations, and Article 14 of the School Code. Ill. Admin. Code tit. 23 § 226.10.

82.     Under Section 226.10, the "requirements of IDEA, its implementing regulations, and [§ 226] shall apply in every instance when a child is or may be eligible for special education and related services." *Id.*

83.     Illinois school districts are required to make a "FAPE" as defined at 34 C.F.R. § 300.17 available to children with disabilities in accordance with the implementing regulations of the IDEA, 34 C.F.R. § 300.101-103. Ill. Admin. Code tit. 23 § 226.50.

84.     When an eligible student transfers from one district to another within Illinois, provision of FAPE requires that the new district either obtain a copy of the student's current IEP

from the previous district or develop a new IEP for the student.  Ill. Admin. Code tit. 23 §
226.50(a).

## FACTUAL BACKGROUND

### A.   DEFENDANTS' POLICIES AND PRACTICES SYSTEMICALLY VIOLATE FEDERAL LAW

85.   Pursuant to Illinois law, IDJJ's District 428 is the school district responsible for the
education of individuals within IDOC who have not yet earned a high school diploma or high
school equivalency.  *See* 105 ILCS 5/13-40.  This includes responsibility for special
education.  The stated purpose of the law assigning this responsibility to District 428 "is to enhance
the quality and scope of education for inmates and wards within the Department of Juvenile Justice
so that they will be better motivated and better equipped to restore themselves to constructive and
law-abiding lives in the community."  *Id.*  The Illinois Unified Code of Corrections further
provides that "the Department of Juvenile Justice shall provide educational programs for all
committed youth so that all youth have an opportunity to attain the achievement level equivalent
to the completion of the twelfth grade in the public school system in this state."  730 ILCS 5/3-6-
2(d).

86.   Specifically, the Illinois Administrative Code provides that "Adult Division
educational programs shall include . . . [s]pecial education," and that "committed persons may be
eligible to enroll in . . . [s]pecial education regardless of test scores."  Ill. Admin. Code tit. 20
§§ 405.20(a)(1)(B), (d)(3).

87.   IDOC is also legally responsible for ensuring that the special education-eligible
students in its custody receive a FAPE in the LRE, insofar as it must provide access to its facilities
to ensure IDJJ can actually provide eligible students with the services and environment necessary
to effectuate their IEPs.  The IDEA and its implementing regulations explicitly state that its

provisions apply "to all political subdivisions of the State that are involved in the education of children with disabilities, including … [s]tate and local juvenile and adult correctional facilities." 34 C.F.R. § 300.2(b)(1)(iv). Being in charge of both juvenile and adult correctional facilities, IDJJ and IDOC respectively, must adhere to the IDEA.

88.     Despite the mandate in the Illinois Unified Code of Corrections that IDJJ "provide educational programs for all committed youth so that all youth have an opportunity to attain the achievement level equivalent to the completion of the twelfth grade in the public school system in this State," 730 ILCS 5/3-6-2(d), IDOC does not have a school that offers high school credit-bearing classes with special education services. IDOC offers no courses allowing students to receive their high school diploma. Instead, IDOC offers Adult Basic Education ("ABE") and General Education Development ("GED") classes. Individuals in IDOC are only eligible to enroll in GED classes if they have tested out of the ABE program. They must test at or above the 8th-grade level to enroll in GED training. Ill. Admin. Code tit. 20 § 405.20(d)(2). Without special education, accommodations, and modifications, this level of achievement is impossible for many individuals with disabilities. Further, the ABE and GED programs do not satisfy Defendants' obligation to provide a FAPE. The ABE and GED training programs are not high school credit-bearing programs, and do not offer any special education instruction or related services. As Named Plaintiffs and class members require specialized instruction as set forth in their IEPs, the complete lack of special education services in IDOC amounts to a denial of a FAPE.

89.     Further, individuals in IDOC custody seeking to access the ABE and GED programs face long waitlists, with priority given to individuals with earlier outdates. When individuals are enrolled in ABE courses, they can be dropped for disability-related reasons, such as failure to complete work that is above their comprehension level.

90.     ISBE, as the SEA, is mandated by the IDEA to ensure that all children with disabilities in Illinois between the ages of three and twenty-two receive a FAPE. ISBE is responsible for the overall supervision of the LEAs, such as IDJJ, and must ensure that: (1) the requirements of the IDEA are met; and (2) the educational programs for children with disabilities meet State standards and are administered by qualified staff members. 20 U.S.C. §§1412(a)(11)(A), (a)(14)(A).

