**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EXODUS HEBERT, ANTONIO MONROE, DAMEN GONZALEZ, DELEON MOFFETT, GEORGE GARCIA, JEREMIAH BROWN, ISAIHA HERRING, THAILAN HOPKINS, SHIRICE HENDRIX, DARRION LONGSTREET, ANTWON TOMPKIN, IVAN JOHNSON, KEYSHAWN NICHOLS, JESSE GARZA, NYREE DUGANS, ANTJUAN DAVIS, AMARU EVANS, ROBERT "RAVEN" MELTON, QURAN BROOMFIELD, DASHEEM PICKENS, and DELCHEVA HARRIS, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>     v.<br><br>ILLINOIS DEPARTMENT OF CORRECTIONS, ILLINOIS DEPARTMENT OF JUVENILE JUSTICE and ILLINOIS STATE BOARD OF EDUCATION,<br><br>               Defendants. | Case No.  1:24-cv-07950-SLE<br><br>District Judge Sara L. Ellis<br><br>Magistrate Judge Beth W. Jantz |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR PRELIMINARY INJUNCTION**

### TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................1

BACKGROUND ..............................................................................................................2

I.    DEFENDANTS ARE LEGALLY OBLIGATED TO PROVIDE STUDENTS
WITH DISABILITIES A FREE APPROPRIATE PUBLIC EDUCATION .....................2

II.    DEFENDANTS HAVE FAILED TO PROVIDE A FAPE.................................................5

III.    IDOC'S ADULT EDUCATION AND VOCATIONAL SERVICES FAIL TO
MAKE REASONABLE ACCOMMODATIONS FOR STUDENTS WITH
DISABILITIES ................................................................................................................11

IV.    DEFENDANTS' FAILURES HARM NAMED PLAINTIFFS AND THE
PLAINTIFF CLASS. .......................................................................................................13

V.    ADMINISTRATIVE DUE PROCESS COMPLAINTS DID NOT AND
CANNOT ACHIEVE SYSTEMIC CHANGE.................................................................14

        A.    Exodus Hebert's Due Process Proceedings ...........................................................14

        B.    Antonio Monroe's Due Process Proceedings .......................................................15

LEGAL STANDARD.......................................................................................................16

ARGUMENT .....................................................................................................................17

I.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF EACH OF
THEIR CLAIMS...............................................................................................................17

        A.    Defendants Are Systemically Violating Plaintiffs' Right to a FAPE Under
the IDEA and Illinois Law.....................................................................................19

        B.    Defendants' Actions Systematically Discriminate Against Students with
Disabilities in Violation of the ADA and the Rehabilitation Act .........................22

        C.    Plaintiffs Have Standing. .......................................................................................26

II.    PLAINTIFFS WILL SUFFER IRREPARABLE INJURY IF A PRELIMINARY
INJUNCTION IS NOT GRANTED.................................................................................27

III.    THE BALANCE OF HARMS WEIGHS IN PLAINTIFFS' FAVOR..............................29

IV.    THE PUBLIC INTEREST WOULD BE SERVED BY A PRELIMINARY
INJUNCTION...................................................................................................................31

CONCLUSION...........................................................................................................31

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Alexander v. Choate*,
  469 U.S. 287 (1985)............................................................................25

*Andrew M. v. Del. Cnty. Off. of Mental Health & Mental Retardation*,
  490 F.3d 337 (3d Cir. 2007)..............................................................24

*Artichoker v. Todd Cnty. Sch. Dist.*,
  2016 WL 7489033 (D.S.D. Dec. 29, 2016) ......................................20

*Bd. Of Educ. Of the Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. V. Rowley*,
  458 U.S. 176 (1982)............................................................................19

*Cmty. Consol. Sch. Dist. No. 54 v. Ill. State Bd. Of Educ.*,
  576 N.E.2d 250 (Ill. App. Ct. 1991) .................................................18

*Cook Cnty. v. Wolf*,
  962 F.3d 208 (7th Cir. 2020) .......................................................16, 17

*Donnell C. v. Ill. State Bd. Of Educ.*,
  829 F. Supp. 1016 (N.D. Ill. 1993) ...................................................19

*Easter v. D.C.*,
  128 F. Supp. 3d 173 (D.D.C. 2015) ..................................................17

*Edward M.-R. v. Dist. of Columbia*,
  660 F. Supp. 3d 82 (D.D.C. 2023) ....................................................22

*Fam. & Child.'s Ctr., Inc. v. Sch. City of Mishawaka*,
  13 F.3d 1052 (7th Cir. 1994) ............................................................19

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000)............................................................................27

*Hirsch v. Will Cnty., Illinois*,
  2021 WL 1531602 (N.D. Ill. Apr. 19, 2021) ....................................26

*Jaros v. Ill. Dep't of Corrs.*,
  684 F.3d 667 (7th Cir. 2012) ............................................................24

*Kevin T. v. Elmhurst Cmty. Sch. Dist. No. 205*,
  2002 WL 433061 (N.D. Ill. Mar. 20, 2002).....................................20

*Lacy v. Cook Cnty.*,
  897 F.3d 847 (7th Cir. 2018) ...............................................................23, 24

*Love v. Westville Corr. Ctr.*,
  103 F.3d 558 (7th Cir. 1996) ..............................................................26

*Massey v. D.C.*,
  400 F. Supp. 2d 66 (D.D.C. 2005) ...............................................28, 29, 30

*Nat'l Inst. of Fam. & Life Advocates v. Raoul*,
  685 F. Supp. 3d 688 (N.D. Ill. 2023) .................................................16

*Nein v. Greater Clark Cnty. Sch. Corp.*,
  95 F. Supp. 2d 961 (S.D. Ind. 2000) ..................................................22

*Pierce v. Dist. of Columbia*,
  128 F. Supp. 3d 250 (D.D.C. 2015) ....................................................25

*Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dept. Health*,
  699 F.3d 962 (7th Cir. 2012) .........................................................29, 31

*R.F. v. Bd. of Educ.*,
  2022 WL 1805099 (N.D. Ill. June 2, 2022) .................................28, 29, 31

*Silk v. City of Chicago*,
  194 F.3d 788 (7th Cir. 1999) ...........................................................24

*Skelly v. Brookfield LaGrange Park Sch. Dist. 95*,
  968 F. Supp. 385 (N.D. Ill. 1997) .....................................................28

*T.H. v. DeKalb Cnty. Sch. Dist.*,
  564 F.Supp.3d 1349 (N.D. Ga. 2021) ...........................................20, 21

*Tindell v. Evansville-Vanderburgh Sch. Corp.*,
  2010 WL 557058 (S.D. Ind. Feb. 10, 2010) .......................................28

*United Air Lines, Inc. v. Air Line Pilots Ass'n., Int'l*,
  2008 WL 4936847 (N.D. Ill. Nov. 17, 2008), *aff'd* 563 F.3d 257 (7th Cir.
  2009) ......................................................................................30

*United States v. NCR Corp.*,
  688 F.3d 833 (7th Cir. 2012) ............................................................16

*USA-Halal Chamber of Com., Inc. v. Best Choice Meats, Inc.*,
  402 F. Supp. 3d 427 (N.D. Ill. 2019) ................................................16

*Vincent v. Kenosha Unified Sch. Dist.*,
  2012 WL 4470515 (E.D. Wis. Sept. 26, 2012).....................................21

*Wade v. Dist. of Columbia*,
  322 F. Supp. 3d 123 (D.D.C. 2018) .............................................................22

*Washington v. Ind. High Sch. Athletic Ass'n, Inc.*,
  181 F.3d 840 (7th Cir. 1999) .......................................................................26

*Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. Of Educ.*,
  858 F.3d 1034 (7th Cir. 2017) .....................................................................27

*Wisc. Cmty. Servs., Inc. v. City of Milwaukee*,
  465 F.3d 737 (7th Cir. 2006) .......................................................................26

**STATUTES**

105 ILCS
  5/13-40 ..........................................................................................................3
  5/14-1.02 ........................................................................................................9

730 ILCS 5/3-6-2(d) ...........................................................................................10

23 Ill. Admin. Code
  § 226.10...........................................................................................................9
  § 226.50(a) ...................................................................................................6, 8
  § 226.50(a)(2) .................................................................................................4
  § 226.50(a)(2)(B) ...........................................................................................4
  § 226.50(c)(4) .................................................................................................3
  § 226.50(d) ......................................................................................................3
  § 226.230.......................................................................................................11

20 U.S.C.
  § 1400 ..............................................................................................................9
  § 1400(d)(1)(A)..........................................................................................2, 19
  § 1401(9) ..........................................................................................................2
  § 1401(9)(D) ....................................................................................................9
  § 1401(26)(A) ............................................................................................2, 22
  § 1401(29) ........................................................................................................2
  § 1401(32) ........................................................................................................3
  § 1412(11)(A) ..................................................................................................5
  § 1412(a)(1)(A) ...........................................................................................3, 9
  § 1412(a)(3)(A) ...............................................................................................6
  § 1412(a)(11) ...................................................................................................3
  § 1412(a)(11)(A) ...........................................................................................11
  § 1413(g)(1)(B) ..............................................................................................11
  § 1414(d)(1)(A)(i)(IV) ..................................................................................21
  § 1414(d)(2)(A)................................................................................................4
  § 1414(d)(2)(C)(ii) ......................................................................................4, 6
  § 1415(a) ..........................................................................................................8
  § 1415(f)(3)(E)(ii) .........................................................................................20

