**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EXODUS HEBERT, ANTONIO MONROE, DAMEN GONZALEZ, DELEON MOFFETT, GEORGE GARCIA, JEREMIAH BROWN, ISAIHA HERRING, THAILAN HOPKINS, SHIRICE HENDRIX, DARRION LONGSTREET, ANTWON TOMPKIN, IVAN JOHNSON, KEYSHAWN NICHOLS, JESSE GARZA, NYREE DUGANS, ANTJUAN DAVIS, AMARU EVANS, ROBERT "RAVEN" MELTON, QURAN BROOMFIELD, DASHEEM PICKENS, and DELCHEVA HARRIS, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>   v.<br><br>ILLINOIS DEPARTMENT OF CORRECTIONS, ILLINOIS DEPARTMENT OF JUVENILE JUSTICE and ILLINOIS STATE BOARD OF EDUCATION,<br><br>     Defendants. | Case No.  1:24-cv-07950-SLE<br><br>District Judge Sara L. Ellis<br><br>Magistrate Judge Beth W. Jantz |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................1

FACTUAL BACKGROUND .........................................................................................2

ARGUMENT ..................................................................................................................5

    **A.**    The Class and Subclasses Are Ascertainable ...........................................7

    **B.**    The Plaintiff Class and the Subclasses Satisfy Rule 23(a) ...................10

        1.    The Class Is So Numerous that Joinder of All Members Is Impractical .......................................................................................10

        2.    Questions of Law and Fact Are Common to the Class ...........14

        3.    Named Plaintiffs' Claims Are Typical of the Class..................18

        4.    Named Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class ...............................................20

    **C.**    Defendants Have Refused to Act On Grounds That Apply Generally to the Class and Certification Under Rule 23(b)(2) Is Warranted .................24

CONCLUSION...............................................................................................................27

i

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Adam X. v. New Jersey Dep't of Corr.*,
  2022 WL 621089 (D.N.J. Mar. 3, 2022) ................................................................25

*All. to End Repression v. Rochford*,
  565 F.2d 975 (7th Cir. 1977) ............................................................................8

*Amchem Prods., Inc.v. Windsor*,
  521 U.S. 591 (1997) .......................................................................................24

*Barragan v. Evanger's Dog & Cat Food Co., Inc.*,
  259 F.R.D. 330 (N.D. Ill. 2009) .......................................................................10

*Beavers v. Sielaff*,
  400 F. Supp. 595 (N.D. Ill. 1975) ...................................................................13

*Brown v. Cook Cnty.*,
  332 F.R.D. 229 (N.D. Ill. 2019) .......................................................................19

*Carnegie v. Household Int'l., Inc.*,
  376 F.3d 656(7th Cir. 2004) .............................................................................6

*Cavin v. Home Loan Ctr., Inc.*,
  236 F.R.D. 387 (N.D. Ill. 2006) ................................................................21, 22

*Chapman v. Wagener Equities Inc.*,
  747 F.3d 489 (7th Cir. 2014) ...........................................................................10

*Chicago Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chicago*,
  797 F.3d 426 (7th Cir. 2015) ......................................................................7, 24

*Christakos v. Intercounty Title Co.*,
  196 F.R.D. 496 (N.D. Ill. 2000) .......................................................................10

*Clarkson v. Coughlin*,
  145 F.R.D. 339 (S.D.N.Y. 1993) ......................................................................13

*DL v. Dist. of Columbia*,
  860 F.3d 713, 726 (D.C. Cir. 2017) ............................................................24, 25

*Dunn v. City of Chicago*,
  231 F.R.D. 367 (N.D. Ill. 2005) .......................................................................15

*Eagle v. Vee Pak, Inc.*,
   343 F.R.D. 552 (N.D. Ill. 2023)........................................................................15, 19

*Evans v. Evans*,
   818 F. Supp. 1215 (N.D. Ind. 1993) ...............................................................14

*Fauley v. Heska Corp.*,
   326 F.R.D. 496 (N.D. Ill. 2018)........................................................................8

*Fosnight v. LVNV Funding, LLC*,
   310 F.R.D. 389 (S.D. Ind. 2015)......................................................................22

*Galoski v. Applica Consumer Prods.*,
   309 F.R.D. 419 (N.D. Ohio 2015) ...................................................................11

*Gaspar v. Linvatec Corp.*,
   167 F.R.D. 51 (N.D. Ill. 1996).........................................................................14

*Holmes v. Godinez*,
   11-cv-02961 (N.D. Ill.) ...................................................................................23

*Holmes v. Godinez*,
   311 F.R.D. 177 (N.D. Ill. 2015)........................................................................24

*Ind. C.L. Union Found. v. Superintendent*,
   336 F.R.D. 165 (S.D. Ind. 2020)......................................................................14

*J.N. v. Oregon Dep't of Educ.*,
   338 F.R.D. 256 (D. Or. 2021) ..........................................................................25

*Kaufman v. Am. Express Travel Related Servs. Co. Inc.*,
   264 F.R.D. 438 (N.D. Ill. 2009).......................................................................15

*King v. Landreman*,
   2020 WL 6146542 (W.D. Wis. Oct. 20, 2020)..................................................23

*Miller v. Spring Valley Properties*,
   202 F.R.D. 244 (C.D. Ill.2001) ........................................................................12

*Moehrl v. Nat'l Ass'n of Realtors*,
   2023 WL 2683199 (N.D. Ill. Mar. 29, 2023)....................................................15

*Monroe v. Meeks*,
   335 F.R.D. 201 (S.D. Ill. 2020) ........................................................................24

*Mullins v. Direct Digit., LLC*,
   795 F.3d 654 (7th Cir. 2015) ............................................................7, 8, 9, 10

*Nat'l Org. For Women, Inc. v. Scheidler*,
     172 F.R.D. 351 (N.D. Ill. 1997) ........................................................................8

*Olson v. Brown*,
     284 F.R.D. 398 (N.D. Ind. 2012) ....................................................................13

*Otero v. Dart*,
     306 F.R.D. 197 (N.D. Ill. 2014) ......................................................................20

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Allied Van Lines, Inc.*,
     231 F.R.D. 280 (N.D. Ill. 2005) ......................................................................19

*P.V. ex rel. Valentin v. Sch. Dist. of Philadelphia*,
     289 F.R.D. 227 (E.D. Pa. 2013) ......................................................................25

*Palmer v. Combined Ins. Co. of Am.*,
     217 F.R.D. 430 (N.D. Ill. 2003) ......................................................................24

*Phillips v. Waukegan Hous. Auth.*,
     331 F.R.D. 341 (N.D. Ill. 2019) ......................................................................13

*Phipps v. Sheriff of Cook Cnty.*,
     249 F.R.D. 298 (N.D. Ill. 2008) ......................................................................12

*Ploss v. Kraft Foods Grp., Inc.*,
     431 F. Supp. 3d 1003 (N.D. Ill. 2020) ............................................................21

*R.J. v. Vickery*,
     12-cv-07289 (N.D. Ill.) ....................................................................................23

*Rasho v. Walker*,
     07-cv-01298 (C.D. Ill.) ....................................................................................23

*Redmon v. Uncle Julio's of Illinois, Inc.*,
     249 F.R.D. 290 (N.D. Ill. 2008) ......................................................................22

*Rosario v. Cook Cnty.*,
     101 F.R.D. 659 (N.D. Ill. 1983) ......................................................................13

*Scott v. Dart*,
     99 F.4th 1076 (7th Cir. 2024) ....................................................................18, 19

*Shepherd v. ASI, Ltd.*,
     295 F.R.D. 289 (S.D. Ind. 2013) ....................................................................22

*Silverman v. Motorola, Inc.*,
     259 F.R.D. 163 (N.D. Ill. 2009) ......................................................................20

*Stone v. Signode Indus. Grp., LLC*,
  594 F. Supp. 3d 993 (N.D. Ill. 2022) ................................................................. 7

*Streeter v. Sheriff of Cook Cnty.*,
  256 F.R.D. 609 (N.D. Ill. 2009) ........................................................................ 15

*Suchanek v. Sturm Foods, Inc.*,
  764 F.3d 750 (7th Cir. 2014) ............................................................................. 15

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ........................................................................................... 15

*Walsh v. Kelley*,
  2021 WL 4459531 (N.D. Ill. Sept. 29, 2021) ..................................................... 8

*Whitney v. Khan*,
  330 F.R.D. 172 (N.D. Ill. 2019) .......................................................................... 8

## STATUTES

105 ILCS
  5/13-40 ................................................................................................................ 9
  5/14-1.02 ......................................................................................................... 2, 9

23 Ill. Admin. Code
  § 226.50 .............................................................................................................. 2
  § 226.50(a) ........................................................................................................ 16