91.     Defendants have failed to comply with their obligations under federal and state law to provide or otherwise ensure the provision of special education and related services to Named Plaintiffs and all class members. Defendant IDJJ and IDOC have failed to: establish policies and procedures to identify students with disabilities who enter adult correctional facilities; establish policies and procedures to notify such students of their right to a FAPE while in IDOC custody; provide high school credit-bearing courses, special education and related services to students with disabilities in IDOC custody; and correct their failure to provide these students with a FAPE. Defendant IDOC has failed to provide IDJJ with access to its facilities to ensure that IDJJ can provide eligible students with the services and environment necessary to receive a FAPE. Defendant ISBE has failed to ensure that adult students in IDOC custody are being provided a FAPE by their LEA.

92.     Defendants' conduct also discriminates against Named Plaintiffs and class members, who do not receive the same opportunity to access educational programming within IDOC as their non-disabled peers. First, IDOC facilities provide GED programming to incarcerated adults, but access to this programming requires students to obtain a requisite level of achievement on the TABE. Without appropriate educational support and accommodations, students with disabilities struggle to score high enough on the TABE to qualify for GED

programming. Second, IDOC facilities also provide certain forms of vocational training to adults in IDOC custody, but access to these programs requires the attainment of a high school diploma or GED. Because students with disabilities in IDOC do not receive a high school education, and cannot qualify for GED programming given their lack of appropriate educational accommodations, they cannot enter these vocational training programs. Thus, by failing to provide special education services, Defendants effectively screen out students with disabilities from programs to which their non-disabled peers have access. This discrimination is systemic and can be rectified only with declaratory and injunctive relief from this Court.

**B.  DEFENDANTS' FAILURES HAVE DENIED NAMED PLAINTIFFS AND CLASS MEMBERS THEIR RIGHT TO A FAPE**

93.    Defendants have persistently failed to establish the systems, policies, and procedures necessary to fulfill their IDEA obligations. Specifically, Defendants have failed to establish any mechanisms to identify students with disabilities who have an IEP upon their entry into IDOC custody and have not yet received their high school diploma; they have failed to establish any mechanisms to notify eligible students of their right to special education, related services, and high school programming; and they have failed to provide any special education, related services, or high school credit-bearing programming to eligible students with disabilities.

94.    Defendants' systemic failures to provide any special education and related services to individuals in IDOC custody have resulted in the denial of a FAPE to eligible students with disabilities in IDOC custody. These failures have caused significant educational harm to Named Plaintiffs and class members, who are left without any meaningful opportunity to achieve the education necessary to attain the goals of further education and future employment. These failures violate federal and state laws, including the IDEA, the Rehabilitation Act, and the ADA.

95.     Named Plaintiffs and class members recognize that Defendants have recently stated they are making certain limited efforts toward remedying these failures, including: (i) a proposed plan to operate two pilot programs of credit recovery online courses for only ten students each, at only two of thirty-three correctional facilities; and (ii) a plan to convert a current IDJJ facility to a facility that will house people in IDOC custody who are eligible to attend high school, which is not projected to open until the spring of 2025 and will only initially house 20 students.  However, on information and belief, these programs are not solely for students with IEPs, and it is uncertain how and when these programs will be providing special education services.  Moreover, these potential efforts are nascent and have yet to be implemented, despite several years of discussion regarding these needed services, and are woefully inadequate in the number of students served and programming offered.  Such efforts will continue to prove ineffective in curing the systemic deficiencies that exist with respect to the provision of a FAPE to students with disabilities in IDOC facilities.  Only the systemic relief sought herein will remedy the deprivation of a FAPE being suffered by Named Plaintiffs and class members.

96.     Named Plaintiffs and class members, despite being eligible for special education and related services, have not received any such services while in IDOC's custody .  This lack of services is in direct violation of statutory requirements and has significantly impeded Named Plaintiffs' and class members' educational progress.  IDOC and IDJJ have failed to provide the necessary educational services, thereby denying Named Plaintiffs and class members their right to a FAPE.

97.     Named Plaintiffs and class members seek declaratory, injunctive and other equitable relief from this Court to ensure that Defendants comply with their obligations under

federal and state law and provide Named Plaintiffs and class members with special education and related services and high school programming—all of which have been non-existent.