29 U.S.C.
    § 749 ............................................................................................................23
    § 794(a) .......................................................................................................23
    § 794(b)(2)(B) .............................................................................................23

42 U.S.C.
    § 12101(b)(1) ..............................................................................................23
    § 12102(1)(A) .............................................................................................24
    § 12131(2) ...................................................................................................24
    § 12132 ..................................................................................................23, 24

## REGULATIONS

28 C.F.R.
    § 35.130(b)(7) .............................................................................................24
    § 35.152(a) ..................................................................................................23

34 C.F.R.
    § 104.33(a) ..................................................................................................23
    § 300.2(b)(1) ...........................................................................................3, 10
    § 300.2(b)(1)(iv) ..........................................................................................4
    § 300.101(a) ..................................................................................................3
    § 300.102(a)(2)(i) ..........................................................................................3
    §§ 300.103(a), 300.154(a) .............................................................................5
    § 300.116(a)-(b) ............................................................................................4
    § 300.121(a) ..................................................................................................8
    § 300.149 .....................................................................................................11
    § 300.323(c)(2) .............................................................................................4
    § 300.503 ......................................................................................................8
    § 300.513(a)(2) ...........................................................................................20
    § 300.600 ...............................................................................................10, 11

34 CFR
    § 300.154(a) ................................................................................................10
    § 300.320(a)(1)(i) ..........................................................................................9
    § 300.320(a)(2)(i)(A) .....................................................................................9

## OTHER AUTHORITIES

Dear Colleague Letter, U.S. Department of Education Office of Special Education
    and Rehabilitative Services (Dec. 5, 2014) ............................................3, 5

## <u>INTRODUCTION</u>

This Court's swift action is needed to ensure that Plaintiffs—students with disabilities in the custody of the Illinois Department of Corrections ("IDOC")—receive the education to which they are legally entitled. Without this intervention, Plaintiffs will exit state custody and be left with greatly diminished employment prospects and an increased likelihood of recidivism. This class action[1] challenges the pressing and systemic failure by IDOC, the Illinois Department of Juvenile Justice ("IDJJ"), and the Illinois State Board of Education ("ISBE") (collectively, "Defendants"), to provide legally-required special education and related services and a high school education to students with disabilities who are in IDOC custody. Both federal and Illinois law require Defendants to provide special education services and a high school education to individuals, aged 18 through the end of the school year in which they turn 22, who enter IDOC with an individualized education program ("IEP") and with no high school diploma. The law recognizes that these services are necessary accommodations for students with disabilities to access equal educational opportunities and to achieve their educational goals. But for ***nearly two decades***, Defendants have consistently neglected these students—one of the most vulnerable populations under their care—by failing to implement the necessary systems, policies, and practices to ensure the provision of these critical educational services to all students who are eligible.

Consequently, Plaintiffs have faced, and will continue to face, significant barriers to achieving the educational milestones necessary for securing employment and contributing to society upon their release. The lack of access to appropriate education results in most of these

---

[1] Filed concurrently with this Motion is Plaintiffs' Motion for Class Certification, in which Plaintiffs seek certification of the class under Federal Rule of Civil Procedure 23.

individuals being effectively locked out of vocational or post-secondary educational programming at IDOC, who then face the consequence of having inadequate employment skills upon release to the community and increased likelihood of recidivism. There is no adequate remedy at law for this deprivation, which underscores the urgent need for an injunction compelling Defendants to fulfill their legal obligations. Only swift judicial intervention can safeguard Named Plaintiffs and the class members (the "Plaintiff Class") from the harmful short- and long-term consequences of the Defendants' continued failure to provide *any* special education and related services and a high school education.

## BACKGROUND

### I. DEFENDANTS ARE LEGALLY OBLIGATED TO PROVIDE STUDENTS WITH DISABILITIES A FREE APPROPRIATE PUBLIC EDUCATION

The Individuals With Disabilities Education Act ("IDEA") mandates that *all* children with disabilities have access to a "free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). Under the IDEA, a "free appropriate public education" ("FAPE") is defined as:

> [S]pecial education and related services that—(A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate . . . secondary school education in the State involved; and (D) are provided in conformity with the individualized education program required[.]

*Id.* § 1401(9). "Special education" is teacher-provided instruction designed to meet the needs of the student. *Id.* § 1401(29). "Related services" are those services that assist the student in accessing the instruction. *See id.* § 1401(26)(A).

The IDEA and its implementing regulations, along with Illinois state law and regulations, extend the state's obligation to provide a FAPE to individuals in the legal custody of IDOC, aged

2

18 through the end of the school year in which they turn 22.[2]  *Id.* § 1412(a)(1)(A); 34 C.F.R. § 300.101(a); *see also* Dear Colleague Letter, U.S. Department of Education Office of Special Education and Rehabilitative Services (Dec. 5, 2014), attached hereto as Exhibit A, at 1–2 ("Absent a specific exception, all IDEA protections apply to students with disabilities in correctional facilities and their parents . . . Every agency at any level of government that is involved in the provision of special education and related services to students in correctional facilities must ensure the provision of a FAPE, even if other agencies share that responsibility."); 34 C.F.R. § 300.2(b)(1) (IDEA mandates apply to "all political subdivisions of the State that are involved in the education of children with disabilities.").

In Illinois, the three entities responsible for providing special education and related services to eligible students with disabilities in IDOC custody are ISBE (the State Educational Agency or "SEA"), IDJJ (the Local Education Agency or "LEA"), and IDOC.  As the SEA, ISBE is the agency "primarily responsible for the State supervision of public elementary schools and secondary schools."  20 U.S.C. § 1401(32).  Furthermore, as the SEA, ISBE must ensure that a FAPE is made available to all eligible Illinois students with disabilities and that all programs administered by Illinois agencies meet Illinois educational standards.  20 U.S.C. § 1412(a)(11). IDJJ's District 428 is the LEA for eligible students in IDOC custody, and is responsible for providing a FAPE to eligible students.  *See* 105 ILCS 5/13-40.  IDOC is a state-run correctional facility, and a subdivision of the state that is mandated to provide appropriate educational and

---

[2] Specifically, Illinois regulations extend the protections of the IDEA to incarcerated students through the end of the school year in which they turn 22 years old.  *See* 23 Ill. Adm. Code § 226.50(c)(4).  These protections do not apply **only** if a student falls within one of the statute's limited exceptions: where the student "in the last educational placement prior to their incarceration in an adult correctional facility [was] not actually identified as being a child with a disability under § 300.8 and [d]id not have an IEP under Part B of the Act."  34 C.F.R. § 300.102(a)(2)(i); 23 Ill. Admin. Code § 226.50(d).  By definition, members of the Plaintiff Class do not fall within this exception.

support services under the IDEA to individuals with disabilities in its custody. 34 C.F.R. § 300.2(b)(1)(iv).

All LEAs, including IDJJ's District 428, must provide access to a FAPE to all students with disabilities, including developing an IEP to meet the special education needs of these students. 20 U.S.C. § 1414(d)(2)(A). The LEA must implement an IEP as soon as possible, 34 C.F.R. § 300.323(c)(2), and must propose an appropriate placement for the student that can provide the special education and related services required under the IEP, 34 C.F.R. § 300.116(a)-(b).

The IDEA places responsibility on the LEA receiving a new student—*i.e.*, IDJJ's District 428, for eligible students entering IDOC—to obtain the student's educational records from previous school districts, including the student's IEP if he or she has one. 20 U.S.C. § 1414(d)(2)(C)(ii) ("[T]he new school in which the child enrolls shall take reasonable steps to promptly obtain the child's records, including the IEP and supporting documents and any other records relating to the provision of special education or related services . . . from the previous school in which the child was enrolled."). The Illinois Administrative Code adopts this section by reference, and provides that if the new school district does not receive a transfer student's educational records from the student's prior school districts, the student "shall be enrolled and served in the setting that the receiving district believes will meet the child's needs until a copy of the current IEP is obtained or a new IEP is developed by the school district," and that "*[i]n no case* shall a child be allowed to remain without [special education] services during this interim." 23 Ill. Admin. Code § 226.50(a)(2) (emphasis added). The Code mandates that the receiving district "shall request the student's records from the sending district or school by the end of the next business day after the date of enrollment." *Id.* § 226.50(a)(2)(B).

4

The IDEA's implementing regulations also require the State to develop and implement interagency agreements or other mechanisms for interagency coordination with other state and local agencies that provide or pay for services required by the IDEA for students with disabilities. 34 C.F.R. §§ 300.103(a), 300.154(a). The U.S. Department of Education has explained that this requirement "is particularly important in the context of correctional facilities, where it is not uncommon for multiple agencies to share responsibility for the operation of distinct functions within the same facility." Dear Colleague Letter, attached hereto as Exhibit A, at 6.

In sum, each Defendant owes legal duties to Named Plaintiffs and the Plaintiff Class. IDJJ's District 428 is legally responsible for the education of individuals in IDOC's custody who have not yet earned a high school diploma or high school equivalent, prior to the expiration of their special education eligibility, including the responsibility for providing special education and related services and a high school education. *Id.* IDOC is legally responsible for ensuring that eligible students in its custody receive a FAPE, insofar as it must provide access to its facilities to ensure IDJJ can provide eligible students with the special education and related services to which they are legally entitled. And ISBE is legally responsible for overseeing and enforcing compliance with the IDEA, including ensuring that eligible students with disabilities receive a FAPE. 20 U.S.C. § 1412(11)(A); *see also* disc. *supra* at 3-4. As special education and related services and a high school education have not been provided to students in IDOC's custody, all of the Defendants have failed to meet their legal obligations.