20 U.S.C.
  § 1400, *et seq.* ............................................................................................. 2, 16
  § 1401(9)(D) ....................................................................................................... 2
  § 1412(a)(1)(A) ............................................................................................... 2, 9
  § 1414(d)(1)(A)(i)(II)(aa) .................................................................................. 2
  § 1414(d)(2)(C)(ii)(I) ........................................................................................ 11

29 U.S.C. § 794(a) ............................................................................................. 2, 16

42 U.S.C.
  § 12101, *et seq.* ............................................................................................... 16
  § 12132 ................................................................................................................ 2

# RULES

Fed. R. Civ. P.
    23(a)(1) .................................................................................................10
    23(a)(2) .................................................................................................14
    23(a)(3) .................................................................................................18
    23(a)(4) .................................................................................................20
    23(b)(2) .................................................................................................24
    23(c)(5) ...................................................................................................6
    23(g)(1)(A)...........................................................................................22

# TREATISES

Newberg and Rubenstein on Class Actions § 3:5 (6th ed.) ..........................8

# REGULATIONS

28 C.F.R. § 35 *et seq.* ....................................................................................2

34 C.F.R.
    § 104 *et seq*. ........................................................................................2
    § 300.101(a) ...........................................................................................2
    § 300.121(a) .........................................................................................16
    § 300.503.............................................................................................16

# OTHER AUTHORITIES

Illinois Department of Corrections Fiscal Year 2018 Annual Report, available at
    https://idoc.illinois.gov/content/dam/soi/en/web/idoc/reportsandstatistics/docu
    ments/fy18-annual-report-final.pdf;..........................................................12

Illinois Department of Corrections Fiscal Year 2019 Annual Report, available at
    https://idoc.illinois.gov/content/dam/soi/en/web/idoc/reportsandstatistics/docu
    ments/idoc-fy19-annual-report.pdf; ..........................................................12

Illinois Department of Corrections Fiscal Year 2020 Annual Report, available at
    https://idoc.illinois.gov/content/dam/soi/en/web/idoc/reportsandstatistics/docu
    ments/fy20-annual-report-final.pdf..........................................................12

Illinois Department of Corrections, Parole Population on 06-30-24 Data Set,
    available at
    https://idoc.illinois.gov/content/dam/soi/en/web/idoc/reportsandstatistics/docu
    ments/popdatasets/parole/June-2024-Parole.xls ...............................11, 13

Illinois Department of Corrections, Prison Population on 06-30-24 Data Set,
    available at
    https://idoc.illinois.gov/content/dam/soi/en/web/idoc/reportsandstatistics/docu
    ments/popdatasets/prison-pop/June-2024-Prison.xls;......................11, 13

Illinois Report Card, School District 428 IYC-HRB, available at
https://www.illinoisreportcard.com/School.aspx?source=studentcharacteristics
&source2=iep&Schoolid=601054280303028 ......................................................................11

## INTRODUCTION

This case is brought on behalf of young people with disabilities in the custody of the Illinois Department of Corrections ("IDOC"), who want to turn their lives around by earning their high school diplomas so they can be employed upon their release and positively contribute to their community. Named Plaintiffs bring this case on behalf of themselves and others similarly situated to challenge the systemic and ongoing failure by IDOC, the Illinois Department of Juvenile Justice ("IDJJ"), and the Illinois State Board of Education ("ISBE") (collectively, "Defendants"), to provide legally-required special education and related services to students with disabilities who are in IDOC's legal custody. Named Plaintiffs also bring this action on behalf of themselves and others similarly situated to challenge Defendants' discriminatory treatment of them with regard to the failure to provide a Free Appropriate Public Education ("FAPE") in violation of federal and state law.

Named Plaintiffs are twenty-one adult students with disabilities and special education needs who are in the legal custody of IDOC. Both federal and Illinois law require Defendants to provide special education and related services and a high school education to individuals in IDOC custody, aged 18 through the end of the school year in which they turn 22, who enter IDOC with an individualized education program ("IEP") and with no high school diploma. But for ***nearly twenty years***, Defendants have failed to implement the necessary systems, policies, and practices to ensure the provision of these critical educational services and accommodations to eligible students in IDOC's custody. As a result, students who are currently eligible continue to be deprived of the special education and related services to which they are entitled, and many individuals who were eligible and should have received such services have aged out of eligibility due to Defendants' continuing violation of the law.

Named Plaintiffs hereby move for certification of a class under Rule 23(b)(2). As explained below, the proposed class and subclasses satisfy Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements. Furthermore, certification of Named Plaintiffs' claims for class-wide injunctive and declaratory relief under Rule 23(b)(2) is appropriate and necessary to provide uniform relief to remedy Defendants' systemic violations. The proposed class also satisfies Rule 23(g)(1) as Named Plaintiffs' counsel has the requisite experience in handling complex federal class actions and knowledge of the applicable law, as well as the resources to represent this class. Therefore, the Court should grant certification under Rule 23(b)(2).

## **FACTUAL BACKGROUND**

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, and Illinois law, 23 Ill. Admin. Code § 226.50, require that Defendants provide or otherwise ensure the provision of a FAPE to students with disabilities until the end of the school year in which the student turns 22. *See* 20 U.S.C. § 1412(a)(1)(A); 34 C.F.R. § 300.101(a); 105 ILCS 5/14-1.02. In order to provide a FAPE, Defendants must provide or otherwise ensure the provision of special education and related services and a high school education—as is required under each Plaintiff's and class member's IEP. *See* 20 U.S.C. § 1401(9)(D); 20 U.S.C. § 1414(d)(1)(A)(i)(II)(aa) (IEPs must be designed to "meet the child's needs that result from the child's disability to enable the child to be involved in and make progress in the general education curriculum."). Further, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), the Americans with Disabilities Act, 42 U.S.C. § 12132, and federal implementing regulations, 34 C.F.R. §§ 104 *et seq.*; 28 C.F.R. § 35 *et seq.*, prohibit discrimination on the basis of disability, and require that Defendants make reasonable accommodations to enable students with disabilities to access the benefits of the few educational programs Defendants do offer.

Defendants have, ***for almost twenty years***, neglected their legal responsibilities to students with disabilities, causing serious short-term and long-term harm to Named Plaintiffs and the Plaintiff Class. Specifically, Defendants have failed to implement ***any*** policies or practices to ensure Named Plaintiffs and the Plaintiff Class receive the special education and related services and a high school education to which they are entitled. *See, e.g.*, Declaration of Michael Krezmien ¶¶ 15-19 ("Krezmien Decl."), attached hereto as Exhibit A; E. Hebert Due Process Decision at 3, 5, attached hereto as Exhibit B (reciting stipulations that "there are no IDJJ programs currently housed within an IDOC facility and IDJJ's staff is not currently assigned to any IDOC facilities" and that "IDOC does not currently offer special education and related services."); A. Monroe Due Process Decision at 6-7, attached hereto as Exhibit C (same). Indeed, IDOC and IDJJ do not even have processes or procedures in place to obtain eligible students' IEPs or to otherwise identify students with disabilities who enter IDOC custody. *See* Ex. A, Krezmien Decl. ¶¶ 20, 23-25 (noting no evidence of ***any*** IDOC and IDJJ procedures to identify students with disabilities). The absence of special education and related services and high school within IDOC facilities, coupled with IDJJ's failure to provide these educational services and ISBE's failure to properly ensure and oversee the provision of such services, has led to a wholesale denial of a FAPE to Named Plaintiffs and the Plaintiff Class. *See, e.g.*, Ex. A, Krezmien Decl. ¶¶ 35-42, 51-52; *see also* Ex. B, E. Hebert Due Process Decision, at 18 (finding that because no special education services were provided to Mr. Hebert during his incarceration at IDOC, "the Student has been denied a free and appropriate education[.]"); Ex. C, A. Monroe Due Process Decision, at 19 (finding in favor of Mr. Monroe on the issue of whether the District denied him a FAPE).