## C. DEFENDANTS' FAILURES ARE CAUSING IRREPARABLE HARM TO NAMED PLAINTIFFS AND CLASS MEMBERS

98.    Defendants' failures described herein cause irreparable harm to students with disabilities who are eligible for, but are not receiving, special education and related services. These irreparable harms include the systematic deprivation of a FAPE to these students, which prevents them from learning effectively, making meaningful academic progress, and earning a high school diploma or GED. The deprivation of a FAPE also prevents these students from obtaining access to vocational programs for which a high school diploma or GED is a prerequisite, thereby diminishing their ability to pursue gainful employment upon their release and increasing their likelihood of recidivism.

99.    Time is of the essence for Named Plaintiffs and class members. These individuals face a long road toward achieving their educational goals, which they must do to have a chance at employment upon their return to the community. The days, weeks, months, and years they spend without necessary programming and support will only increase the difficulty of achieving those goals. Without swift Court relief, these individuals will be permanently harmed by the deprivation of important benefits to which they are legally entitled, due to no fault of their own.

100.    The failures to provide special education services to these students result in negative academic outcomes that have severe long-term and short-term effects on their wellbeing and quality of life.

101.    Failure to obtain a high school diploma is associated with an increased likelihood of negative economic outcomes. These outcomes can, in turn, increase the likelihood of criminal behavior, which can lead to a higher risk of reincarceration. Thus, not only do Defendants' failures

cause severe harm to the individuals whom they have deprived of a FAPE; these failures also undermine the public's penological interest in rehabilitating people in IDOC custody and decreasing criminal recidivism.

102.     IDOC and IDJJ's failure to provide special education also limits Plaintiffs' and class members' ability to lessen their sentences, as compared to individuals without disabilities. Earned Program Sentence Credit ("EPSC") allows people in IDOC custody to reduce their sentences by participating in and completing educational programs.  Without access to special education or credit-bearing high school education, individuals with disabilities cannot shorten their incarceration by participating in education programs beyond the ABE class.  As a result, these individuals are also unable to earn additional EPSC for completing degrees, participating in GED classes, or obtaining their GED.  Further, without the GED or high school diploma, individuals with disabilities are also unable to enroll in post-secondary education programs, and thus cannot shorten their stay by participating in and completing those programs.

## COUNT I:

## VIOLATION OF THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT (AGAINST ALL DEFENDANTS)

103.     Named Plaintiffs and class members incorporate by reference paragraph 1 through 102 as if fully set forth herein.

104.     The IDEA and its implementing regulations mandate that "[a] free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive . . . "  20 U.S.C. § 1412(a)(1)(A); *see also* 20 U.S.C. § 1400(d)(1)(A); 34 C.F.R. § 300.2.  The State of Illinois has broadened this mandate by expanding eligibility for special education and related services through the end of the school year in which the student turns 22 years old.  105 ILCS 5/14-1.02; Ill. Admin. Code tit. 23 § 226.50(c)(1).

105.    To provide a FAPE, the provision of special education and related services must be made in conformity with each student's IEP.  20 U.S.C. § 1401(9)(D).

106.    As set forth in paragraph 23-43 and 96 above, Named Plaintiffs and class members are students with disabilities and have been found eligible for special education and related services under the IDEA.

107.    As set forth in paragraphs 93-94 above, since 2006, Defendants have failed to identify eligible students with disabilities and notify eligible students of their right to FAPE. Defendants have also failed to ever provide any special education or related services, let alone implement the IEPs of eligible students, by failing to provide them with their mandated specialized instruction and related services.  Defendants have denied a FAPE to Named Plaintiffs and class members.  Defendants' failures are numerous and systemic.

108.    Defendants' actions violate 20 U.S.C. § 1412(a)(1)(A), 20 U.S.C. § 1412(a)(3)(A), 20 U.S.C. § 1415(j), 20 U.S.C. § 1400(d)(1)(A), and the implementing regulations.

109.    Because Defendants' discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies.  Further, as a direct result of Defendants' actions, Plaintiffs and class members are suffering irreparable harm, including lost educational opportunities.  Therefore, speedy and immediate relief is appropriate.

110.    Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs incurred in bringing this action under 20 U.S.C. § 1415(i)(3).

## COUNT II:

### VIOLATION OF THE REHABILITATION ACT
### (AGAINST ALL DEFENDANTS)

111.    Named Plaintiffs and class members incorporate paragraphs 1 through 110 of this Complaint as if set forth in full herein.

112. Section 504 of the Rehabilitation Act prohibits disability discrimination in federally funded programs. It mandates that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a).