## II.     DEFENDANTS HAVE FAILED TO PROVIDE A FAPE

Defendants have not complied with their obligations to provide a FAPE to eligible students in IDOC's custody. These failures are not discrete or isolated, but are systemic in nature. Defendants' failures to provide a FAPE to Plaintiffs and the Plaintiff Class, as set forth below, are evidenced by the following: (i) the experiences of each Named Plaintiff while in IDOC's legal

custody, (ii) admissions made by IDJJ and IDOC in administrative due process proceedings involving certain Named Plaintiffs, and (iii) the hearing officers' findings in those proceedings.

Further, this evidence is consistent with the expert opinion of Dr. Michael Krezmien, a distinguished authority in special education and correctional education. *See generally* Declaration of Michael P. Krezmien, Ph.D. ("Krezmien Decl."), attached hereto as Exhibit B. In forming his opinion, Dr. Krezmien conducted an extensive review of factual materials and scholarly research pertaining to Defendants' failures to provide special education services and high school programming in IDOC. This review encompassed, among other sources, special education policies, federal guidance documents, IDOC publications and reports, published research and articles, records, stipulations, and testimony pertaining to administrative due process proceedings involving certain Named Plaintiffs, and the declarations of the twenty-one Named Plaintiff submitted herewith. *See id.* ¶ 12.

***First***, IDJJ and IDOC have not established systems, policies, or practices to identify students who enter adult correctional facilities with an IEP in place, and who have not yet received their high school diploma, in violation of federal and state law. *See* 20 U.S.C. § 1412(a)(3)(A); 20 U.S.C. § 1414(d)(2)(C)(ii); 23 Ill. Admin. Code § 226.50(a). IDOC and IDJJ do not have ***any*** process or procedure in place to obtain eligible students' IEPs or to otherwise identify students with disabilities who enter IDOC custody. *See* Ex. B, Krezmien Decl. ¶ 15 (noting no evidence of ***any*** IDOC or IDJJ procedures to identify students with disabilities). At a minimum, IDOC and IDJJ should ask individuals a range of questions to accurately determine if they have a current IEP, if they ever had an IEP, if they ever received special education services, if they ever had smaller classes, and if they ever received extra support in reading or mathematics. *See* Ex. B, Krezmien Decl. ¶ 20.

To illustrate, each Named Plaintiff entered IDOC with an IEP from their most recent educational placement indicating that they required and were legally owed specialized instruction and related services.[3] However, despite being eligible for special education, none of the Named Plaintiffs were asked, upon their entry into IDOC, whether they had an IEP from their last educational placement.[4] In fact, IDOC and IDJJ have no process for obtaining student education records for individuals who enter IDOC custody, including student IEPs and student evaluations. *See* Ex. B, Krezmien Decl. ¶ 15. Nor do IDOC and IDJJ convene IEP meetings, conduct new evaluations or behavioral assessments, or develop IEPs for students with disabilities in IDOC custody. *Id.*

Further, IDOC has not implemented **any** other form of educational intake sufficient to identify students with disabilities who are in its custody. *Id*. The **only** form of educational assessment administered by IDOC is the Test of Adult Basic Education ("TABE"), which is not

---

[3] *See* Declaration of Exodus Hebert ¶ 4 ("Hebert Decl."), attached hereto as Exhibit C; Declaration of Antonio Monroe ¶ 4 ("Monroe Decl."), attached hereto as Exhibit D; Declaration of Damen Gonzalez ¶ 4 ("Gonzalez Decl."), attached hereto as Exhibit E; Declaration of Deleon Moffett ¶ 4 ("Moffett Decl."), attached hereto as Exhibit F; Declaration of George Garcia ¶ 4 ("Garcia Decl."), attached hereto as Exhibit G; Declaration of Jeremiah Brown ¶ 4 ("Brown Decl."), attached hereto as Exhibit H; Declaration of Isaiha Herring ¶ 4 ("Herring Decl."), attached hereto as Exhibit I; Declaration of Thailan Hopkins ¶ 4 ("Hopkins Decl."), attached hereto as Exhibit J; Declaration of Shirice Hendrix ¶¶ 3-4 ("Hendrix Decl."), attached hereto as Exhibit K; Declaration of Darrion Longstreet ¶ 4 ("Longstreet Decl."), attached hereto as Exhibit L; Declaration of Antwan Tompkin ¶ 4 ("Tompkin Decl."), attached hereto as Exhibit M; Declaration of Ivan Johnson ¶ 3 ("Johnson Decl."), attached hereto as Exhibit N; Declaration of Keyshawn Nichols ¶ 4 ("Nichols Decl."), attached hereto as Exhibit O; Declaration of Jesse Garza ¶ 4 ("Garza Decl."), attached hereto as Exhibit P; Declaration of Nyree Dugans ¶ 4 ("Dugans Decl."), attached hereto as Exhibit Q; Declaration of Antjuan Davis ¶ 4 ("Davis Decl."), attached hereto as Exhibit R; Declaration of Amaru Evans ¶ 4 ("Evans Decl."), attached hereto as Exhibit S; Declaration of Robert "Raven" Melton ¶ 4 ("Melton Decl."), attached hereto as Exhibit T; Declaration of Quran Broomfield ¶ 4 ("Broomfield Decl."), attached hereto as Exhibit U; Declaration of Dasheem Pickens ¶ 4 ("Pickens Decl."), attached hereto as Exhibit V; Declaration of Delcheva Harris ¶ 3 ("Harris Decl."), attached hereto as Exhibit W.

[4] *See* Ex. C, Hebert Decl. ¶ 7; Ex. D, Monroe Decl. ¶ 7; Ex. E, Gonzalez Decl. ¶ 7; Ex. F, Moffett Decl. ¶ 7; Ex. G, Garcia Decl. ¶ 7; Ex. H, Brown Decl. ¶ 7; Ex. I, Herring Decl. ¶ 7; Ex. J, Hopkins Decl. ¶ 7; Ex. K, Hendrix Decl. ¶ 6; Ex. L, Longstreet Decl. ¶ 7; Ex. M, Tompkin Decl. ¶ 7; Ex. N, Johnson Decl. ¶ 6; Ex. O, Nichols Decl. ¶ 7; Ex. P, Garza Decl. ¶ 7; Ex. Q, Dugans Decl. ¶ 7; Ex. R, Davis Decl. ¶ 7; Ex. S, Evans Decl. ¶ 7; Ex. T, Melton Decl. ¶ 7; Ex. U, Broomfield Decl. ¶ 7; Ex. V, Pickens Decl. ¶ 7; Ex. W, Harris Decl. ¶ 6.

an appropriate diagnostic instrument for special education identification or evaluation purposes and is not administered immediately upon entry. *See id.* ¶¶ 21-22. This failure to identify individuals upon arrival often results in individuals aging out of special education eligibility and a subsequent loss of a federal entitlement. *See id.* ¶ 26.

*Second*, IDJJ and IDOC have not established systems, policies, or practices to notify eligible students who enter adult correctional facilities of their right to receive a FAPE in accordance with their IEPs. *Id.* ¶ 27; *see also* 20 U.S.C. § 1415(a); 34 C.F.R. §§ 300.121(a), 300.503; 23 Ill. Admin. Code § 226.50(a). *None* of the Named Plaintiffs—each of whom entered IDOC with an IEP in place—received *any* form of notice from IDJJ or IDOC that they were entitled to be provided special education services and a high school education while incarcerated.[5] Moreover, in a due process hearing in May of 2024, when asked if IDOC should have notified individuals with disabilities of their eligibility for high school and special education programming, the director of IDOC's Office of Adult Education and Vocational Services reported "[i]n my opinion, if someone from DJJ was to provide that information, I believe . . . it would've given false hope to the students because the services were not being provided". *See* Ex. B, Krezmien Decl. ¶ 16. Because individuals with disabilities are not properly notified of their rights to special education and related services, they are unaware of their federal protections under the IDEA and are unaware of their rights to special education and related services. *See id.* ¶ 28.

*Third*, IDOC and IDJJ have failed to establish the necessary systems, policies, or practices required to deliver *any* form of special education and related services to students with disabilities

---

[5] *See, e.g.*, Ex. C, Hebert Decl. ¶ 8; Ex. D, Monroe Decl. ¶ 9; Ex. E, Gonzalez Decl. ¶ 8; Ex. F, Moffett Decl. ¶ 8; Ex. G, Garcia Decl. ¶ 8; Ex. H, Brown Decl. ¶ 8; Ex. I, Herring Decl. ¶ 8; Ex. J, Hopkins Decl. ¶ 8; Ex. K, Hendrix Decl. ¶ 7; Ex. L, Longstreet Decl. ¶ 8; Ex. M, Tompkin Decl. ¶ 8; Ex. N, Johnson Decl. ¶ 7; Ex. O, Nichols Decl. ¶ 8; Ex. P, Garza Decl. ¶ 8; Ex. Q, Dugans Decl. ¶ 8; Ex. R, Davis Decl. ¶ 8; Ex. S, Evans Decl. ¶ 8; Ex. T, Melton Decl. ¶ 8; Ex. U, Broomfield Decl. ¶ 8; Ex. V, Pickens Decl. ¶ 8; Ex. W, Harris Decl. ¶ 8.

in IDOC's custody, as is required by IDEA and Illinois law. *See* 20 U.S.C. § 1400; 20 U.S.C. § 1412(a)(1)(A); 105 ILCS 5/14-1.02; 23 Ill. Admin. Code § 226.10. None of the Named Plaintiffs have received ***any*** form of specialized education, related services, or high school credit-bearing courses while incarcerated in IDOC, despite each of them having an IEP from their last educational placement.[6] Their experiences are representative of systemic deficiencies within IDOC, as evidenced by IDOC and IDJJ's systemic and complete failure to implement ***any*** of the services outlined in the IEPs for students with disabilities. *See* Ex. B, Krezmien Decl. ¶ 17.