The experiences of Named Plaintiffs are representative of those of the Plaintiff Class. Each Named Plaintiff entered IDOC's custody with a legally binding IEP identifying the need for special

education and related services, and was eligible for these services when they entered IDOC's custody.[1] But upon entering IDOC custody, none of Named Plaintiffs were asked whether they had an IEP from their last educational placement.[2] Further, none of Named Plaintiffs—despite having an IEP rendering them eligible for special education and related services—received *any* form of notice from IDJJ or IDOC that they were entitled to be provided special education and related services and a high school education while incarcerated.[3] And since entering IDOC's

---

[1] *See* Declaration of Exodus Hebert ¶ 4 ("Hebert Decl."), attached hereto as Exhibit D; Declaration of Antonio Monroe ¶ 4 ("Monroe Decl."), attached hereto as Exhibit E; Declaration of Damen Gonzalez ¶ 4 ("Gonzalez Decl."), attached hereto as Exhibit F; Declaration of Deleon Moffett ¶ 4 ("Moffett Decl."), attached hereto as Exhibit G; Declaration of George Garcia ¶ 4 ("Garcia Decl."), attached hereto as Exhibit H; Declaration of Jeremiah Brown ¶ 4 ("Brown Decl."), attached hereto as Exhibit I; Declaration of Isaiha Herring ¶ 4 ("Herring Decl."), attached hereto as Exhibit J; Declaration of Thailan Hopkins ¶ 4 ("Hopkins Decl."), attached hereto as Exhibit K; Declaration of Shirice Hendrix ¶¶ 3-4 ("Hendrix Decl."), attached hereto as Exhibit L; Declaration of Darrion Longstreet ¶ 4 ("Longstreet Decl."), attached hereto as Exhibit M; Declaration of Antwan Tompkin ¶ 4 ("Tompkin Decl."), attached hereto as Exhibit N; Declaration of Ivan Johnson ¶ 3 ("Johnson Decl."), attached hereto as Exhibit O; Declaration of Keyshawn Nichols ¶ 4 ("Nichols Decl."), attached hereto as Exhibit L; Declaration of Jesse Garza ¶ 4 ("Garza Decl."), attached hereto as Exhibit Q; Declaration of Nyree Dugans ¶ 4 ("Dugans Decl."), attached hereto as Exhibit R; Declaration of Antjuan Davis ¶ 4 ("Davis Decl."), attached hereto as Exhibit S; Declaration of Amaru Evans ¶ 4 ("Evans Decl."), attached hereto as Exhibit T; Declaration of Robert "Raven" Melton ¶ 4 ("Melton Decl."), attached hereto as Exhibit U; Declaration of Quran Broomfield ¶ 4 ("Broomfield Decl."), attached hereto as Exhibit V; Declaration of Dasheem Pickens ¶ 4 ("Pickens Decl."), attached hereto as Exhibit W; Declaration of Delcheva Harris ¶ 3 ("Harris Decl."), attached hereto as Exhibit X.

[2] *See* Ex. D, Hebert Decl. ¶ 7; Ex. E, Monroe Decl. ¶ 7; Ex. F, Gonzalez Decl. ¶ 7; Ex. G, Moffett Decl. ¶ 7; Ex. H, Garcia Decl. ¶ 7; Ex. I, Brown Decl. ¶ 7; Ex. J, Herring Decl. ¶ 7; Ex. K, Hopkins Decl. ¶ 7; Ex. L, Hendrix Decl. ¶ 6; Ex. M, Longstreet Decl. ¶ 7; Ex. N, Tompkin Decl. ¶ 7; Ex. O, Johnson Decl. ¶ 6; Ex. P, Nichols Decl. ¶ 7; Ex. Q, Garza Decl. ¶ 7; Ex. R, Dugans Decl. ¶ 7; Ex. S, Davis Decl. ¶ 7; Ex. T, Evans Decl. ¶ 7; Ex. U, Melton Decl. ¶ 7; Ex. V, Broomfield Decl. ¶ 7; Ex. W, Pickens Decl. ¶ 7; Ex. X, Harris Decl. ¶ 6.

[3] *See, e.g.*, Ex. D, Hebert Decl. ¶ 8; Ex. E, Monroe Decl. ¶ 9; Ex. F, Gonzalez Decl. ¶ 8; Ex. G, Moffett Decl. ¶ 8; Ex. H, Garcia Decl. ¶ 8; Ex. I, Brown Decl. ¶ 8; Ex. J, Herring Decl. ¶ 8; Ex. K, Hopkins Decl. ¶ 8; Ex. L, Hendrix Decl. ¶ 7; Ex. M, Longstreet Decl. ¶ 8; Ex. N, Tompkin Decl. ¶ 8; Ex. O, Johnson Decl. ¶ 7; Ex. P, Nichols Decl. ¶ 8; Ex. Q, Garza Decl. ¶ 8; Ex. R, Dugans Decl. ¶ 8; Ex. S, Davis Decl. ¶ 8; Ex. T, Evans Decl. ¶ 8; Ex. U, Melton Decl. ¶ 8; Ex. V, Broomfield Decl. ¶ 8; Ex. W, Pickens Decl. ¶ 8; Ex. X, Harris Decl. ¶ 8.

custody, no Named Plaintiff has received **any** form of special education or related services, nor **any** form of high school education. *See* Ex. A, Krezmien Decl. ¶ 17.[4]

Defendants' abdication of their legal responsibilities has impeded Named Plaintiffs' and the Plaintiff Class's educational advancement, further entrenching the cycle of disadvantage and recidivism that the correctional education system is meant to disrupt. *See* Ex. A, Krezmien Decl. ¶ 19.

## **ARGUMENT**

Plaintiffs Exodus Hebert, Antonio Monroe, Damen Gonzalez, Deleon Moffett, George Garcia, Jeremiah Brown, Isaiha Herring, Thailan Hopkins, Shirice Hendrix, Darrion Longstreet, Antwon Tompkin, Ivan Johnson, Keyshawn Nichols, Jesse Garza, Nyree Dugans, Antjuan Davis, Amaru Evans, Robert "Raven" Melton, Quran Broomfield, Dasheem Pickens, and Delcheva Harris (collectively, "Named Plaintiffs") on behalf of themselves and others similarly situated (the "Plaintiff Class"), ask this Court to certify a class pursuant to Federal Rule of Civil Procedure 23 consisting of: All persons who, as of June 1, 2006 or at any time thereafter, (1) are or will be in the legal custody of IDOC; (2) entered IDOC prior to the expiration of their special education eligibility and are or were eligible to receive special education; (3) had an IEP from their last education placement at the time they entered IDOC custody and had not yet received their high school diploma; and (4) are being, will be, or were denied special education services and a high school education while in the legal custody of IDOC.

---

[4] *See also* Ex. D, Hebert Decl. ¶ 9; Ex. E, Monroe Decl. ¶ 10; Ex. F, Gonzalez Decl. ¶ 9; Ex. G, Moffett Decl. ¶ 9; Ex. H, Garcia Decl. ¶ 9; Ex. I, Brown Decl. ¶ 9; Ex. J, Herring Decl. ¶ 9; Ex. K, Hopkins Decl. ¶ 9; Ex. L, Hendrix Decl. ¶ 8; Ex. M, Longstreet Decl. ¶ 9; Ex. N, Tompkin Decl. ¶ 9; Ex. O, Johnson Decl. ¶ 8; Ex. P, Nichols Decl. ¶ 9; Ex. Q, Garza Decl. ¶ 9; Ex. R, Dugans Decl. ¶ 9; Ex. S, Davis Decl. ¶ 9; Ex. T, Evans Decl. ¶ 9; Ex. U, Melton Decl. ¶ 9; Ex. V, Broomfield Decl. ¶ 9; Ex. W, Pickens Decl. ¶ 9; Ex. X, Harris Decl. ¶ 8.

The Plaintiff Class consists of the following two subclasses (the "Subclasses"):[5]

***Current and Future Eligible Subclass***:  All persons who as of the filing of the Complaint or at any time thereafter, (1) are or will be in the legal custody of IDOC; (2) entered IDOC custody prior to the expiration of their special education eligibility and are eligible to receive special education; (3) had an IEP from their last educational placement at the time they entered IDOC custody and had not yet received their high school diploma; and (4) are being or will be denied special education services and a high school education while in the legal custody of IDOC.

***Formerly Eligible Subclass***:  All persons who as of June 1, 2006 or at any time thereafter, (1) are in the legal custody of IDOC; (2) entered IDOC custody prior to the expiration of their special education eligibility and are now past the age of eligibility; (3) had an IEP from their last educational placement at the time they entered IDOC custody and had not yet received their high school diploma; and (4) have been denied special education services and a high school education while in the legal custody of IDOC.

Certification of the Plaintiff Class and the Subclasses is warranted and needed to remedy Defendants' systemic failure to fulfill their legal responsibilities, which has deprived students with disabilities of special education and related services, and a high school education, thereby depriving them of their right to a FAPE, as required by federal and Illinois law.