113. Named Plaintiffs and class members are qualified individuals with a disability pursuant to Section 504 because they are substantially limited in major life activities. 29 U.S.C. § 705(20)(B).

114. Defendants are federal funds recipients within the meaning of 29 U.S.C. § 794(b)

115. Section 504 requires Defendants to provide a FAPE to all students who qualify as individuals with a disability, which can be satisfied through implementation of an IEP. 34 C.F.R. § 104.33(b)(2).

116. Section 504 requires Defendants to provide annual notice to adult students regarding Defendant's duty under Section 504 to provide a FAPE. *See* 34 C.F.R. § 104.32(b); 34 C.F.R. § 104.36.

117. Defendants do not have a process to identify students with a disability within their program.

118. Defendants do not provide eligible students with notice of their right under Section 504 to receive a FAPE as a student with a disability.

119. Defendants do not draft or provide eligible students with an IEP or Section 504 Plan.

120. Defendants do not provide any high school programs that would allow Named Plaintiffs and class members to achieve high school attainment. Defendants do not offer high

school credit-bearing programs with special education accommodations and modifications that would allow individuals with disabilities to earn a high school diploma. Defendants do provide access to high school attainment through IDOC's GED programs, but due to Defendants' failure to make meaningful accommodations to allow students with disabilities to access the TABE, ABE, or GED programming, Named Plaintiffs and class members do not have meaningful access to that benefit.

121.     Defendants' actions deny eligible students with disabilities access to a FAPE and discriminate against them on the basis of disability.

122.     Defendants' actions violate Section 504.

123.     Because Defendants' discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Further, as a direct result of Defendants' actions, Plaintiffs and class members are suffering irreparable harm, including lost educational opportunities. Therefore, speedy and immediate relief is appropriate.

124.     Pursuant to 29 U.S.C. § 794(a), Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs incurred in bringing this action.

## COUNT III:

### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA)
### (AGAINST ALL DEFENDANTS)

125.     Named Plaintiffs and class members incorporate paragraphs 1 through 124 of this Complaint as if set forth in full herein.

126.     The ADA is unique even among civil rights laws in its expansive sweep intended "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. §12101(b)(1).

127.     The ADA prohibits discrimination against individuals with disabilities in both adult and juvenile jails and prisons.  *See* 42 U.S.C. § 12132; 29 U.S.C. § 749; 28 C.F.R. § 35.152(a).

128.     Named Plaintiffs and class members are qualified individuals with a disability under the ADA and have impairments that substantially limit one or more major life activities.  42 U.S.C. § 12102.

129.     The ADA requires reasonable accommodations and modifications to ensure that people with disabilities are not excluded from participation in or denied the benefits of the programs of a public entity.  42 U.S.C. § 12132; 28 C.F.R. § 35.130(b)(7).

130.     Defendants do not provide any special education services that would serve as a reasonable accommodation to allow students with a disability to access educational programming.

131.     Defendants do not provide any auxiliary aides or related services that would serve as a reasonable accommodation to allow students with a disability to access educational programming.

132.     Defendants currently offer four types of educational programming: (1) ABE (a non-degree bearing course), (2) pre-GED courses, (3) GED courses, and (4)  post-secondary vocational training and college programs.

133.     Students are administered the TABE to determine which of these three educational programs they can access.

134.     Students must score a 6.0 or higher on the TABE to be enrolled in the pre-GED or GED courses.

135.     Students who score below a 6.0 on the TABE and have a qualifying date of release are enrolled in ABE.

136.    Students who have more distant release dates are often placed on a waitlist for ABE for an indeterminate amount of time.  As additional students are added to the waitlist, students with earlier outdates are placed higher on the list, effectively delaying services for those students who will be incarcerated longer.

137.    Students in ABE are not provided with special education instruction, related services, modifications, or accommodations.

138.    Students in ABE cannot earn a terminal degree such as a diploma or high school equivalency.

139.    If students are unable to complete the ABE coursework, they must retake ABE until they are able to score a 6.0 or higher on the TABE.

140.    Students who do not complete work for ABE, even for disability-related reasons, are dropped from the class and provided with no educational programming.

141.    Students who score below a 6.0 on the TABE cannot enroll in pre-GED or GED programming until they are able to successfully complete the ABE course.

142.    There are no vocational options with job training available for individuals who do not have a high school diploma or GED.  Individuals without a high school degree are unable to access these opportunities due to IDOC's prerequisite requirements.