***Fourth***, IDOC and IDJJ have failed to establish ***any*** systems, policies, and practices to provide ***any*** of the related services mandated by the IDEA and Illinois law, *see* 20 U.S.C. § 1401(9)(D); 23 Ill. Admin. Code § 226.10, such as counseling, psychological services, social work services, occupational therapy, physical therapy, and speech-language pathology—which are necessary for students to realize the benefits of educational programming. *See* Ex. B, Krezmien Decl. ¶ 59.

***Fifth***, IDOC and IDJJ do not provide ***any*** form of high school credit-bearing educational programming to students incarcerated in IDOC. To provide a FAPE, Defendants must provide access to and progress in the general education curriculum—*i.e.*, "the same curriculum as for nondisabled children." *See, e.g.* 34 CFR § 300.320(a)(1)(i), 34 CFR § 300.320(a)(2)(i)(A): (IEPs must specify goals designed to "enable the child to be involved in and make progress in the general education curriculum"). Further, IDJJ is responsible for providing "all youth [in IDOC's custody] have an opportunity to attain the achievement level equivalent to the completion of the twelfth

---

[6] *See* Ex. C, Hebert Decl. ¶ 9; Ex. D, Monroe Decl. ¶ 10; Ex. E, Gonzalez Decl. ¶ 9; Ex. F, Moffett Decl. ¶ 9; Ex. G, Garcia Decl. ¶ 9; Ex. H, Brown Decl. ¶ 9; Ex. I, Herring Decl. ¶ 9; Ex. J, Hopkins Decl. ¶ 9; Ex. K, Hendrix Decl. ¶ 8; Ex. L, Longstreet Decl. ¶ 9; Ex. M, Tompkin Decl. ¶ 9; Ex. N, Johnson Decl. ¶ 8; Ex. O, Nichols Decl. ¶ 9; Ex. P, Garza Decl. ¶ 9; Ex. Q, Dugans Decl. ¶ 9; Ex. R, Davis Decl. ¶ 9; Ex. S, Evans Decl. ¶ 9; Ex. T, Melton Decl. ¶ 9; Ex. U, Broomfield Decl. ¶ 9; Ex. V, Pickens Decl. ¶ 9; Ex. W, Harris Decl. ¶ 8.

grade in the public school system" in Illinois. 730 ILCS 5/3-6-2(d). The general education curriculum—which, as relevant here, includes high school education through the twelfth grade— represents the base education that the special education services mandated by the IDEA are designed to accommodate, adapt, and modify. *See* Ex. B, Krezmien Decl. ¶ 39. In other words, special education services cannot be delivered without the core general education curriculum that those services are designed to support. *Id.* Thus, Defendants' failure to provide a high school curriculum to students with disabilities in IDOC is, in itself, a deprivation of FAPE. *See* Ex. B, Krezmien Decl. ¶¶ 40-42.

**Sixth**, Defendants have not developed interagency agreements or other mechanisms for interagency cooperation that would permit IDJJ to fulfill its duty to provide special education and related services to students with disabilities, as required under IDEA's implementing regulations. *See* 34 CFR § 300.154(a) (state must "ensure that an interagency agreement or other mechanism for interagency coordination is in effect between each noneducational public agency . . . and the SEA, in order to ensure that all services . . . that are needed to ensure FAPE are provided."). As IDEA mandates apply to "all political subdivisions of the State that are involved in the education of children with disabilities," 34 C.F.R. § 300.2(b)(1), IDOC must ensure access to educational services, but has failed to do so. In fact, IDJJ and IDOC have stipulated in administrative due process proceedings involving certain Named Plaintiffs that "[t]here is no interagency agreement between IDJJ and IDOC regarding the provision of special education and related services to adults in IDOC." Ex. X, E. Hebert Due Process Decision, at 5; Ex. Y, A. Monroe Due Process Decision, at 7.

**Seventh**, as the SEA for Illinois, ISBE is responsible for ensuring that LEAs and other responsible public entities provide a FAPE to students with disabilities. *See* 34 C.F.R. § 300.600;

10

20 U.S.C. § 1412(a)(11)(A); 34 C.F.R. § 300.149. This includes the responsibility to oversee and monitor special education services in IDOC and to ensure incarcerated individuals with disabilities receive the educational support to which they are entitled under the IDEA. 23 Ill. Admin. Code § 226.230. When ISBE identifies noncompliance with the IDEA by LEAs, it must take steps to correct that noncompliance as quickly as possible. 34 C.F.R. § 300.600. Further, if ISBE determines that an LEA in Illinois is unable to establish and maintain programs that meet the requirements of the IDEA, then ISBE must provide special education and related services directly to children with disabilities who belong to that LEA's resident school district. *See* 20 U.S.C. § 1413(g)(1)(B). With respect to IDOC's and IDJJ's failures as set forth above, ISBE has likewise failed in its duty to monitor the delivery of special education services and a high school education for individuals with disabilities in IDOC custody, and has failed to take action to remedy the noncompliance by IDJJ and IDOC. *See* Ex. B, Krezmien Decl. ¶ 51.

III. **IDOC'S ADULT EDUCATION AND VOCATIONAL SERVICES FAIL TO MAKE REASONABLE ACCOMMODATIONS FOR STUDENTS WITH DISABILITIES**

IDOC does offer some educational programs to committed individuals, but (i) these programs do not satisfy IDEA's mandate to provide a FAPE to students with disabilities; and (ii) IDOC does not provide reasonable accommodations for students with disabilities to access those programs, thus placing them at a significant educational disadvantage relative to their non-disabled peers.

*First*, IDOC does not offer high school credit-bearing programs with special education services, as it is required to do in order to provide a FAPE. *See* disc. *supra*, at 9-10. In fact, there is no existing high school diploma-track education program for individuals in IDOC's custody. *See* Ex. B, Krezmien Decl. ¶ 40. IDOC does provide Adult Basic Education ("ABE") and General

11

Educational Development ("GED") programs to adults in its custody, but these programs are not designed to meet the needs of students with disabilities. *See id.* ¶ 46.

Further, individuals in ABE courses can be dropped for disability-related reasons such as failure to complete work that is above their comprehension level, which makes students with disabilities less likely to complete the ABE program than their general-education peers. Moreover, access to GED programming is contingent upon achieving a requisite score on the TABE—the ***only*** form of academic assessment utilized by IDOC. *Id.* ¶ 21. But without the necessary educational support and accommodations, students with disabilities are at a significant disadvantage as compared to their general-education peers, and they struggle to obtain the required TABE score to test out of the ABE program. *See id.* ¶ 46.[7]

Consequently—despite the existence of some educational programs within IDOC— students with disabilities do not have the same access to, and cannot enjoy the same benefits from, those programs as their non-disabled peers, due to the Defendants' failure to provide essential special education and related services. *See id.* Similarly, IDOC also offers post-secondary vocational training and college programs to adults in its custody, but entry into these post-secondary programs requires either a high school diploma—which Named Plaintiffs and the Plaintiff Class do not have and cannot obtain—or a GED certificate, which remains out of reach due to inaccessible programming. *Id.* ¶¶ 18, 47.[8]

---

[7] *See also* Ex. C, Hebert Decl. ¶¶ 10-12; Ex. D, Monroe Decl. ¶¶ 11-12; Ex. E, Gonzalez Decl. ¶¶ 10-11; Ex. F, Moffett Decl. ¶¶ 10-11; Ex. G, Garcia Decl. ¶ 10; Ex. H, Brown Decl. ¶¶ 10-11; Ex. I, Herring Decl. ¶¶ 10-12; Ex. J, Hopkins Decl. ¶¶ 10-11; Ex. K, Hendrix Decl. ¶¶ 9-10; Ex. L, Longstreet Decl. ¶¶ 11-12; Ex. N, Johnson Decl. ¶¶ 9-11; Ex. O, Nichols Decl. ¶¶ 10-11; Ex. P, Garza Decl. ¶¶ 10-11; Ex. Q, Dugans Decl. ¶¶ 10-11; Ex. R, Davis Decl. ¶¶ 10-11; Ex. S, Evans Decl. ¶¶ 10-11; Ex. T, Melton Decl. ¶¶ 10-11; Ex. U, Broomfield Decl. ¶¶ 10-11; Ex. V, Pickens Decl. ¶¶ 10-11; Ex. W, Harris Decl. ¶¶ 9-11.