Named Plaintiffs' experiences are not isolated incidents, but instead are representative of Defendants' systemic and ongoing violations of the IDEA, the Rehabilitation Act, the ADA, and Article 14 of the Illinois School Code.  Thus, Named Plaintiffs seek, for themselves and on behalf of the Plaintiff Class, declaratory and injunctive relief to challenge and remedy Defendants' abdication of their responsibilities and the harm Defendants have caused and continue to cause. The proposed class action is the most efficient and effective vehicle to address Defendants' failures and compel Defendants to comply with their statutory and regulatory duties.  Courts "liberally

---

[5] Federal Rule of Civil Procedure 23(c)(5) expressly authorizes such subdivision of a class.  Fed. R. Civ. P. 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this rule."); *see also Carnegie v. Household Int'l., Inc.*, 376 F.3d 656, 661(7th Cir. 2004) (recognizing the creation of subclasses as a tool available to district courts).

interpret[]" Rule 23 to promote "efficiency and economy of litigation," as the Rule's "policy is to favor maintenance of class actions." *Stone v. Signode Indus. Grp., LLC*, 594 F. Supp. 3d 993, 996 (N.D. Ill. 2022). Class actions are favored where, as here, plaintiffs assert claims of class-based discrimination or other unlawful conduct against a class of individuals. *See Chicago Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 441 (7th Cir. 2015) ("[C]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples of Rule 23(b)(2) classes.").

Plaintiffs readily satisfy the criteria for class certification under Federal Rules of Civil Procedure 23(a) and 23(b)(2). First, the Plaintiff Class and the Subclasses are too numerous for individual joinder, encompassing hundreds of individuals with disabilities who are in IDOC custody. Second, Named Plaintiffs challenge Defendants' system-wide lack of policies and practices to provide special education and related services and a high school education, which present common questions of law and fact, the resolution of which will efficiently resolve the claims of Named Plaintiffs, the Plaintiff Class, and the Subclasses. Third, Named Plaintiffs satisfy typicality as they are subject to the same lack of systems, policies, and practices as members of the Plaintiff Class and the Subclasses. Fourth, Named Plaintiffs and class counsel will fairly and adequately protect the interests of the proposed class and have done so diligently to date. Fifth, Defendants have consistently refused to act on grounds that apply generally to the Plaintiff Class and the Subclasses, thereby necessitating injunctive relief to address these systemic deficiencies.

A.    **The Class and Subclasses Are Ascertainable**

In addition to the express requirements in Rule 23, the Seventh Circuit requires that the class be ascertainable, that is "defined clearly and based on objective criteria." *See Mullins v. Direct Digit., LLC*, 795 F.3d 654, 659 (7th Cir. 2015). To be clearly defined, "class definitions generally need to identify a particular group, harmed during a particular time frame, in a particular

location, in a particular way." *Id.* at 660. Courts routinely find that ascertainability is satisfied where a class is defined in terms of a party's conduct—*e.g.*, a defendant's systemic action or failure to act—rather than their state of mind. *See id.*; *see also Whitney v. Khan*, 330 F.R.D. 172, 176 (N.D. Ill. 2019) (finding that the proposed class definition satisfied the "ascertainability" requirement where the class was defined in reference to objective descriptions of the parties' conduct); *Fauley v. Heska Corp.*, 326 F.R.D. 496, 504 (N.D. Ill. 2018) (finding that the proposed class was ascertainable where it was defined with reference to objective criteria—"persons or businesses receiving faxes" during a specific time period); *Nat'l Org. For Women, Inc. v. Scheidler*, 172 F.R.D. 351, 357 (N.D. Ill. 1997) ("The Seventh Circuit has held that the scope of a class may be defined by reference to the defendants' conduct.") (citing *All. to End Repression v. Rochford*, 565 F.2d 975, 978 (7th Cir. 1977)); Newberg and Rubenstein on Class Actions § 3:5 (6th ed.) ("Plaintiffs can generally avoid the state-of-mind problem by defining the class in terms of defendants' conduct rather than plaintiffs' state of mind."). Where, as here, plaintiffs seek only injunctive relief pursuant to Rule 23(b)(2), courts have "increased flexibility in handling the requirement of ascertainability," because Rule 23(b)(2) does not require notice to class members, unnamed class members do not have a right to opt out, and there is no monetary recovery to split among class members. *Walsh v. Kelley*, 2021 WL 4459531, at *2 (N.D. Ill. Sept. 29, 2021) (certifying class of "all individuals presently or in the future detained in [the Will County Adult Detention Facility] who are subjected to the restrictions on reading materials and unreasonable delays in their incoming and outgoing mail").

The Plaintiff Class and the Subclasses are readily ascertainable.

*First*, the Plaintiff Class and Subclasses are clearly and objectively defined. IDOC can identify individuals who are in its custody. Class members' ages determine whether they currently

are, or will be, eligible for special education and related services (the Current and Future Eligible Subclass), or whether they have aged out of their eligibility (the Formerly Eligible Subclass). *See* 20 U.S.C. § 1412(a)(1)(A); 105 ILCS 5/14-1.02.[6] Further, whether an individual had an IEP at their last education placement and had not received a high school diploma when they entered IDOC custody is a question that can be answered objectively. Finally, because Defendants do not have ***any*** policies or practices in place to provide special education and related services and a high school education, all students with IEPs are necessarily being deprived of their rights to such education and services. *See* Compl. ¶¶ 82–102; Ex. A, Krezmien Decl. ¶¶ 15-17. Thus, for both Current and Future Eligible and Formerly Eligible Subclass members, establishing that they had an IEP in place upon entering IDOC custody would clearly and objectively bring them within the definition of the Plaintiff Class.

***Second***, the Plaintiff Class and Subclasses all were (or will be) "harmed during a particular time frame." *Mullins,* 795 F.3d at 660. The Plaintiff Class and the Subclasses comprise individuals who are currently (or will be) in IDOC custody and are currently eligible to receive special education and related services, or were, at some point after June 1, 2006, eligible to receive special education and related services.[7] These are clear temporal demarcations that can identify class members easily.

---

[6] The only operative difference between the Subclasses—the Current and Future Eligible Subclass and the Formerly Eligible Subclass—is whether a putative class member is currently eligible for special education and related services, and that question is answered by the putative class member's age.

[7] June 1, 2006 is the effective date of the School Code provision that granted IDJJ authority over School District 428, making IDJJ responsible for the education of "inmates age 21 or under within the Department of Corrections who have not yet earned a high school diploma or a State of Illinois High School Diploma." 105 ILCS 5/13-40. In June 2021, Illinois extended special education eligibility past the age of 21, allowing special education students to continue attending school and receiving special education and related services through the end of the school year in which they turn 22. 105 ILCS 5/14-1.02 (a student is eligible for special education services through age 21, inclusive, "unless his or her 22nd birthday occurs during the school year, in which case he or she is eligible for such services through the end of the school year.").

*Third*, the Plaintiff Class and Subclasses all were (or will be) harmed "in a particular location." *See* Mullins, 795 F.3d at 660. Specifically, all members of the Plaintiff Class and the Subclasses are in IDOC custody, and were (or will be) similarly harmed while in IDOC custody by Defendants' failure to provide special education and related services and a high school education.

Accordingly, for purposes of certifying a class and deciding class-wide claims and injunctive remedies, the Plaintiff Class and the Subclasses are ascertainable.

### B.     The Plaintiff Class and the Subclasses Satisfy Rule 23(a)

#### 1.     The Class Is So Numerous that Joinder of All Members Is Impractical

Under Rule 23(a)(1), the Plaintiff Class and the Subclasses must be "so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1). Generally, a class size of 40 or more members is sufficient. *See Barragan v. Evanger's Dog & Cat Food Co., Inc.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009) ("[A] class including more than 40 members is generally believed to be sufficient."). In considering numerosity, the touchstone inquiry is whether a class action is the most efficient and effective means to resolve the collective claims. *See Chapman v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014) (noting that the numerosity requirement is satisfied "so long as it's reasonable to believe [that the class is] large enough to make joinder impracticable and thus justify a class action suit").

In establishing numerosity under Rule 23(a)(1), "a good faith estimate is sufficient when the precise number of class members cannot be determined." *Christakos v. Intercounty Title Co.*, 196 F.R.D. 496, 501 (N.D. Ill. 2000). Here, defendants have not maintained records of students who enter IDOC with IEPs in effect. *See* Ex. A, Krezmien Decl. ¶¶ 15, 20. That failure violates

the IDEA,[8] and Defendants cannot rely on that failure to oppose class certification on the basis of numerosity. *Galoski v. Applica Consumer Prods.*, 309 F.R.D. 419, 422 (N.D. Ohio 2015) ("A company's failure to keep purchase records cannot provide an automatically [sic] defense to class certification."). And although Defendants' failure to maintain appropriate records precludes identifying the exact size of the Plaintiff Class and the Subclasses, there is ample evidence that each Subclass is large enough that joinder will be impractical.