143.    Without reasonable accommodations, students with a disability are disadvantaged in their ability to score high enough on the TABE to access GED courses, and they are not provided with an alternative opportunity to access the benefit of educational programming—a high school diploma or equivalency.

144.    By failing to offer special educational programming, accommodations, or modifications of the educational program, Defendants are preventing Named Plaintiffs and class

members from being able to achieve the terminal level of a high school education, a diploma, or a GED, due solely to their disability.

145.    Without a high school diploma or GED, Named Plaintiffs and class members are denied the equal opportunity to participate in vocational course offerings such as food service, construction, custodial maintenance, horticulture, auto mechanics, barbering, welding, or warehousing.

146.    Named Plaintiffs and class members require access to special education services in a high school environment to have the equal opportunity to access education, vocational opportunities, and reach the same level of achievement as their non-disabled peers in IDOC.

147.    Defendants' actions violate the ADA.

148.    Because Defendants' discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies.  Further, as a direct result of Defendants' actions, Plaintiffs and class members are suffering irreparable harm, including lost educational opportunities.  Therefore, speedy and immediate relief is appropriate.

149.    Pursuant to 42 U.S.C. § 12133, Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs incurred in bringing this action under 42 U.S.C. § 12205.

**COUNT IV:**

**VIOLATION OF 105 ILCS 5/13-40**
**(AGAINST ALL DEFENDANTS)**

150.    Named Plaintiffs and class members incorporate by reference paragraph 1 through 149 as if fully set forth herein.

151.    Under 105 ILCS 5/13-40, "[a] fundamental goal of the People of the State is the educational development of all persons to the limits of their capacities.  Therefore, on July 1, 2006,

the Department of Corrections school district shall be transferred to the Department of Juvenile Justice.  It shall be responsible for the education of youth within the Department of Juvenile Justice and inmates age 21 or under within the Department of Corrections who have not yet earned a high school diploma or a State of Illinois High School Diploma, and the district may establish primary, secondary, vocational, adult, special, and advanced educational schools as provided" therein.

152.    As set forth in paragraphs 9-12 and 23-43 above, Named Plaintiffs and class members are students with disabilities and have not yet earned a high school diploma and are eligible for special education programming.

153.    As set forth above, Defendants have failed to provide Named Plaintiffs and class members with the special education services mandated by their IEPs.

### COUNT V:

### VIOLATION OF 105 ILCS 5/14-1.02
### (AGAINST ALL DEFENDANTS)

154.    Named Plaintiffs and class members incorporate by reference paragraph 1 through 153 as if fully set forth herein.

155.    Under 105 ILCS 5/14-1.02, a student determined to be eligible for special education services "is eligible for such services through age 21, inclusive . . . unless his or her 22nd birthday occurs during the school year, in which case he or she is eligible for such services through the end of the school year."

156.    As set forth in paragraphs 9-12 and 23-43 above, Named Plaintiffs and class members are students with disabilities and have been found eligible for special education under the definitions and procedures described in the Illinois Rules and Regulations to Govern the Organization and Administration of Special Education. 105 ILCS 5/14-1.02; 23 Ill. Adm. Code § 226.10.

157.    As set forth above, Defendants have failed to provide Named Plaintiffs and class members with the special education services mandated by their IEPs.

## PRAYER FOR RELIEF

**WHEREFORE**, Named Plaintiffs, individually and on behalf of the class and subclasses, request that this Court grant the following relief:

(1)    Certification of this action, as a class action, pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure;

(2)    A declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure that Defendants have violated Named Plaintiffs and class members' rights under the following statutes and regulations:

a.    The IDEA, 20 U.S.C. §§ 1400 *et seq.*, namely, 20 U.S.C. § 1412(a)(3)(A), 20 U.S.C. § 1400(d)(1)(A), 20 U.S.C. § 1412(a)(1)(A) and its implementing regulations by failing to provide a free appropriate public education to Named Plaintiffs and class members in accordance with the IDEA and its implementing regulations;

b.    Section 504 or the Rehabilitation Act, 29 U.S.C. § 794(a), and its implementing regulations, 34 C.F.R. § 104.32 and 34 C.F.R. § 104.33, by denying Named Plaintiffs and class members access to a FAPE and discriminating against them on the basis of disability;

c.    Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and its implementing regulations, by denying Named Plaintiffs and class members the benefits of or prohibiting Named Plaintiffs and class members from

participating in Defendants' services, programs, or activities with regard to the provision of a FAPE because of their disabilities;

d.      105 ILCS 5/13-40, by failing to provide special education and high school programming to Named Plaintiffs and class members;

e.      Article 14 of the Illinois School Code, 105 ILCS 5/14-1.02, and its implementing regulations, by failing to provide special education to Named Plaintiffs and class members as mandated by their IEPs;