[8] *See also* Ex. C, Hebert Decl. ¶ 17; Ex. D, Monroe Decl. ¶ 14; Ex. E, Gonzalez Decl. ¶ 13; Ex. F, Moffett Decl. ¶ 13; Ex. G, Garcia Decl. ¶ 13; Ex. H, Brown Decl. ¶ 13; Ex. I, Herring Decl. ¶ 14; Ex. J, Hopkins

## IV.    DEFENDANTS' FAILURES HARM NAMED PLAINTIFFS AND THE PLAINTIFF CLASS.

Defendants' failures inflict serious, long-term damage on students with disabilities.  These students are entitled to a FAPE, yet Defendants' conduct hinders their ability to learn effectively, make meaningful academic progress, and earn a high school diploma or GED.  *See id.* ¶ 17.  This denial of their rights also blocks their access to post-secondary vocational training or college programs that require such qualifications.  *Id.* ¶ 19.

Research consistently shows that the provision of educational services in correctional facilities leads to improved academic outcomes, diploma attainment, improved economic outcomes, and a reduced risk of recidivism post-release.  *See id.* ¶ 49.  Conversely, the inability to obtain a high school diploma is linked to negative economic outcomes and severely diminished quality of life.  *See id.* ¶¶ 19, 45.  These adverse outcomes can also increase the likelihood of future criminal behavior, raising the risk of reincarceration.  *Id.*

Plaintiffs and the Plaintiff Class are individuals who want to avoid this fate by furthering their educational development.[9]   Each understands that without a high school diploma, they will face difficulties obtaining employment when they re-enter society.  *See id.* ¶¶ 19, 45.[10]  In turn,

---

Decl. ¶ 13; Ex. K, Hendrix Decl. ¶ 12; Ex. L, Longstreet Decl. ¶ 14; Ex. M, Tompkin Decl. ¶ 13; Ex. N, Johnson Decl. ¶ 13; Ex. O, Nichols Decl. ¶ 13; Ex. P, Garza Decl. ¶ 13; Ex. Q, Dugans Decl. ¶ 13; Ex. R, Davis Decl. ¶ 13; Ex. S, Evans Decl. ¶ 13; Ex. T, Melton Decl. ¶ 12; Ex. U, Broomfield Decl. ¶ 13; Ex. V, Pickens Decl. ¶ 13; Ex. W, Harris Decl. ¶ 13.

[9] *See, e.g.*, Ex. C, Hebert Decl. ¶ 16; Ex. D, Monroe Decl. ¶ 13; Ex. E, Gonzalez Decl. ¶ 12; Ex. F, Moffett Decl. ¶ 12; Ex. G, Garcia Decl. ¶ 12; Ex. H, Brown Decl. ¶ 12; Ex. I, Herring Decl. ¶ 13; Ex. J, Hopkins Decl. ¶ 12; Ex. K, Hendrix Decl. ¶ 11; Ex. L, Longstreet Decl. ¶ 13; Ex. N, Johnson Decl. ¶ 12; Ex. O Nicholas Decl. ¶ 12; Ex. P, Garza Decl. ¶ 12; Ex. Q, Dugans Decl. ¶ 12; Ex. R, Davis Decl. ¶ 12; Ex. S, Evans Decl. ¶ 12; Ex. T, Melton Decl. ¶ 13; Ex. U, Broomfield Decl. ¶ 12; Ex. V, Pickens Decl. ¶ 12; Ex. W, Harris Decl. ¶ 12.

[10] *See also* Ex. C, Hebert Decl. ¶ 19; Ex. D, Monroe Decl. ¶ 16; Ex. E, Gonzalez Decl. ¶ 15; Ex. F, Moffett Decl. ¶ 15; Ex. G, Garcia Decl. ¶ 15; Ex. H, Brown Decl. ¶ 15; Ex. I, Herring Decl. ¶ 16; Ex. J Hopkins Decl. ¶ 15; Ex. K, Hendrix Decl. ¶ 14; Ex. L, Longstreet Decl. ¶ 16; Ex. M, Tompkin Decl. ¶ 15; Ex. N, Johnson Decl. ¶ 16; Ex. O, Nichols Decl. ¶ 15; Ex. P, Garza Decl. ¶ 15; Ex. Q, Dugans Decl. ¶ 14; Ex. R,

obtaining employment is critical for these individuals to achieve long-term economic stability, which they must do to become self-sufficient contributors to society.  *See id*. ¶ 49.

## V.     ADMINISTRATIVE DUE PROCESS COMPLAINTS DID NOT AND CANNOT ACHIEVE SYSTEMIC CHANGE.

Defendants' ongoing violations are systemic in nature, and can only be remedied through systemic relief, which cannot be achieved through the administrative remedies available to individuals in IDOC's custody who have been harmed by Defendants' violations.  Illustratively, two Named Plaintiffs, Exodus Hebert and Antonio Monroe, brought due process complaints to request systemic and individual relief to obtain special education and related services.  In both cases, the assigned Impartial Hearing Officer ("IHO") found that these individuals had been denied a FAPE while in IDOC's custody, but found that the IHO lacks jurisdiction to order systemic relief.

### A.     Exodus Hebert's Due Process Proceedings

On June 12, 2023, Mr. Hebert filed an administrative due process complaint, requesting both individual and systemic relief.  Ex. X, E. Hebert Due Process Decision, at 1.  In pre-hearing motions, the IHO denied the request for systemic relief on the basis that he can only order individual relief.  *See* Ex. Z, E. Hebert Hearing Officer Order (striking claims for systemic relief as outside of administrative hearing officer's jurisdiction).  The due process hearing took place from April 16 through April 19, 2024.  Ex. X, E. Hebert Due Process Decision, at 1.  IDJJ stipulated to the following pertinent facts, among others: (i) IDJJ is responsible for the education of inmates age 21 and within IDOC's custody, *id.* at 2; (ii) despite that statutory responsibility, IDJJ does not have ***any*** programs housed within IDOC facilities, nor has it assigned its staff to ***any*** IDOC facilities, *id.* 3; (iii) IDOC does not offer ***any*** special education and related services, nor does it

---

Davis Decl. ¶ 15; Ex. S, Evans Decl. ¶ 15; Ex. T, Melton Decl. ¶ 13; Ex. U, Broomfield Decl. ¶ 15; Ex. V, Pickens Decl. ¶ 15; Ex. W, Harris Decl. ¶ 15.

identify students potentially eligible for such services upon entry, *id.* at 5; and (iv) IDJJ and IDOC do not have *any* plan or agreement in place regarding the provision of special education and related services to students incarcerated in IDOC. *Id.*

On May 6, 2024, the IHO found that Mr. Hebert had been denied a FAPE while in IDOC's custody. *Id.* at 22. The IHO ordered that IDJJ convene an IEP meeting, provide 108 hours of counseling services, and provide 1,120 hours of compensatory special education services, among other relief. *Id.* at 28-30. Despite this Order, Mr. Hebert has not received the specialized instruction or related services as mandated by his IEP and ordered by the IHO. Complaint ("Compl."), ECF No. 1, at ¶ 1. Moreover, even if Defendants *had* provided the specific remedies required by the IHO's order, that individualized relief would not remedy Defendants' systemic failures to comply with IDEA.

B.     Antonio Monroe's Due Process Proceedings

On June 12, 2023, Mr. Monroe filed an administrative due process complaint, requesting both individual and systemic relief. Ex. Y, A Monroe Due Process Decision, at 2. In pre-hearing motions, the IHO denied the request for systemic relief on the basis that he can only order individual relief. The due process hearing took place in May 2024. Ex. AA, A. Monroe Hearing Officer Order (striking claims for systemic relief as outside of administrative hearing officer's jurisdiction). IDJJ similarly stipulated to the following facts: (i) IDJJ is responsible for the education of inmates age 21 and under within IDOC, Ex. Y, A Monroe Due Process Decision, at 6; (ii) IDJJ does not have *any* programs housed within IDOC facilities, nor does it assign its staff to *any* IDOC facilities, *id.*; (iii) IDOC does not offer *any* special education and related services, nor does it identify students potentially eligible for such services upon entry, *id.* at 7; and (iv) IDJJ and IDOC do not have *any* plan or agreement in place regarding the provision of special education and related services to students incarcerated in IDOC. *Id.*

15

On May 21, 2024, the IHO found in favor of Mr. Monroe, ordering IDOC and IDJJ to convene an IEP meeting, develop an IEP that included certain services, and provide Mr. Monroe with compensatory education, among other relief. *Id.* at 19-23. Despite this Order, Mr. Monroe has not received the specialized instruction or related services as mandated by his IEP and ordered by the IHO. Compl. ¶ 2. And as with the IHO's order in Mr. Hebert's case, even if IDOC and IDJJ did comply with the individualized relief ordered for Mr. Monroe, that relief would not remedy Defendants' systemic violations.

## LEGAL STANDARD

A party seeking a preliminary injunction must establish that: (1) its claim is likely to succeed on the merits; (2) absent preliminary relief, it is likely to suffer irreparable harm prior to final resolution of its claims; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *See United States v. NCR Corp.*, 688 F.3d 833, 837 (7th Cir. 2012). To establish a likelihood of success on the merits, a party does not need to show that it "definitely will win the case," nor must it establish proof by a preponderance of evidence—instead, this showing "normally includes a demonstration of how the applicant proposes to prove the key elements of the case." *Nat'l Inst. of Fam. & Life Advocates v. Raoul*, 685 F. Supp. 3d 688, 699 (N.D. Ill. 2023).