With respect to the Current and Future Eligible Subclass, Plaintiffs' counsel has undertaken a good faith effort to estimate the size of the Subclass based on publicly-available data. In violation of the IDEA, IDOC does not have systems, policies, or practices to track whether individuals have IEPs when they enter IDOC custody, and therefore the exact estimate of the Currently and Future Eligible Subclass size is not reasonably identifiable. *See* disc. *supra* at 3. However, IDJJ's publicly available data shows that 28% of the individuals enrolled in IDJJ School District 428 had IEPs as of 2023.[9] IDOC's publicly available data shows that, as of June 2024, there were 1,557 individuals in IDOC's legal custody under the age of 23.[10] Further, IDOC's annual reports from

---

[8] The IDEA requires that "the new school in which the child enrolls shall take reasonable steps to promptly obtain the child's records, including the IEP and supporting documents and any other records relating to the provision of special education or related services to the child, from the previous school in which the child was enrolled." 20 U.S.C. § 1414(d)(2)(C)(ii)(I). Here, that means that IDJJ's District # 428, as the assigned school district for individuals who enter IDOC's custody, must make efforts to obtain those individuals' individual records (including IEPs) from their previous school districts..

[9] *See* Illinois Report Card, School District 428 IYC-HRB, available at https://www.illinoisreportcard.com/School.aspx?source=studentcharacteristics&source2=iep&Schoolid=6 01054280303028. IDJJ's District 428 is the resident school district and Local Education Agency for eligible students in IDOC custody, and is responsible for providing a FAPE to eligible students. This is the best data available to Plaintiff's counsel regarding the size of student population in District 428 with an IEP. This data does not capture the size of the Plaintiff Class, however, because it represents only a snapshot in time and includes individuals with a high school diploma or a GED.

[10] *See* Illinois Department of Corrections, Prison Population on 06-30-24 Data Set, available at https://idoc.illinois.gov/content/dam/soi/en/web/idoc/reportsandstatistics/documents/popdatasets/prison-pop/June-2024-Prison.xls; Illinois Department of Corrections, Parole Population on 06-30-24 Data Set, available at
https://idoc.illinois.gov/content/dam/soi/en/web/idoc/reportsandstatistics/documents/popdatasets/parole/J une-2024-Parole.xls.

fiscal years 2018, 2019, and 2020[11] show that an average of 35.8% of individuals in IDOC's legal custody did not have a high school diploma or a GED.[12]  That percentage among younger groups is likely even higher, given that older individuals are more likely to have obtained a GED while in custody.  Accordingly, based on this data, at least an estimated 156 individuals (1,557 times 35.8% times 28% equates to 156) in IDOC custody as of June 2024 were under the age of 23, had an IEP, and did not have a high school diploma or a GED.  *See Miller v. Spring Valley Properties*, 202 F.R.D. 244, 248 (C.D. Ill.2001) (finding numerosity satisfied where class size was estimated based on census data); *Phipps v. Sheriff of Cook Cnty.*, 249 F.R.D. 298, 300 (N.D. Ill. 2008) (in action alleging discrimination against wheelchair-bound inmates, finding numerosity satisfied where plaintiffs provided reasonable estimate of class size "based [on] the number of wheelchair bound inmates identified thus far, the size of the [Cook County Department of Corrections], and the time period for which they seek to certify a class.").

---

[11] These are the last three years where the percentage of individuals without a high school diploma or a GED was available.

[12] *See* Illinois Department of Corrections Fiscal Year 2018 Annual Report, available at https://idoc.illinois.gov/content/dam/soi/en/web/idoc/reportsandstatistics/documents/fy18-annual-report-final.pdf; Illinois Department of Corrections Fiscal Year 2019 Annual Report, available at https://idoc.illinois.gov/content/dam/soi/en/web/idoc/reportsandstatistics/documents/idoc-fy19-annual-report.pdf; Illinois Department of Corrections Fiscal Year 2020 Annual Report, available at https://idoc.illinois.gov/content/dam/soi/en/web/idoc/reportsandstatistics/documents/fy20-annual-report-final.pdf.

With respect to the Formerly Eligible subclass, using the same method of extrapolation, Plaintiffs' counsel estimate that approximately 2,052 individuals in IDOC custody as of June 2024 were between the ages 23 and 39, had an IEP, and did not have a high school diploma or a GED.[13]

Further underscoring the impracticability of joinder is the inclusion of future claimants, the transitory nature of the class members, and the unique challenges that individuals in IDOC custody face in seeking legal redress. Courts have found joinder to be impracticable in situations where the class includes future members and is inherently transitory. *See Olson v. Brown*, 284 F.R.D. 398, 407–08 (N.D. Ind. 2012) (concluding joinder was impossible given the "inherently transitory nature" of a class consisting of inmates); *Rosario v. Cook Cnty.*, 101 F.R.D. 659, 661 (N.D. Ill. 1983) (finding joinder impracticable where there predictably were future class members); *Beavers v. Sielaff*, 400 F. Supp. 595, 598 (N.D. Ill. 1975) (finding joinder impracticable where the class consisted of minors in the custody of IDOC's Juvenile Division, explaining that "[r]egardless of the Exact number, it is undeniable that given the transitory nature and size of the class joinder of all members is impracticable"); *Clarkson v. Coughlin*, 145 F.R.D. 339, 346 (S.D.N.Y. 1993) ("The class action device is particularly well-suited in actions brought by prisoners due to the 'fluid composition' of the prison population.").

Additionally, the ability of class members to initiate individual lawsuits is significantly hampered by their detention and disabilities. *See Phillips v. Waukegan Hous. Auth.*, 331 F.R.D.

---

[13] IDOC's publicly available data shows that, as of June 2024, there were 20,480 individuals in IDOC's legal custody ages between 23 and 39. *See* Illinois Department of Corrections, Prison Population on 06-30-24 Data Set, available at https://idoc.illinois.gov/content/dam/soi/en/web/idoc/reportsandstatistics/documents/popdatasets/prison-pop/June-2024-Prison.xls; Illinois Department of Corrections, Parole Population on 06-30-24 Data Set, available at https://idoc.illinois.gov/content/dam/soi/en/web/idoc/reportsandstatistics/documents/popdatasets/parole/June-2024-Parole.xls.

20,480 times 35.8% times 28% equals to 2,052.

341, 350 (N.D. Ill. 2019) (in considering numerosity, courts may consider, among other factors "the ability of the putative class members to institute individual lawsuits."); *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996) (recognizing that, in determining whether joinder is impracticable, a court may consider the ability of class members to bring individual lawsuits); *Evans v. Evans*, 818 F. Supp. 1215, 1219 (N.D. Ind. 1993) (same in case finding violation of IDEA). The detention of class members limits their access to the resources they need to initiate individual due process hearings, including costly experts, and experienced attorneys and hearing officers who handle such specialized matters. *Cf Ind. C.L. Union Found. v. Superintendent*, 336 F.R.D. 165, 173 (S.D. Ind. 2020) (finding joinder of class challenging anti-panhandling statute impractical where "it is reasonable to infer that those who are engaging in panhandling may not have the ability to sue Defendants individually."). Further complicating the matter are the disabilities of the class members, which curtail their understanding of the administrative process and their ability to initiate individual due process hearings on their own. Certain Named Plaintiffs were able to exhaust their administrative remedies because they had the assistance of experienced *pro bono* counsel, a resource most in the Plaintiff Class and the Subclasses do not have. *See* Complaint ("Comp."), ECF No. 1, at ¶ 20. Even for those individuals who *can* exhaust their administrative remedies, systemic relief is not available from administrative hearing officers. *See* Ex. Y, A. Monroe Hearing Officer Order (striking claims for systemic relief as outside of administrative hearing officer's jurisdiction); Ex. Z, E. Hebert Hearing Officer Order (same). This reality makes a class action not only a more practical but also a necessary form of collective legal action.