(3)      A preliminary and permanent injunction ordering Defendants to:

a.      Develop and implement adequate and effective policies and procedures to identify students with disabilities who enter IDOC custody with an IEP and who have not yet received their high school diploma;

b.      Develop and implement adequate and effective policies and procedures to notify such students of their right to special education and related services and high school education;

c.      Develop and implement adequate and effective policies and procedures to provide Named Plaintiffs and class members with IDEA-mandated special education and/or related services and high school credit-bearing courses;

d.      Report to the Court at regular intervals on the implementation of special education and related services and high school education for Named Plaintiffs and class members.

(4)      An order enjoining Defendants to take appropriate affirmative actions to ensure that the violations of federal and Illinois law complained of above do not continue to be

engaged in by Defendants, their agents, successors, employees, subordinates, attorneys, and those acting at their direction;

(5)    An order enjoining Defendants to provide compensatory education of special education and related services and high school education to Named Plaintiffs and class members for whom Defendants failed to provide special education and/or related services and high school credit-bearing courses, including but not limited to, an extension of IDEA eligibility commensurate with the period over which Defendants denied Named Plaintiffs and class members access to a FAPE;

(6)    An order requiring Defendants to reimburse Named Plaintiffs and class members for the funds expended to obtain experts, evaluations, and special education and related services as a result of Defendants' violations of the law;

(7)    An order appointing a Special Master whose duties shall include, but not be limited to, monitoring and reporting to the Court regarding:

a.      Defendants' compliance with the Court's Order;

b.      Remedies necessary to bring about full compliance with the Court's Order;

(8)    Retention of jurisdiction over this action to ensure Defendants' compliance with the mandates of the Court's Order;

(9)    An award of reasonable attorneys' fees, expenses, and costs pursuant to 20 U.S.C. § 1415(i)(3)(B) and 29 U.S.C. § 794a(b); and

(10)   Such other relief as may be deemed proper by the Court.

## **JURY DEMAND**

Named Plaintiffs and class members request a trial by jury.

Date: August 30, 2024

Respectfully submitted,

 /s/ Johanna Spellman
Johanna Spellman (ARDC No. 6293851)
johanna.spellman@lw.com
Terra Reynolds (ARDC No. 6278858)
terra.reynolds@lw.com
Nicholas Hazen (ARDC No. 6341719)
nicholas.hazen@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

*Attorneys for Named Plaintiffs Exodus Hebert, Antonio Monroe, Damen Gonzalez, Deleon Moffett, George  Garcia, Isaiha Herring, Thailan Hopkins, Shirice Hendrix, Darrion Longstreet, Antwon Tompkin, Ivan Johnson, Keyshawn Nichols, Jesse Garza, Nyree Dugans, Antjuan Davis, Amaru Evans, Robert "Raven" Melton, Quran Broomfield, Dasheem Pickens, Delcheva Harris, and class members*

Olga Pribyl (ARDC No. 6190672)
olga@equipforequality.org
Sujatha Branch (Washington State Bar No. 51827)
sujatha@equipforequality.org
Rachel Shapiro (ARDC No. 6290735)
Rachel@equipforequality.org
Alexandra Kuske (ARDC No. 6336210)
Alexandra@equipforequality.org
Brianna Hill (ARDC No. 6336043)
brianna@equipforequality.org
EQUIP FOR EQUALITY
20 N. Michigan Avenue, Suite 300
Chicago, IL 60602
Telephone: (312) 341-0022
Facsimile: 312-800-0912

*Attorneys for all Named Plaintiffs Exodus Hebert, Antonio Monroe, Damen Gonzalez, Deleon Moffett,*

47

*George Garcia, Jeremiah Brown, Isaiha Herring, Thailan Hopkins, Shirice Hendrix, Darrion Longstreet, Antwon Tompkin, Ivan Johnson, Keyshawn Nichols, Jesse Garza, Nyree Dugans, Antjuan Davis, Amaru Evans, Robert "Raven" Melton, Quran Broomfield, Dasheem Pickens, Delcheva Harris, and class members*