If the moving party satisfies each of these requirements, the court must then "weigh[] the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *USA-Halal Chamber of Com., Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 433 (N.D. Ill. 2019). Courts in the Seventh Circuit employ a "sliding scale approach" to balance these factors: the "more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Cook*

16

*Cnty. v. Wolf*, 962 F.3d 208, 234 (7th Cir. 2020). The Court's analysis of the "public interest" factor focuses on–"[the] effects that granting or denying the preliminary injunction would have on the public." *See id.*

## ARGUMENT

### I.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF EACH OF THEIR CLAIMS

Defendants' failures to provide ***any*** special education services and a high school education to students in IDOC's custody are systemic and ongoing. These failures (i) deprive Plaintiffs and the Plaintiff Class of a FAPE in violation of the IDEA and Illinois law, and their respective implementing regulations; and (ii) constitute discrimination on the basis of disability in violation of Section 504 of the Rehabilitation Act, the Americans with Disabilities Act (ADA), and their respective implementing regulations.

These failures cannot be cured on a student-by-student basis. This is not a case about a particular Defendant's failure to accommodate a particular student's unique educational needs— it is about Defendants' ***wholesale*** failure to establish ***any*** of the educational structures and support required by the IDEA. *See Easter v. D.C.*, 128 F. Supp. 3d 173, 178 (D.D.C. 2015) (systemic claims are "precisely the type of issue that cannot be addressed on a student-by-student basis during Due Process Hearings, but [are] better addressed by seeking injunctive relief in federal court[.]"). As such, these violations can only be remedied by an injunction requiring Defendants to institute appropriate systems, policies, and practices to ensure that special education services and a high school education are provided to members of the following subclasses:

**Current and Future Eligible Subclass:** All persons who as of the filing of the Complaint or at any time thereafter, (1) are or will be in the legal custody of IDOC; (2) entered IDOC custody prior to the expiration of their special education eligibility and are eligible to

17

receive special education; (3) had an IEP from their last educational placement at the time they entered IDOC custody and had not yet received their high school diploma; and (4) are being or will be denied special education services and high school education while in the legal custody of IDOC.

**Formerly Eligible Subclass:** All persons who as of June 1, 2006 or at any time thereafter, (1) are in the legal custody of IDOC; (2) entered IDOC custody prior to the expiration of their special education eligibility and are now past the age of eligibility; (3) had an IEP from their last educational placement and had not yet received their high school diploma; and (4) have been denied special education services and high school education while in the legal custody of IDOC.

Each Defendant shares in the responsibility for providing Plaintiffs and the Plaintiff Class with special education and related services. *See* disc. *supra* at 3-4; *see also Cmty. Consol. Sch. Dist. No. 54 v. Ill. State Bd. Of Educ.*, 576 N.E.2d 250, 255 (Ill. App. Ct. 1991) (finding that the school district at issue, Illinois Department of Mental Health and Developmental Disabilities, and ISBE share an interrelationship of responsibilities regarding the special education placement of a student, and ordering all three defendants to pay for student's attorney fees). And each Defendant has failed to uphold that responsibility. As discussed above, although IDJJ is responsible for providing special education to eligible students in IDOC's custody, IDJJ and IDOC have no interagency agreement in place to identify eligible students, to notify each other of students in need of special education services, or to provide those services. Indeed, IDOC and IDJJ have stipulated to these very facts in administrative due process proceedings involving certain Named Plaintiffs in this action. *See* Ex. X, E. Hebert Due Process Decision, at 5; Ex. Y, A. Monroe Due Process

Decision, at 7. ISBE has failed in its duties of oversight by failing to appropriately identify and remediate IDJJ and IDOC's noncompliance with the IDEA. *See* Ex. A, Krezmien Decl. ¶¶ 51-52.

    A.    <u>Defendants Are Systemically Violating Plaintiffs' Right to a FAPE Under the IDEA and Illinois Law</u>

The substantive rights, procedural protections, and remedies available to students with disabilities under the IDEA apply with equal force to students who are in adult correctional facilities. *See Donnell C. v. Ill. State Bd. Of Educ.,* 829 F. Supp. 1016, 1020 (N.D. Ill. 1993). The IDEA is a cornerstone of educational equity in the United States, ensuring that every child with disabilities is entitled to a FAPE. This law is designed not only to address their current educational requirements but also to "prepare them for further education, employment and independent living." 20 U.S.C. § 1400(d)(1)(A). To fulfill this mission, school districts and other responsible state entities like Defendants must comply with both the procedural and substantive mandates of the IDEA, thereby guaranteeing a FAPE for each student. *Bd. Of Educ. Of the Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. V. Rowley*, 458 U.S. 176, 205-06 (1982) ("Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process . . . as it did upon the measurement of the resulting IEP against a substantive standard.").

A plaintiff may establish a claim for deprivation of a FAPE in violation of the IDEA based on substantive deficiencies, procedural defects, or both. *See Fam. & Child.'s Ctr., Inc. v. Sch. City of Mishawaka*, 13 F.3d 1052, 1060 (7th Cir. 1994) ("[T]he IDEA conditions federal assistance upon a state's compliance with the substantive and procedural goals of the Act."); *see also Rowley*, 458 U.S. at 205-06 (similar). Here, Defendants are responsible for both substantive and procedural violations of their obligations to provide a FAPE.

19

To prevail on a deprivation of a FAPE claim based on a procedural violation, a student must establish (1) that the public agency responsible for providing educational services to the student with a disability failed to comply with the IDEA's identification, evaluation, or placement procedures or with the IDEA's procedural safeguards; and (2) that the procedural inadequacy impeded the student's right to a FAPE; significantly impeded the student's opportunity to participate in the decision-making process regarding the provision of a FAPE to the student; or caused a deprivation of an educational benefit. *See* 20 U.S.C. §1415(f)(3)(E)(ii); 34 C.F.R. §300.513(a)(2); *see also Kevin T. v. Elmhurst Cmty. Sch. Dist. No. 205*, 2002 WL 433061, at *5 (N.D. Ill. Mar. 20, 2002) ("[P]rocedural inadequacies that result in the loss of educational opportunity… result in the denial of a [FAPE].").  Actionable procedural violations of the IDEA may include a public agency's failure to identify students with disabilities, *see T.H. v. DeKalb Cnty. Sch. Dist.*, 564 F.Supp.3d 1349, 1358 (N.D. Ga. 2021) (procedural violation found where "no practical method exists for identifying detainees with disabilities" in Georgia correctional facility), or undue delay in completing an initial evaluation or periodic reevaluation, *see Artichoker v. Todd Cnty. Sch. Dist.*, 2016 WL 7489033, at *6 (D.S.D. Dec. 29, 2016).

As discussed above, IDOC and IDJJ do not have *any* systems, policies, or practices in place to identify students who have IEPs in place upon their entry into IDOC custody.  *See* disc. *supra* at 6-8.  They have no process for obtaining student education records for individuals who enter IDOC custody, including student IEPs and student evaluations.  *See* Ex. B, Krezmien Decl. ¶ 15.  They do not ask even the most basic of questions during intake to determine whether a student has a current IEP, if they ever had an IEP, if they ever received special education services, if they ever had smaller classes, or if they ever received extra support in reading or mathematics. *See id*. ¶¶ 15, 20.  They do not conduct *any* initial evaluation to assess whether an individual who enters custody

has a disability; the only form of educational assessment is the TABE test, which is neither designed for nor an adequate means of identifying students with disabilities. *See id.* ¶ 21. And even when a non-disability related needs assessment—which does not identify disability-related needs—is completed at IDOC, those assessments are not administered until *after* a student enrolls in a mandatory ABE class, well after their arrival at IDOC. *See id*. ¶ 24. This failure to identify individuals upon arrival often results in individuals aging out of special education eligibility and a subsequent loss of a federal entitlement. Nor has IDOC or IDJJ established ***any*** mechanism for notifying eligible students of their right to a FAPE while in IDOC's custody. *See id.* ¶ 27. Finally, IDOC and IDJJ do not have policies, practices, or procedures in place to hold IEP meetings with students with disabilities. *See id.* ¶¶ 15, 30. Each of these failures plainly impedes a student's right to a FAPE, impedes their opportunity to participate in decision-making processes regarding the provision of a FAPE, and causes a deprivation of educational benefits. Thus, Defendants have violated Plaintiffs' and the Plaintiff Class's procedural rights under the IDEA.

To establish a substantive IDEA violation, a student may demonstrate that they have been deprived of services in accordance with his or her IEP. *See, e.g.*, *Vincent v. Kenosha Unified Sch. Dist.*, 2012 WL 4470515, at \*10 (E.D. Wis. Sept. 26, 2012) (affirming an administrative law judge's decision that "a 'special needs child who is not provided services in accordance with an IEP is, by definition, denied a FAPE.'"); *T.H.*, 564 F.Supp.3d at 1359 (failure "to implement substantial or significant provisions of the child's IEP" violated the IDEA). Although IEPs are individualized to meet the unique needs of each student, ***all*** IEPs by definition impose obligations on the responsible public agencies to provide some form of special education services. 20 U.S.C. § 1414(d)(1)(A)(i)(IV) (defining an IEP as "a written statement for each child with a disability . . . that includes . . . a statement of the special education and related services . . . to be provided to

the child").  Therefore, a wholesale failure to provide *any* special education and related services is necessarily a denial of a FAPE, and thus a substantive IDEA violation.  *See, e.g.*, *Nein v. Greater Clark Cnty. Sch. Corp*., 95 F. Supp. 2d 961, 963 (S.D. Ind. 2000) (finding that the defendant "failed to meet its obligation under the IDEA to provide minimally adequate educational services" to the plaintiff.); *Wade v. Dist. of Columbia*, 322 F. Supp. 3d 123, 134 (D.D.C. 2018) (holding that the student was denied a FAPE when the District of Columbia Public Schools failed to provide "more than one-fourth of the specialized instruction hours prescribed by [the student's] IEP"); *Edward M.-R. v. Dist. of Columbia*, 660 F. Supp. 3d 82, 101 (D.D.C. 2023) ("if [a student with disability] does not receive services and therapy in the manner prescribed by the IEP, she is denied a FAPE.").