### 2. Questions of Law and Fact Are Common to the Class

The Plaintiff Class and the Subclasses meet Rule 23(a)(2)'s commonality requirement. *See* Fed. R. Civ. P. 23(a)(2). To establish commonality, class members' claims must rely on a common

14

contention that can be resolved for the entire class—in other words, the determination of whether that contention is true or false will resolve a key issue that affects all claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). Commonality is not a high bar, and not all questions of law or fact must be common to satisfy the rule. *See, e.g. Moehrl v. Nat'l Ass'n of Realtors*, 2023 WL 2683199, at *11 (N.D. Ill. Mar. 29, 2023) ("[T]he commonality requirement has been characterized as a low hurdle, easily surmounted.") (internal citations and quotations omitted); *Kaufman v. Am. Express Travel Related Servs. Co. Inc.*, 264 F.R.D. 438, 442 (N.D. Ill. 2009) ("The commonality requirement does not necessitate every class member's factual or legal situation to be a carbon copy of those of the named plaintiffs, so the low commonality hurdle is easily surmounted.") (internal citations and quotations omitted). Indeed, even a single common question will suffice. *See Dukes*, 564 U.S. at 359. Claims like the ones in this case, arising from Defendants' standardized conduct towards the class, present a classic case for treatment as a class action. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."); *Eagle v. Vee Pak, Inc.*, 343 F.R.D. 552, 571 (N.D. Ill. 2023) (finding commonality satisfied where Plaintiffs challenged Defendant's assignment practices and policies). Indeed, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members," and in such circumstances, individual factual differences among the individual litigants will not preclude a finding of commonality. *See Dunn v. City of Chicago*, 231 F.R.D. 367, 373 (N.D. Ill. 2005) (commonality satisfied where class members asserted a common legal claim under the Fourth Amendment for unlawful conditions of confinement); *Streeter v. Sheriff of Cook Cnty.*, 256 F.R.D. 609, 612 (N.D.

Ill. 2009) (concluding that questions concerning standardized conduct towards members of the proposed class were sufficient to establish commonality).

Here, numerous common questions of law and fact are central to the Plaintiff Class's and the Subclasses' claims. To establish their IDEA, Rehabilitation Act, and ADA claims, Named Plaintiffs and class members must show, among other things, that (1) Defendants are obligated to establish systems, policies, and practices to identify students with disabilities, notify them of their right to a FAPE, and provide them with special education and related services and a high school education; (2) Defendants have failed to establish such systems, policies, and practices; and (3) Defendants have discriminated against them based on their disability. *See* 20 U.S.C. §§ 1400 *et seq.*; 34 C.F.R. §§ 300.121(a), 300.503; 23 Ill. Admin. Code § 226.50(a); 42 U.S.C. §§ 12101, *et seq.*; 29 U.S.C. § 794(a). Accordingly, common questions of fact and law central to the Plaintiff Class's and the Subclasses' claims include, but are not limited to:

1. Whether Defendants are obligated to establish systems, policies, and practices to identify students with disabilities upon their entry into IDOC custody.

2. Whether Defendants are obligated to establish systems, policies, and practices to notify students with disabilities of their right to special education and related services upon their entry into IDOC custody.

3. Whether Defendants are obligated to establish systems, policies, and practices to ensure the provision of special education and related services to the Plaintiff Class and the Subclasses.

4. Whether Defendants have failed to establish systems, policies, and practices to identify students with disabilities upon their entry into IDOC custody.

5. Whether Defendants have failed to establish systems, policies, and practices to notify students with disabilities of their right to special education and related services upon their entry into IDOC custody.

6. Whether Defendants have deprived the Plaintiff Class and the Subclasses of a FAPE by failing to establish systems, policies, and practices to ensure the provision of special education and related services and a high school education to students with disabilities in IDOC custody.

7. Whether Defendants have discriminated against Plaintiff Class members and members of the Subclasses by depriving them of access to educational opportunities that are available to their non-disabled peers.

These common questions arise from the same conduct by Defendants—their systemic and ongoing failure to establish systems, policies, and practices to ensure the provision of special education and related services and a high school education to the Plaintiff Class and the Subclasses. Such failure harms the Plaintiff Class and Subclasses in the same way—the complete lack of policies and practices to ensure the provision of special education and related services and a high school education deprives all class members of a FAPE and discriminates against all class members on the basis of disability. These common questions are susceptible to common proof, which includes proof that: (1) Defendants do not have systems, policies, and practices to identify students with disabilities upon their entry into IDOC custody;[14] (2) Defendants do not have (and have never had) systems, policies, and practices to notify students with disabilities of their right to a FAPE;[15] (3) Defendants do not have (and have never had) systems, policies, and practices to ensure the provision of a FAPE;[16] and (4) Defendants provide general-education students with opportunities that students with disabilities do not have access to or benefit from.[17] An injunction—namely, an order requiring Defendants to establish systems, policies, and practices to

---

[14] *See, e.g.* Ex. B, E. Hebert Due Process Decision, at 5 (reciting stipulation that "IDOC also does not identify students who may be eligible for special education and related services upon entry.").

[15] *See, e.g.* Ex. A, Krezmien Decl. ¶ 16.

[16] *See, e.g.* Ex. B, E. Hebert Due Process Decision, at 5 (reciting stipulations that "IDOC does not currently offer special education and related services," that "IDOC and IDJJ have no plan in place for IDOC to notify IDJJ of students with disabilities and for IDJJ to notify IDOC of a student's special education status," and that "[t]here is no interagency agreement between IDJJ and IDOC regarding the provision of special education and related services to adults in IDOC.").

[17] *See, e.g.* Ex. B, E. Hebert Due Process Decision, at 4 (reciting stipulations that IDOC offers Adult Basic Education, pre-GED, and GED programs); Ex. A, Krezmien Decl. ¶¶ 45-48.

identify students with disabilities, notify them of their right to a FAPE, and provide them with special education and related services and a high school education—can remedy the harm.

The Seventh Circuit's recent decision in *Scott v. Dart* is particularly instructive. *See* 99 F.4th 1076 (7th Cir. 2024). There, a former Cook County Jail detainee brought an action alleging that Cook County and its sheriff violated a class of detainees' constitutional rights by engaging in a practice of providing inadequate dental care. *Id.* at 1078–80. The district court denied class certification, reasoning that whether each member of the class received objectively unreasonable dental care turned on "individualized factors such as the type of dental problem, the seriousness of the condition, and the urgency of the need for treatment." *Id.* at 1082. The Seventh Circuit reversed the district court's decision, holding that Cook County Jail's practice of not having an oral surgeon on staff created common issues, as it was uniformly applied to every detainee at the jail, and the practice caused "systemic treatment delays" that were common to the class. *Id.* at 1090.

As in *Scott*, Defendants' failure to adopt ***any*** systems, policies, and practices to provide the class members with a FAPE was "uniformly" applicable to all class members, and such failure caused the deprivation of a FAPE that was "common to the class." *Id.* at 1089. Defendants' liability will thus turn on common questions of law and fact regarding whether Defendants have systemically failed to adopt ***any*** systems, policies, or practices to identify students with disabilities upon their entry into IDOC, notify them of their right to a FAPE, and ensure the provision of a FAPE to them.

### 3. Named Plaintiffs' Claims Are Typical of the Class

Named Plaintiffs satisfy Rule 23(a)'s typicality requirement, because the interests of Named Plaintiffs align with those of the Plaintiff Class and the Subclasses. *See* Fed. R. Civ. P. 23(a)(3). Courts regularly find typicality satisfied where claims arise "from the same event or

18

practice or course of conduct that gives rise to the claims of other class members and . . . [the named plaintiffs'] claims are based on the same legal theory." *Eagle*, 343 F.R.D. at 575 (alterations in original). The typicality requirement "may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *See Scott*, 99 F.4th at 1091–92 (internal quotations omitted). The key inquiry is whether the named plaintiffs' "claims have the same essential characteristics as the claims of the class at large." *Id.* The hurdle to meet the typicality requirement is "low." *Owner-Operator Indep. Drivers Ass'n, Inc. v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005). In addition, "commonality and typicality tend to merge." *Scott*, 99 F.4th at 1091 (typicality requirement met where class representatives satisfied commonality threshold); *see also Brown v. Cook Cnty.*, 332 F.R.D. 229, 241 (N.D. Ill. 2019) (same).

Typicality is satisfied here with respect to the Plaintiff Class and the Subclasses because the claims raised by Named Plaintiffs arise out of the same course of conduct by Defendants, and are based on the same legal theory, as those of the class members. Each Named Plaintiff has a disability that qualifies him for special education and related services and a high school education under the IDEA, as do all members of the Plaintiff Class and the Subclasses.[18] As with the absent class members, none of Named Plaintiffs were identified as being eligible for special education and related services and a high school education, none were notified of their right to special education and related services while in IDOC's custody, and none have received ***any*** special

---

[18] *See, e.g.*, Ex. D, Hebert Decl. ¶¶ 3-5; Ex. E, Monroe Decl. ¶¶ 3-5; Ex. F, Gonzalez Decl. ¶¶ 3-5; Ex. G, Moffett Decl. ¶¶ 3-5; Ex. H, Garcia Decl. ¶¶ 3-5; Ex. I, Brown Decl. ¶¶ 3-5; Ex. J, Herring Decl. ¶¶ 3-5; Ex. K, Hopkins Decl. ¶¶ 3-5; Ex. L, Hendrix Decl. ¶¶ 3-4; Ex. M, Longstreet Decl. ¶¶ 3-5; Ex. N, Tompkin Decl. ¶¶ 3-5; Ex. O, Johnson Decl. ¶¶ 3-4; Ex. P, Nichols Decl. ¶¶ 3-5; Ex. Q, Garza Decl. ¶¶ 3-5; Ex. R, Dugans Decl. ¶¶ 3-5; Ex. S, Davis Decl. ¶¶ 3-5; Ex. T, Evans Decl. ¶¶ 3-5; Ex. U, Melton Decl. ¶¶ 3-5; Ex. V, Broomfield Decl. ¶¶ 3-5; Ex. W, Pickens Decl. ¶¶ 3-5; Ex. X, Harris Decl. ¶¶ 3-4.

education or related services or a high school education while in IDOC's custody.[19]  As with the absent class members, each of Named Plaintiffs has been injured by Defendants' failure to provide them with such services.[20]  The claims of Named Plaintiffs share the same essential characteristics as those of absent class members—namely, that Defendants have deprived them of a FAPE to which they are entitled, and discriminated against them on the basis of their disability, in violation of federal and Illinois law.  Accordingly, Named Plaintiffs have established their claims are typical of those of the Plaintiff Class and Subclasses.