As discussed above, Defendants have failed to establish *any* systems, policies, or practices required to deliver *any* form of special education and related services to students with disabilities in IDOC's custody, and none of the Named Plaintiffs have in fact received *any* form of specialized instruction or related services while in IDOC's custody.  *See* disc. *supra*, at 9-10.  Likewise, IDOC and IDJJ have also failed to establish the necessary systems, policies, and practices to provide the related services that the IDEA mandates must accompany special education services, which are necessary supports for students to realize the benefits of educational programming.  *See* 20 U.S.C. § 1401(26)(A).

Plaintiffs and the Plaintiff Class are likely to prevail on the merits of their claims for deprivation of a FAPE under the IDEA and the Illinois School Code.

B.    Defendants' Actions Systematically Discriminate Against Students with Disabilities in Violation of the ADA and the Rehabilitation Act

Defendants' failures as described above also discriminate against Plaintiffs and the Plaintiff Class on the basis of disability, in violation of the ADA and Section 504 of the Rehabilitation Act ("Section 504").

Section 504 requires that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from participation, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Section 504 further states that, "[f]or the purposes of this section, the term 'program or activity' means all of the operations of . . . a local educational agency . . . or other school system[.]" 29 U.S.C. § 794(b)(2)(B). The regulations relating to Section 504 provide that "[a] recipient that operates a public elementary or secondary education program or activity shall provide a free appropriate public education to each qualified handicapped" student in its jurisdiction. 34 C.F.R. § 104.33(a).

Similarly, the ADA prohibits exclusion on the basis of disability and discrimination against individuals with disabilities in major areas of public life, including public services, programs, and activities under Title II. *See* 42 U.S.C. § 12132 ("Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."). It was designed to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," 42 U.S.C. § 12101(b)(1), and address both intentional discrimination and discrimination that is the product of "thoughtlessness and indifference." *Lacy v. Cook Cnty.*, 897 F.3d 847, 863 (7th Cir. 2018) (certifying class of detainees and affirming permanent injunction under the ADA). These protections apply to individuals with disabilities in both adult and juvenile jails and prisons. *See id.*; 29 U.S.C. § 749; 28 C.F.R. § 35.152(a). The ADA requires reasonable accommodations and modifications to ensure that people with disabilities are not excluded from

23

or denied the benefits of the programs of a public entity. 42 U.S.C.§ 12132; 28 C.F.R. § 35.130(b)(7).

The elements of claims under Title II of the ADA and Section 504 of the Rehabilitation Act are nearly identical. *Silk v. City of Chicago*, 194 F.3d 788, 798 n.6 (7th Cir. 1999) ("A plaintiff who brings claims under both the ADA and the Rehabilitation Act, statutes that are nearly identical, can prove his claims by presenting either direct or indirect evidence of discrimination.").[11] Plaintiffs must show they (1) are "a qualified individual with a disability;" (2) were denied the "benefits of the services, programs, or activities" of Defendants or were "otherwise subjected to discrimination by such an entity;" and (3) "that the denial or discrimination [was] by reason of" their disability. *Lacy*, 897 F.3d at 853. Plaintiffs satisfy each element.

*First*, Plaintiffs are qualified individuals with a disability. An individual with a disability is "[one who has] a physical or mental impairment that substantially limits one or more [of their] major life activities," including, among other things, learning. 42 U.S.C. § 12102(1)(A). A "qualified individual with a disability" is "an individual with a disability who . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Each Named Plaintiff and Plaintiff Class member is a qualified individual, as they are entitled to a high school education by law and have been identified as individuals with disabilities under the IDEA. *See Andrew M. v. Del. Cnty. Off. of Mental Health & Mental Retardation*, 490 F.3d 337, 350 (3d Cir. 2007) ("When a state fails to provide a disabled child with a free and appropriate public education, it violates the IDEA.

---

[11] The Rehabilitation Act "includes as an additional element the receipt of federal funds [by the public agency], which all states accept for their prisons." *Jaros v. Ill. Dep't of Corrs.*, 684 F.3d 667, 671 (7th Cir. 2012).

However, it also violates the [Rehabilitation Act] because it is denying a disabled child a guaranteed education merely because of the child's disability.").

*Second*, Defendants have failed to provide reasonable accommodations to allow Plaintiffs access to educational programming. Reasonable accommodations "must be sufficient to provide a disabled person with an 'equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement' as a person who is not disabled." *See Pierce v. Dist. of Columbia*, 128 F. Supp. 3d 250, 266 (D.D.C. 2015) (citing *Alexander v. Choate*, 469 U.S. 287, 305 (1985)). As stated above, IDOC provides GED programming in its facilities, but access to this programming is contingent on attaining a certain TABE score. *See* disc. *supra* at 12. IDOC also provides vocational training and post-secondary college courses in its facilities, but access to these programs requires students to possess a high school diploma or a GED. *See* Ex. B, Krezmien Decl. ¶ 47. Without appropriate accommodations, students with disabilities are not equipped to achieve the required TABE score to test into the GED programming, and their only educational option is to participate in ABE (which itself does not provide special education instruction or accommodations). *See id.* ¶¶ 43, 47. And because vocational training and post-secondary education is only offered to those with a GED or equivalent, Named Plaintiffs and members of the Plaintiff Class are unlikely to have the opportunity to participate in such offerings. *See id.* Thus, because of Defendants' failures to make reasonable accommodations, Named Plaintiffs and members of the Plaintiff Class do not have an equal opportunity to obtain the benefits of Defendants' educational programming or reach the same level of achievement as their general-education peers. *See Pierce*, 128 F. Supp. 3d at 272 (finding that the District violated the ADA and Section 504 of the Rehabilitation Act where prison officials failed to provide individuals in

25

custody with accommodations that were necessary for them to access the prison's programs and services). .

*Third*, the denial of educational programming impacts Named Plaintiffs and members of the Plaintiff Class because of their status as individuals with disabilities. The Seventh Circuit has held that public entities have an independent duty to take "prophylactic" steps to accommodate individuals with disabilities when necessary to avoid discrimination. *Wisc. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006). In other words, a plaintiff can "demonstrate discrimination on the basis of disability by [the City's] refusal to make a reasonable accommodation." *Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 848 (7th Cir. 1999) ("[I]t is possible to demonstrate discrimination on the basis of disability by a defendant's refusal to make a reasonable accommodation."); *Hirsch v. Will Cnty., Illinois,* 2021 WL 1531602, at \*3 (N.D. Ill. Apr. 19, 2021) (same). Plaintiffs, as evidenced by their IEPs, need specialized education to learn. Defendants' failure to provide special education and related services and other reasonable accommodations puts Plaintiffs at a disadvantage vis-à-vis their non-disabled peers, and hamstrings their ability to learn and attain the TABE qualifications needed to access Defendants' other programming. *See* Ex. B, Krezmien Decl. ¶¶ 44, 46-47. General-education students do not face these same barriers.

In sum, Defendants have deprived Plaintiffs of the benefits of the limited educational programming that *is* available to them on the basis of disability, in violation of the ADA and Section 504. *See Love v. Westville Corr. Ctr.*, 103 F.3d 558, 561 (7th Cir. 1996). Plaintiffs are thus likely to prevail on the merits of their ADA and Section 504 claims.

    C.    <u>Plaintiffs Have Standing.</u>

In order to prevail on the merits of their claims, Plaintiffs must also demonstrate their Article III standing, which requires them to show that (1) they have suffered an "injury in fact that

is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) the injury is "fairly traceable to the challenged action" of Defendants; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

Plaintiffs satisfy each of these requirements. First, each Plaintiff has been injured in fact by Defendants' denial of a FAPE in violation of the IDEA, and by their discriminatory conduct on the basis of disability in violation of the Rehabilitation Act and the ADA. *See* disc. *supra* at 13-14. Second, that injury is more than "fairly traceable" to Defendants' actions. Defendants are collectively responsible under federal and state law for ensuring the provision of special education services and a high school education to Plaintiffs, and the harm Plaintiffs have suffered as a result of the deprivation of those services thus flows directly from Defendants' actions (and inactions). *See* disc. *supra* at 3-4, 13-14. Finally, Plaintiffs' injuries will clearly be redressed by a favorable decision. Each Named Plaintiff and member of the Plaintiff Class either is currently eligible for special education services (the "Currently Eligible Subclass") or ***was*** eligible during their incarceration in IDOC, and suffered the consequences of Defendants' violations (the "Previously Eligible Subclass"). The relief sought in the Complaint and this motion is specifically constructed to enjoin, and remedy the effects of, Defendants' injurious conduct against both groups by requiring Defendants to provide access to special education and a high school credit-bearing education to Named Plaintiffs and the Plaintiff Class.