### 4. Named Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class

The adequacy requirement of Rule 23 is met if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The inquiry is two-fold, examining (1) "the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members," and (2) "the adequacy of the named plaintiff's counsel." *Otero v. Dart*, 306 F.R.D. 197, 206 (N.D. Ill. 2014).  Satisfying the adequacy requirement "is not difficult," *Silverman v. Motorola, Inc.*, 259 F.R.D. 163, 173 (N.D. Ill. 2009), and Named Plaintiffs and their counsel readily do so.

---

[19] *See, e.g.*, Ex. D, Hebert Decl. ¶¶ 7-9; Ex. E, Monroe Decl. ¶¶ 7-10; Ex. F, Gonzalez Decl. ¶¶ 7-9; Ex. G, Moffett Decl. ¶¶ 7-9; Ex. H, Garcia Decl. ¶¶ 7-9; Ex. I, Brown Decl. ¶¶ 7-9; Ex. J, Herring Decl. ¶¶ 7-9; Ex. K, Hopkins Decl. ¶¶ 7-9; Ex. L, Hendrix Decl. ¶¶ 6-8; Ex. M, Longstreet Decl. ¶¶ 7-9; Ex. N, Tompkin Decl. ¶¶ 7-9; Ex. O, Johnson Decl. ¶¶ 6-8; Ex. P, Nichols Decl. ¶¶ 7-9; Ex. Q, Garza Decl. ¶¶ 7-9; Ex. R, Dugans Decl. ¶¶ 7-9; Ex. S, Davis Decl. ¶¶ 7-9; Ex. T, Evans Decl. ¶¶ 7-9; Ex. U, Melton Decl. ¶¶ 7-9; Ex. V, Broomfield Decl. ¶¶ 7-9; Ex. W, Pickens Decl. ¶¶ 7-9; Ex. X, Harris Decl. ¶¶ 6-8.

[20] *See, e.g.*, Ex. D, Hebert Decl. ¶ 17; Ex. E, Monroe Decl. ¶ 14; Ex. F, Gonzalez Decl. ¶ 13; Ex. G, Moffett Decl. ¶ 13; Ex. H, Garcia Decl. ¶ 13; Ex. I, Brown Decl. ¶ 13; Ex. J, Herring Decl. ¶ 14; Ex. K, Hopkins Decl. ¶ 13; Ex. L, Hendrix Decl. ¶ 12; Ex. M, Longstreet Decl. ¶ 14; Ex. N, Tompkin Decl. ¶ 13; Ex. O, Johnson Decl. ¶ 13; Ex. P, Nichols Decl. ¶ 13; Ex. Q, Garza Decl. ¶ 13; Ex. R, Dugans Decl. ¶ 13; Ex. S, Davis Decl. ¶ 13; Ex. T, Evans Decl. ¶ 13; Ex. U, Melton Decl. ¶ 12; Ex. V, Broomfield Decl. ¶ 13; Ex. W, Pickens Decl. ¶ 13; Ex. X, Harris Decl. ¶ 13.

### a.    Proposed Class Representatives Are Adequate

Proposed class representatives are adequate if they are "part of the class and possess the same interest and suffer the same injury as the class members." *Ploss v. Kraft Foods Grp., Inc.*, 431 F. Supp. 3d 1003, 1011 (N.D. Ill. 2020). In addition, proposed class representatives must also be "sufficiently interested in the case outcome to ensure vigorous advocacy." *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 392-93 (N.D. Ill. 2006).

Named Plaintiffs are adequate class representatives. First, they are clearly part of the class. All twenty-one Named Plaintiffs (1) are in IDOC custody, (2) entered IDOC while they were still eligible to receive special education and related services, (3) had an IEP from their last educational placement at the time they entered IDOC custody and had not yet received their high school diploma, and (4) are being denied special education and related services and a high school education while in IDOC custody. *See* disc. *supra* at 3-5. Named Plaintiffs also suffered similar harms as those experienced by the absent class members: Defendants' systemic failure to develop policies and practices to ensure all individuals with IEPs are identified as eligible, are notified of their right to receive, and actually receive, instruction and services in accordance with their IEPs affect Named Plaintiffs in the same way as the unnamed class members. Thus, Named Plaintiffs, the Plaintiff Class, and the Subclasses "possess the same interest and suffer the same injury." *Ploss*, 431 F. Supp. 3d at 1011.

Further, Named Plaintiffs understand that they are representing not just themselves but also others similarly situated. Each has stated that they want to take on the role of a class representative to help absent class members and shed a light on the Defendants' continuing violations of the law.[21] Therefore, Named Plaintiffs are sufficiently interested in the outcome of the action, and

---

[21] *See, e.g.*, Ex. D, Hebert Decl. ¶ 21; Ex. E, Monroe Decl. ¶ 17; Ex. F, Gonzalez Decl. ¶ 17; Ex. G, Moffett Decl. ¶ 17; Ex. H, Garcia Decl. ¶ 17; Ex. I, Brown Decl. ¶ 17; Ex. J, Herring Decl. ¶ 18; Ex. K, Hopkins

will vigorously advocate for the interests of absent class members. *See, e.g.*, *Cavin*, 236 F.R.D. at 394 (finding adequacy satisfied where the proposed class representative "has displayed a recollection of the key facts giving rise to his complaint . . . has been in communication with his attorneys regarding discovery in this case . . . and understands his obligations as a class representative); *Redmon v. Uncle Julio's of Illinois, Inc.*, 249 F.R.D. 290, 295 (N.D. Ill. 2008) (finding adequacy satisfied because proposed class representative has demonstrated a willingness to participate in the litigation); *Fosnight v. LVNV Funding, LLC*, 310 F.R.D. 389, 393 (S.D. Ind. 2015) (finding adequacy satisfied where the proposed class representative "stated her willingness to participate in all aspects of the litigation.").

### b. Named Plaintiffs' Counsel Meet the Requirements of Rule 23(g) and Should Be Appointed As Class Counsel

Plaintiffs will vigorously prosecute the interests of the Plaintiff Class and Subclasses through qualified counsel. Courts consider several factors when assessing the adequacy of the plaintiffs' counsel, including, "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Additionally, "[e]vidence that counsel has proved adequate as a class representative in the past is usually persuasive" *Shepherd v. ASI, Ltd.*, 295 F.R.D. 289, 299 (S.D. Ind. 2013).

Here, Named Plaintiffs are represented by the following experienced counsel:

1. Olga Pribyl, Sujatha Jagadeesh Branch, Rachel Shapiro, Alexandra Kuske, and Brianna Hill of Equip for Equality ("Equip"), and

---

Decl. ¶ 17; Ex. L, Hendrix Decl. ¶ 16; Ex. M, Longstreet Decl. ¶ 18; Ex. N, Tompkin Decl. ¶ 17; Ex. O, Johnson Decl. ¶ 17; Ex. P, Nichols Decl. ¶ 17; Ex. Q, Garza Decl. ¶ 17; Ex. R, Dugans Decl. ¶ 15; Ex. S, Davis Decl. ¶ 17; Ex. T, Evans Decl. ¶ 17; Ex. U, Melton Decl. ¶ 14; Ex. V, Broomfield Decl. ¶ 17; Ex. W, Pickens Decl. ¶ 17; Ex. X, Harris Decl. ¶ 17.