## II.   PLAINTIFFS WILL SUFFER IRREPARABLE INJURY IF A PRELIMINARY INJUNCTION IS NOT GRANTED

To establish an inadequate remedy at law, Plaintiffs must show that they are likely to suffer irreparable harm absent the issuance of temporary and injunctive relief. *See Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. Of Educ.*, 858 F.3d 1034, 1044-45 (7th Cir. 2017). Without this

Court's swift action, Plaintiffs will wait many years or longer for the education to which they are legally entitled. For some, it will be too late. They will have exited IDOC's custody and be left with diminished employment prospects and an increased likelihood of recidivism. *See* Ex. B, Krezmien Decl. ¶ 45. Named Plaintiffs and the Plaintiff Class do not seek monetary damages in this action. Instead, they seek to attain special education services and a high school education, thereby better positioning themselves to seek gainful employment, provide for themselves, and contribute to society upon their release.

The IDEA recognizes that for individuals with disabilities, special education services are necessary to achieve these goals. Courts have repeatedly held that the failure to provide an appropriate education in violation of the IDEA constitutes irreparable harm, for which there is no adequate remedy at law. *See, e.g.*, *Tindell v. Evansville-Vanderburgh Sch. Corp.*, 2010 WL 557058, at *5 (S.D. Ind. Feb. 10, 2010) (recognizing that "[t]he denial of a FAPE over an extended period does constitute harm, and the longer that denial continues, the more irreparable it becomes.") (internal citation omitted); *see also R.F. v. Bd. of Educ.*, 2022 WL 1805099, at *11 (N.D. Ill. June 2, 2022) ("A deprivation of meaningful education services to a child who depends on them constitutes an irreparable injury[.]" ); *Massey,* 400 F. Supp. 2d at 75 (finding that the failure to provide a free appropriate public education (FAPE) constituted irreparable harm).

Time is of the essence for Named Plaintiffs and members of the Plaintiff Class. Without the services and accommodations mandated under the IDEA, these individuals will not receive a FAPE and will lose critical years in their educational development. *See* Ex. B, Krezmien Decl. ¶ 35. Each day these individuals spend without the benefit of necessary educational supports and accommodations is a day lost in their educational development. *See Skelly v. Brookfield LaGrange Park Sch. Dist. 95*, 968 F. Supp. 385, 396 (N.D. Ill. 1997) (plaintiff will "suffer irreparably from

the lack of educational and social interaction . . . Such lost days could not be replaced in [plaintiff's] educational life."). The harms they will face absent relief are severe and long-lasting. Deprivation of special education services is likely to result in negative academic outcomes for these individuals, which will pose detrimental long-term effects on their wellbeing and quality of life. *See* Ex. B, Krezmien Decl. ¶¶ 19, 45, 49. These effects will, in turn, increase their likelihood of negative economic outcomes, thereby increasing their likelihood of recidivism and reincarceration. *Id.* ¶ 50. No form of legal relief is an adequate remedy for those injuries, which Plaintiffs will continue to suffer if they do not receive swift injunctive relief.

## III. THE BALANCE OF HARMS WEIGHS IN PLAINTIFFS' FAVOR

Once a party seeking a preliminary injunction demonstrates a reasonable likelihood of success on the merits, irreparable harm, and the inadequacy of legal remedies, a court will then "weigh[ ] the balance of harm to the parties if the injunction is granted or denied." *See Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012). The strength of the moving party's likelihood of success on the merits affects the balance of harm, in that "[t]he more likely it is that the moving party will win its case on the merits, the less the balance of harms need weigh in its favor." *Id.* Given the strength of Plaintiffs' likelihood of success on the merits, the Court can quickly dispense with this factor. Nevertheless, the balance of harm weighs heavily in Plaintiffs' favor.

As described above, "[t]he failure to provide an appropriate education is a serious harm." *Massey v. D.C.*, 400 F. Supp. 2d 66, 75 (D.D.C. 2005); *see also R.F.*, 2022 WL 1805099, at *11. Absent the requested preliminary injunctive relief, Plaintiffs will lose critical time in their educational development, which is likely to result in serious negative outcomes to their employment prospects, wellbeing, and quality of life, even increasing their likelihood of recidivism. *See* Krezmien Decl. ¶¶ 19, 45, 49.

29

By contrast, Defendants will suffer no countervailing harm in providing special education and related services and a high school education to Plaintiffs, because the relief sought will only effectuate rights that Plaintiffs *already have* and that Defendant are *already obligated to provide* under federal and state law. *See United Air Lines, Inc. v. Air Line Pilots Ass'n., Int'l*, 2008 WL 4936847, at *45 (N.D. Ill. Nov. 17, 2008), *aff'd* 563 F.3d 257 (7th Cir. 2009) (issuing injunction against defendant "imposes no legally cognizable harm on [the defendant], because it merely requires them to satisfy their existing legal obligations under" federal law). Courts have found that public entities' assertions of financial or budgetary hardship do not excuse their obligations under the IDEA, nor do they supply a basis for resisting injunctive relief that would enforce those obligations. *See Massey*, 400 F. Supp. 2d at 75 ("While this Court is sensitive to the budgetary pressures facing any public school district, [the District of Columbia Public Schools] cannot be allowed to violate the IDEA and then plead immunity to sanctions because of its financial situation."). Plaintiffs do not ask Defendants to do any more than what they are *already required to do* under federal and state law, and any purported harm Defendants may cite will pale in comparison to the harm Plaintiffs and members of the Plaintiff Class will suffer if the injunction is denied.

Moreover, as Dr. Krezmien explains, IDJJ and IDOC have the ability to safely provide special education, credit-bearing high school education programming, and related services to individuals with disabilities in IDOC custody. Ex. B, Krezmien Decl. ¶¶ 55-56. Although the necessity of interagency cooperation between IDOC and an outside agency such as IDJJ presents challenges, IDOC and IDJJ are capable of developing and implementing the requisite collaborative mechanisms to comply with their obligations to provide these services. *Id.* ¶¶ 57-59. Indeed, IDJJ *already* operates credit-bearing high school education programs in juvenile correctional facilities

in Illinois, and thus possesses the requisite knowledge and experience to implement education and special education in correctional settings. *Id.* Moreover, IDOC currently operates a college-based program in partnership with an outside university that provides college programming inside IDOC. *See id.* ¶ 15. This demonstrates that IDOC has developed systems, policies, and practices to accommodate diverse educational programming within their prisons. *Id.* As such, by granting the requested relief, the Court would not be imposing obligations on Defendants that they are unable to fulfill.

## IV. THE PUBLIC INTEREST WOULD BE SERVED BY A PRELIMINARY INJUNCTION.

In its balancing analysis, the Court must also evaluate whether granting the preliminary injunction would be in the public interest. *Planned Parenthood of Ind.*, 699 F.3d at 972. Here, the public interest decisively favors a preliminary injunction mandating that Defendants fulfill their statutory obligations under the IDEA. Indeed, "[t]he public interest lies in the proper enforcement of the IDEA and in securing the due process rights of special education students and their parents provided by statute." *See R.F.*, 2022 WL 1805099, at *11. Furthermore, ensuring the provision of special education and related services to eligible incarcerated students enhances their prospects for economic stability upon release from IDOC. This, in turn, reduces their likelihood of criminal recidivism, *see* Ex. B, Krezmien Decl. ¶ 58, thereby serving the public interest.

## CONCLUSION

Defendants have failed to implement policies, procedures, and practices to ensure that Plaintiffs and the Plaintiff Class receive the special education services and a high school education they are entitled to under the IDEA and Illinois law, and have discriminated against them in violation of the Rehabilitation Act and the ADA. Without this Court's swift intervention, Named

Plaintiffs and the Plaintiff Class will continue to suffer the serious educational consequences resulting from Defendants' deprivation of this necessary educational support. Accordingly, this Court should issue a preliminary injunction, in the form of the Proposed Order attached hereto, requiring Defendants to immediately develop and implement adequate and effective policies to identify eligible students and notify them of their right to a FAPE, and provide them with the special education services and a high school education to which they are legally entitled while in IDOC custody.

Dated: September 25, 2024                  Respectfully submitted,

                                           /s/ Johanna Spellman

                                           Johanna Spellman (ARDC No. 6293851)
                                           johanna.spellman@lw.com
                                           Terra Reynolds (ARDC No. 6278858)
                                           terra.reynolds@lw.com
                                           Nicholas Hazen (ARDC No. 6341719)
                                           nicholas.hazen@lw.com
                                           LATHAM & WATKINS LLP
                                           330 North Wabash Avenue, Suite 2800
                                           Chicago, Illinois 60611
                                           Telephone: (312) 876-7700
                                           Facsimile: (312) 993-9767

                                           *Attorneys for Named Plaintiffs and class members*

                                           Olga Pribyl (ARDC No. 6190672)
                                           olga@equipforequality.org
                                           Sujatha Jagadeesh Branch (Washington State Bar
                                           No. 51827)
                                           sujatha@equipforequality.org
                                           Rachel Shapiro (ARDC No. 6290735)
                                           Rachel@equipforequality.org
                                           Alexandra Kuske (ARDC No. 6336210)
                                           Alexandra@equipforequality.org
                                           Brianna Hill (ARDC No. 6336043)
                                           brianna@equipforequality.org
                                           EQUIP FOR EQUALITY
                                           20 N. Michigan Avenue, Suite 300
                                           Chicago, IL 60602
                                           Telephone: (312) 341-0022
                                           Facsimile: 312-800-0912

*Attorneys for Named Plaintiffs and class members*