2. Terra Reynolds, Johanna Spellman, and Nicholas Hazen of Latham & Watkins LLP ("Latham").

Named Plaintiffs' counsel has done extensive work to investigate the claims in this action. For several years, Equip has represented individuals in IDOC's custody who have not received the special education and related services and a high school education to which they are legally entitled. Ex. AA, Equip Class Counsel Declaration ¶ 5. They filed for due process in five cases, three of which settled and two of which went to hearing. *Id.* They interviewed approximately 176 individuals in IDOC custody to identify eligible students, none of whom had been identified, notified or provided with the needed educational services. *Id.* Named Plaintiffs' counsel also has deep experience in the types of claims asserted in this action and in handling class actions and complex litigation. *Id.* ¶¶ 4, 6, 7-9. Equip is the state-designated Protection and Advocacy agency for people with disabilities and as such, receives federal and state funding to pursue litigation on behalf of people with disabilities. *Id.* ¶ 5. Equip has represented individuals in thousands of cases involving disability rights, and is deeply familiar with the statutes at issue here. *Id.* Further, Equip has been appointed as class counsel in similar litigation. *See, e.g.*, *Rasho v. Walker*, 07-cv-01298 (C.D. Ill.); *Holmes v. Godinez*, 11-cv-02961 (N.D. Ill.); *R.J. v. Vickery,* 12-cv-07289 (N.D. Ill.). The Latham attorneys have litigated numerous class action cases, and Latham is a global law firm that is willing to commit the resources necessary to support this litigation. Ex. BB, Latham Class Counsel Declaration ¶¶ 5, 7. Named Plaintiffs' counsel will more than adequately represent the Plaintiff Class and should be appointed as class counsel. *See, e.g.*, *King v. Landreman*, 2020 WL 6146542, at *4 (W.D. Wis. Oct. 20, 2020) (counsel comprised of prominent civil rights organization and national law firms adequate to represent the class).

C.      **Defendants Have Refused to Act On Grounds That Apply Generally to the Class and Certification Under Rule 23(b)(2) Is Warranted**

Named Plaintiffs request certification under Rule 23(b)(2), which applies where the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Certification under Rule 23(b)(2) is appropriate, where, as here, "the plaintiffs' primary goal is not monetary relief, but rather to require the defendant to do or not do something that would benefit the whole class." *Chicago Tchrs. Union, Loc. No.*, 797 F.3d at 441. Additionally, "civil rights cases against parties charged with unlawful, class-based discrimination are prime examples of Rule 23(b)(2) classes." *Id.* (internal quotations omitted) (quoting *Amchem Prods., Inc.v. Windsor*, 521 U.S. 591, 614 (1997)).

In this case, certification under Rule 23(b)(2) is appropriate because Named Plaintiffs seek to remedy systemic civil rights violations in the context of education for students with disabilities. *See id; DL v. Dist. of Columbia*, 860 F.3d 713, 726 (D.C. Cir. 2017) (Rule 23(b)(2) exists "so that parties and courts, especially in civil rights cases [], can avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief."); *see also Holmes v. Godinez*, 311 F.R.D. 177, 223 (N.D. Ill. 2015) (certifying a proposed Rule (b)(2) class challenging IDOC's "system-wide policies and practices" regarding accommodations for hearing impaired individuals in custody); *Palmer v. Combined Ins. Co. of Am.*, 217 F.R.D. 430, 438 (N.D. Ill. 2003) (approving certification of a proposed Rule (b)(2) class challenging a "systemic practice of discrimination."); *Monroe v. Meeks*, 335 F.R.D. 201, 207 (S.D. Ill. 2020) (granting certification of a proposed Rule 23(b)(2) class challenging IDOC's "systemic failures" in treatment). Defendants have, ***for almost twenty years***, failed to act on grounds generally applicable to the Plaintiff Class and the Subclasses as a whole—their systemic failure to develop systems, policies, and practices to provide Named

24

Plaintiffs, the Plaintiff Class, and the Subclasses with their legally-mandated special education and related services and a high school education has caused and will continue to cause harm. Specifically, Defendants have failed to (i) establish **any** systems, policies, or practices to identify students with disabilities who have an IEP upon their entry into IDOC custody and have not yet received their high school diploma; (ii) establish **any** mechanisms to notify eligible students of their right to special education and related services, and high school programming; and (iii) provide **any** special education or related services, or high school credit-bearing programming to eligible students with disabilities. *See* Ex. A, Krezmien Decl. ¶¶ 15-19.[22] Courts routinely grant class certification under Rule 23(b)(2) where, as here, the plaintiffs seek relief based on systemic violations of the IDEA, ADA, and Rehabilitation Act. *See, e.g.*, *DL*, 860 F.3d at 726 (affirming certification of class action where plaintiffs alleged systemic failure of defendant to provide special education and related services in violation of IDEA and the ADA and finding that the "Rule 23(b)(2) class action . . . was designed for exactly this sort of suit"); *J.N. v. Oregon Dep't of Educ.*, 338 F.R.D. 256, 274 (D. Or. 2021) (certifying class action where plaintiffs alleged defendant's policies exposed the class members to significant risk of denial of FAPE in the Least Restrictive Environment and disability-based discrimination); *P.V. ex rel. Valentin v. Sch. Dist. of Philadelphia*, 289 F.R.D. 227, 232–35 (E.D. Pa. 2013) (granting motion for class certification where "the central tenet of Plaintiffs' Complaint [was] a systemic failure" resulting from defendant's "IDEA-deficient educational placement process"); *Adam X. v. New Jersey Dep't of Corr.*, 2022 WL 621089, at *5 (D.N.J. Mar. 3, 2022) (certifying class under Rules 23(a) and

---

[22] *See also* Ex. B, E. Hebert Due Process Decision at 5 (stipulating that "IDOC also does not identify students who may be eligible for special education and related services upon entry," that "IDOC does not currently offer special education and related services," that "IDOC and IDJJ have no plan in place for IDOC to notify IDJJ of students with disabilities and for IDJJ to notify IDOC of a student's special education status," and that "[t]here is no interagency agreement between IDJJ and IDOC regarding the provision of special education and related services to adults in IDOC.").

23(b)(2) where plaintiffs alleged that "[d]efendants' systemic policies and practices" violated the IDEA, ADA, and Rehabilitation Act).

Named Plaintiffs seek declaratory and injunctive relief from Defendants' policies and practices (or lack thereof), and such relief provides a remedy to the entire Plaintiff Class and each of the Subclasses. *See* Compl. at 44-45. If this Court finds that Defendants have violated the law, the injunctive relief it orders would positively impact the entire Plaintiff Class and each of the Subclasses. For instance, Named Plaintiffs are seeking an order directing Defendants to develop effective systems, policies, and practices to identify students with disabilities upon their entry into IDOC, notify them of their right to a FAPE, and provide them with IDEA-mandated special education and related services and high school credit-bearing courses. If this Court grants the requested relief, it may require Defendants to develop and implement such processes for the provision of special education and related services and high school credit-bearing classes and to regularly report to this Court on the status of implementation. *See* Mot. for Prelim. Inj. at 2. Such relief will provide all class members with access to special education and related services and high school credit-bearing courses. Named Plaintiffs are also seeking an order enjoining Defendants to provide compensatory education of special education and related services and a high school education to Named Plaintiffs and class members. Because all class members have been denied a FAPE, such remedy, if granted, will also benefit the Plaintiff Class as a whole.

Because Defendants' conduct is generally applicable to the entire Plaintiff Class, and because Named Plaintiffs' requested injunctive and declaratory relief provides redress to the claims of each class member, certification of the Plaintiff Class and the Subclasses is appropriate under Rule 23(b)(2).

## <u>CONCLUSION</u>

For the reasons stated above, Named Plaintiffs respectfully request that this Court certify the proposed class and subclasses pursuant to Federal Rule of Civil Procedure 23(b)(2), appoint Named Plaintiffs as class representatives, and appoint the undersigned counsel as class counsel.


Date: September 25, 2024                    Respectfully submitted,


 /s/ Johanna Spellman

Johanna Spellman (ARDC No. 6293851)
johanna.spellman@lw.com
Terra Reynolds (ARDC No. 6278858)
terra.reynolds@lw.com
Nicholas Hazen (ARDC No. 6341719)
nicholas.hazen@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

*Attorneys for Named Plaintiffs and class members*

Olga Pribyl (ARDC No. 6190672)
olga@equipforequality.org
Sujatha Jagadeesh Branch (Washington State Bar No. 51827)
sujatha@equipforequality.org
Rachel Shapiro (ARDC No. 6290735)
Rachel@equipforequality.org
Alexandra Kuske (ARDC No. 6336210)
Alexandra@equipforequality.org
Brianna Hill (ARDC No. 6336043)
brianna@equipforequality.org
EQUIP FOR EQUALITY
20 N. Michigan Avenue, Suite 300
Chicago, IL 60602
Telephone: (312) 341-0022
Facsimile: 312-800-0912

*Attorneys for Named Plaintiffs and class members*