**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EXODUS HEBERT *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1:24-cv-07950 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS; ILLINOIS | ) | Magistrate Judge Beth W. Jantz |
| DEPARTMENT OF JUVENILE | ) | |
| JUSTICE; and ILLINOIS STATE | ) | |
| BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................................. 2

I.    The Court lacks subject matter jurisdiction over E.H.'s and A.M.'s claims. ........ 2

II.   The remaining Plaintiffs' federal claims are barred for failure to exhaust
      their remedies under the IDEA and the PLRA. ...................................................... 3

      A.    Plaintiffs concede that they failed to exhaust their IDEA claim. ............... 3

      B.    Plaintiffs' claims all amount to failure to provide FAPE. ........................ 6

      C.    Section 1915(*l*) bars Plaintiffs' other federal claims. ............................... 7

      D.    The futility exception to exhaustion does not apply. ................................ 8

      E.    Vicarious exhaustion is unavailable to Plaintiffs. ................................... 11

      F.    Plaintiffs' claims are barred by the PLRA for failure to exhaust. ........... 13

III.  The statute of limitations bars the IDEA claims of numerous Plaintiffs. ............ 14

IV.   Plaintiffs' state law claims must be dismissed. ................................................... 15

      A.    Plaintiffs' state law claims are barred by the Eleventh Amendment. ...... 15

      B.    Section 5/13-40 the Illinois School Code does not provide
            Plaintiffs with any enforceable rights. ..................................................... 15

      C.    Section 5/14-1.02 of the School Code is enforceable through
            Illinois's administrative procedures. ........................................................ 16

V.    IDOC should be dismissed because it would not be responsible for
      providing the relief Plaintiffs seek. ..................................................................... 17

VI.   Plaintiffs failed to allege a claim against ISBE. ................................................. 18

CONCLUSION ......................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................21, 23

*Bd. of Educ. of Oak Park & River Forest Dist.*,
79 F.3d at 659 ............................................................................................17

*Bills by Bills v. Homer Consol. Sch. Dist. No. 33-C*,
959 F. Supp. 507 (N.D. Ill. 1997)..................................................................6, 7

*Blackman v. Dist. of Columbia*,
633 F.3d 1088 (D.C. Cir. 2011)....................................................................11

*Bowers v. Dart*,
1 F.4th 513 (7th Cir. 2021) ..........................................................................16

*Breen v. Chao*,
2018 U.S. Dist. LEXIS 50209 (D.D.C. Mar. 27, 2018).....................................15

*Brockett v. Effingham Cnty., Ill.*,
116 F.4th 680 (7th Cir. 2024) ......................................................................23

*Chafin v. Chafin*,
568 U.S. 165 (2013)....................................................................................2

*Charlie F. by Neil F. v. Bd. of Edu. of Skokie Sch. Dist.*,
98 F.3d 989 (7th Cir. 1996) ........................................................................6

*Committee for Educational Rights v. Edgar*,
174 Ill. 2d 1 (1996) ....................................................................................19

*Core by and through Core v. Chicago Bd. of Edu.*,
2024 WL 4007722 (N.D. Ill. Aug. 30, 2024) ..................................................7

*Doe v. Township High Sch. Dist. 214*,
2020 WL 1081726 (N.D. Ill. March 6, 2020)..................................................8

*Flynn v. Doyle*,
2007 WL 805788 (E.D. Wis. Mar. 14, 2007) ..................................................13

*Food & Drug Admin. v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024)....................................................................................3

*Foster v. Center Township of LaPorte Cnty.*,
798 F.2d 237 (7th Cir. 1986) ......................................................................2

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Freeman v. Ocwen Loan Servicing, LLC*,
    113 F.4th 701 (7th Cir. 2024) ................................................................21

*Fry v. Napoleon Cmty. Sch.*,
    580 U.S. 154 (2017)..............................................................................7

*H.P. v. Chicago Bd. of Ed.*,
    385 F. Supp. 3d 623 (N.D. Ill. 2019) ............................................ *passim*

*Honig v. Doe*,
    484 U.S. 305 (1988)..............................................................................9

*Jamie S v. Milwaukee Bd. of Sch. Dirs.*,
    2012 U.S. Dist. LEXIS 117672 (E.D. Wis. Aug. 20, 2012) ...................15

*Jamie S. v. Milwaukee Pub. Sch.*,
    668 F.3d 481 (7th Cir. 2012) ................................................5, 10, 14, 15

*Jones v. Bock*,
    549 U.S. 199 (2007)............................................................................16

*Jones v. Sullivan*,
    938 F.2d 801 (7th Cir. 1991) ...............................................................2

*Lacy v. Dart*,
    2015 WL 1995576 (N.D. Ill. Sept. 29, 2015) .......................................15

*Lewis E. v. Spagnolo*,
    186 Ill. 2d 198 (1999) .........................................................................19

*Luna Perez v. Sturgis Public Sch.*,
    598 U.S. 142 (2023)..............................................................................9

*McCormick v. Waukegan Sch. Dist. No. 60*,
    374 F.3d 564 (7th Cir. 2004) ...........................................................9, 10

*Mosely v. Bd. of Ed. of City of Chicago*,
    434 F. 3d 527 (7th Cir. 2006) ...............................................................4

*Nash v. Akinbayo*,
    2019 WL 4393159 (D. Del. Sept. 13, 2019).........................................15

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984)..............................................................................17

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Ross v. Blake*,
　　578 U.S. 632 (2016)..............................................................................................16

*Simmons v. Pritzker*,
　　2022 WL 7100611 (N.D. Ill. Oct. 12, 2022).....................................7, 10, 11, 12

*St. John's United Church of Christ v. City of Chicago*,
　　502 F.3d 616 (7th Cir. 2007) ...............................................................................2

*Svendsen v. Pritzker*,
　　91 F.4th 876 (7th Cir. 2024) ..............................................................................18

*T.R. v. City of Philadelphia*,
　　4 F.4th 179 (3d Cir. 2021) ...........................................................................11, 12

*Wallace v. Baldwin*,
　　55 F.4th 535 (7th Cir. 2022) ..............................................................................15

*Zimny v. Geneva Cmty. Unit Sch. Dist. 304*,
　　718 F. Supp. 3d 766 (N.D. Ill. 2024) ...................................................................4

**Statutes**

20 U.S.C.
　　§ 1401(32)...........................................................................................................22
　　§ 1412(a)(11).......................................................................................................22
　　§ 1412(a)(11)(A)..................................................................................................22
　　§ 1414(d)(1)(A)-(B)...............................................................................................5
　　§ 1415.................................................................................................................16
　　§ 1415(i)(2)...........................................................................................................3
　　§ 1415(b)(6), (f), (g)..........................................................................................4, 5
　　§ 1415(f)(1)(A)(ii), (f)(3)......................................................................................5
　　§ 1415(f)(1)(B)(i)..................................................................................................5
　　§ 1415(f)(2)...........................................................................................................5
　　§ 1415(*l*).................................................................................................1, 4, 5, 7
　　§ 1915(l)................................................................................................................8

29 U.S.C. § 794 .............................................................................................................2

42 U.S.C. § 1997e(a).................................................................................................1, 16

42 U.S.C. § 12101.....................................................................................................2, 8, 9

105 ILCS 5/13-40.................................................................................................17, 18, 20

105 ILCS 5/14-1.02 .....................................................................................................19

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

105 ILCS 5/14-6.01 ...................................................................................22

105 ILCS 5/14-8.02(a) .............................................................................22

105 ILCS 5/14-8.02a .................................................................................20

105 ILCS 5/14-8.02a(i) ............................................................................20

105 ILCS 5/14-102 ...................................................................................17

730 ILCS 5/3-6-2(d) .................................................................................20

**Other Authorities**

34 CFR §300.102(a)(2)(i) ...........................................................................6

34 CFR § 300.324(d) ..................................................................................6

Federal Rule of Civil Prcoedure 12(b)(1) ...............................................2

Federal Rule of Civil Procedure 23 .......................................................11

Federal Rule of Civil Procedure 23(b)(2) .......................................14, 15

20 Ill. Admin. Code § 226.760(a) ...........................................................22

23 Ill Admin. Code § 226.100(a) .............................................................22

23 Ill. Admin. Code § 226.110 .................................................................22

23 Ill. Admin. Code § 226.200-260 .........................................................22

23 Ill. Admin. Code § 226.500-570 .........................................................22

23 Ill. Admin. Code § 226.600-690 .........................................................22

Ill. Const. art. X, § 1 .................................................................................18

The Individuals with Disabilities Education Act (IDEA) requires a plaintiff to exhaust available administrative remedies before filing suit. 20 U.S.C. § 1415(*l*). Exhaustion of administrative remedies also is required for any lawsuit seeking to alter prison conditions in the correctional setting under the Prison Litigation Reform Act (PLRA). 42 U.S.C. § 1997e(a). Plaintiffs here seek to end run the administrative exhaustion process in circumstances where federal law, in recognition of the individualized nature of educational needs and the specific challenges inherent to a correctional setting, doubly requires it.

Courts in rare instances have excused plaintiffs from these exhaustion requirements where the available administrative process is futile or inadequate. But Plaintiffs plead otherwise here. They affirmatively plead that the two named plaintiffs (E.H. and A.M.) who did utilize the available administrative process obtained substantive relief tailored to their individual needs, exactly as the IDEA contemplates. The Complaint is clear that those two named plaintiffs (E.H. and A.M.) are in no way seeking relief in this Court to change or contest the individualized relief that they each were awarded through the administrative process.

Plaintiffs' success in utilizing the available administrative process forecloses further relief in this court, for two main interrelated reasons: *First*, the two named Plaintiffs (E.H. and A.M.) who exhausted their administrative remedies under the IDEA obtained full relief in the administrative forum, such that their claims are moot and not justiciable in this court. *Second*, the remaining named Plaintiffs acknowledge that they failed to exhaust their administrative remedies under the IDEA and the PLRA.[1] Federal law requires Plaintiffs to take that step before resorting

---

[1]  Although Plaintiffs also bring claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, they seek the same relief under each statute—special education and related services necessary to provide them with a FAPE or compensatory education—and the IDEA's exhaustion requirement therefore applies equally to those claims.

to this Court, and their claims must be dismissed accordingly.[2]

## ARGUMENT

### I.     The Court lacks subject matter jurisdiction over E.H.'s and A.M.'s claims.

E.H.'s and A.M.'s claims to a FAPE already have been adjudicated by the administrative

process, and there is no effective relief that this Court can grant them in this lawsuit.  Compl. ¶¶

19-21.  Claims that are moot should be dismissed pursuant to Rule 12(b)(1) for lack of subject

matter jurisdiction. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th

Cir. 2007). To satisfy Article III's standing requirements, a plaintiff's claim must present "an

actual 'case' or 'controversy.'" *Jones v. Sullivan*, 938 F.2d 801, 805 (7th Cir. 1991) (quoting

*Foster v. Center Township of LaPorte Cnty.*, 798 F.2d 237, 245 (7th Cir. 1986)). "No case or

controversy exists, and a suit becomes moot . . . when it is impossible for the court to grant any

effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). Here,

Plaintiffs' complaint alleges that E.H. and A.M. have received an order from the administrative

officer providing the individualized relief each Plaintiff seeks in this action. Compl. ¶ 20.

Therefore, there is no effective relief that the Court can provide them.

And if they desired additional relief, they had specific avenues of recourse under the IDEA

that they chose not to pursue. Once they obtained a final administrative order, E.H. and A.M. had

a statutory cause of action to appeal the hearing officer's determination within 90 days. 20 U.S.C.

§ 1415(i)(2). They elected not to do so. And if E.H. or A.M. "have issues with [Defendants']

compliance with the ordered relief, their recourse lies in an action to enforce the hearing officer's

---

[2]     Plaintiffs' various claims must be dismissed for several additional reasons, as explained further in this
memorandum. Numerous Plaintiffs filed their action outside of the IDEA's two-year statute of
limitations. Plaintiffs' state-law claims under the Illinois School Code are barred by the Eleventh
Amendment and otherwise fail to state claim. IDOC is not a proper defendant. And Plaintiffs fail to
allege that ISBE breached its obligations under federal law.

decision." *H.P. v. Chicago Bd. of Ed.*, 385 F. Supp. 3d 623, 636 (N.D. Ill. 2019). Again, however, they have opted not to exercise that option.

Instead, they say they seek to vindicate *other people's rights*. Indeed, the Complaint makes this clear, as Plaintiffs allege that E.H. and A.M. are not appealing from their individual administrative orders in any way, but instead "are pursuing only the systemic claims that were stricken from their due process complaints." Compl. ¶ 20. Foundational principles of limited federal jurisdiction foreclose these two Plaintiffs from proceeding solely on others' behalf in federal court. *Food & Drug Admin. v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 379 (2024) ("For a plaintiff to get in the federal courthouse door and obtain a judicial determination of what the governing law is, the plaintiff cannot be a mere bystander, but instead must have a personal stake in the dispute.") (internal quotation marks omitted).

The claims of E.H. and A.M. are moot and must be dismissed; this court lacks jurisdiction to hear their claims.

## II. The remaining Plaintiffs' federal claims are barred for failure to exhaust their remedies under the IDEA and the PLRA.

Other than E.H. and A.M., whose claims are moot, the remaining Plaintiffs failed to exhaust their administrative remedies as expressly required by the PLRA and the IDEA. Accordingly, the remaining Plaintiffs' claims must be dismissed.

### A. Plaintiffs concede that they failed to exhaust their IDEA claim.

In the "EXHAUSTION" section of the Complaint (at pp. 7-8), Plaintiffs acknowledge that all but two of them have failed to exhaust their administrative remedies as required by § 1415(l).[3]

---

[3] Defendants acknowledge that failure to exhaust is generally an affirmative defense and plaintiffs are not required to plead that they exhausted their administrative remedies. *Mosely v. Bd. of Ed. of City of Chicago*, 434 F. 3d 527, 533 (7th Cir. 2006). There is an exception to this general rule, however, that holds defendants may properly raise the exhaustion defense on a motion to dismiss when the basis for the defense appears on the face of the complaint. *Zimny v. Geneva Cmty. Unit Sch. Dist. 304*, 718 F.

Compl. ¶ 19; *see also id.* ¶¶ 23-43. The Complaint alleges that only two Plaintiffs, E.H. and A.M., satisfied the exhaustion requirement. *Id.* ¶¶ 19, 23-24. Plaintiffs do not allege that the remaining Plaintiffs have engaged in the administrative procedures required by § 1415(f) and (g), nor is there anything in the Complaint to suggest that they have. *Id.* ¶¶ 23-43; *id.* ¶¶ 19-21 (alleging that only E.H. and A.M. have met the exhaustion requirement and arguing that the remaining Plaintiffs need not do so). To the contrary, Plaintiffs explicitly allege that their failure to exhaust was excused. *Id.* ¶¶ 18-21.

"The IDEA requires a plaintiff to first exhaust available administrative remedies before filing suit." *H.P.*, 385 F. Supp. 3d at 633; *see also* 20 U.S.C. § 1415(*l*). The IDEA sets forth procedures a party must follow to bring a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a Free and Appropriate Public Education to such child." 20 U.S.C. § 1415(b)(6), (f), (g). Under Section 1415(f), "[w]henever" a party presents such a complaint, the parties involved must have an opportunity for an "impartial due process hearing" conducted by the SEA, here the ISBE. The statute prescribes a comprehensive administrative process to resolve the complaint, including a preliminary meeting of the parties and members of the child's IEP team, 20 U.S.C. § 1415(f)(1)(B)(i); disclosure of relevant evaluations and recommendations, *id.*, § 1415(f)(2); and, if a settlement is not reached, a hearing conducted by an impartial officer, *id.*, § 1415(f)(1)(A)(ii), (f)(3). These administrative procedures are not optional; "[B]efore the filing of a civil action under such [other federal] laws seeking relief that is also available under this subchapter, the procedures

---

Supp. 3d 766, 786 (N.D. Ill. 2024) ("However, the Court may grant a motion to dismiss on failure to exhaust grounds if something on the 'face of the complaint [ ] compels a conclusion' that the plaintiff failed to exhaust" (quoting *Mosely*, 434 F.3d at 533)). Here, Defendants' exhaustion defense is predicated on the allegations in Plaintiffs' complaint.

under subsections (f) and (g) shall be exhausted." *Id.*, § 1415(*l*).

The exhaustion requirement is essential to safeguarding the IDEA's stated purpose to provide children with disabilities with individualized educational opportunities that meet their unique needs. *See, e.g.*, § 1414(d)(1)(A)-(B) (individualized education program teams must design IEPs for each child tailored to his or her level of academic achievement and performance, as well as specific disability); *cf. Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 496 (7th Cir. 2012) ("Every step of the child-find inquiry and IEP process under the IDEA is child specific and requires the application of trained and particularized professional educational judgment."). The administrative hearing process ensures that "educational professionals"—not courts—"have at least the first crack at formulating a plan to overcome the consequences of educational shortfalls." *Charlie F. by Neil F. v. Bd. of Edu. of Skokie Sch. Dist.*, 98 F.3d 989, 992 (7th Cir. 1996), *abrogated on other grounds by Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154 (2017); *see also Bills by Bills v. Homer Consol. Sch. Dist. No. 33-C*, 959 F. Supp. 507, 511 (N.D. Ill. 1997) (enumerating purposes served by IDEA's exhaustion requirement).

Administrative exhaustion is important here for additional reasons relating to the correctional setting. First, individual students are not entitled to FAPE if they were not identified as being a child with a disability in their "last educational placement prior to their incarceration in an adult correctional facility." 34 CFR §300.102(a)(2)(i). Plaintiffs allege in conclusory fashion that they do not fall into this exception, Compl. ¶ 63, but they do not plead for any specific Plaintiff that their "last educational placement" was one in which they had an IEP. This is the type of individual determination best made by the administrative hearing officer in assessing each student's particular circumstances and needs. Second, for any student residing in a correctional facility, the IEP Team may modify the student's IEP or placement in light of a bona fide security

or compelling penological interest. 34 CFR § 300.324(d). These security considerations are best considered by the administrative process in the context of individual needs and circumstances, not on a blanket basis by a federal court that has been deprived of an administrative record by Plaintiffs' failure to exhaust.

**B.      Plaintiffs' claims all amount to failure to provide FAPE**.

Section 1415(*l*) "requires exhaustion when the gravamen of a complaint seeks redress for a[n institution's] failure to provide a FAPE." *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 170 (2017). In *Fry*, the Court applied a two-part test to determine whether a plaintiff's claims fall within the exhaustion requirement. "First," the Court asked, "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance?" *Id.* at 171; *see also Simmons v. Pritzker*, 2022 WL 7100611, at *4 (N.D. Ill. Oct. 12, 2022), *aff'd*, 2023 WL 8649881 (7th Cir. Dec. 14, 2023) (applying test). Thus, a child who uses a wheelchair and sues his school for its lack of access ramps is not seeking redress for the denial of a FAPE; he could bring the same complaint against any public building that did not have ramps, and an adult could bring a similar claim against the school. 580 U.S. at 171-72. By contrast, a student with a learning disability who sues his school for failing to offer tutoring is seeking to remedy the school's failure to provide a FAPE; he could not bring the same complaint against, for instance, a library, and an adult could not sue a school to obtain tutoring services. *Id.* at 172-73. *Compare Core by and through Core v. Chicago Bd. of Edu.*, 2024 WL 4007722, at *6 (N.D. Ill. Aug. 30, 2024) (gravamen of plaintiffs' claim challenging substance of IEP was to seek redress for denial of a FAPE), *and Bills by Bills v. Homer Consol. Sch. Dist. No. 33-C*, 959 F. Supp. at 511 (claims regarding reclassification of plaintiff's learning disabled status related to his opportunity to receive a FAPE), *with Doe v. Township High Sch. Dist.*

-6-

*214*, 2020 WL 1081726, at \*4-5 (N.D. Ill. March 6, 2020) (where plaintiff with behavioral disabilities was disciplined more often and more severely than other students, crux of plaintiff's claim was discrimination, not failure to provide a FAPE).

Here, Plaintiffs' claims unquestionably seek redress for failure to provide a FAPE, and therefore they are subject to the IDEA's exhaustion requirement. And the face of the complaint makes clear that plaintiffs other than E.H. and A.M. did not exhaust their administrative remedies. Compl. ¶¶ 18-21.

## C.    Section 1915(l) bars Plaintiffs' other federal claims.

The IDEA's exhaustion requirement "extends to claims under other statutes to the extent those claims seek relief that is also available under the IDEA." *H.P.*, 385 F. Supp. 3d at 633 (internal quotation marks omitted). Plaintiffs' claims under the ADA and Rehabilitation Act also concern the alleged failure to provide a FAPE and seek relief—the provision of a FAPE—that is available under the IDEA. Compl. ¶ 5 (Plaintiffs have a "right to a FAPE while in the custody of IDOC"); *id.*, ¶ 6 (Plaintiffs were "depriv[ed] . . . of their right to a FAPE"); *id.*, ¶ 10 ("IDOC and IDJJ[] . . . fail[ed] to provide a FAPE"); 98 (harms include the "deprivation of a FAPE to [Plaintiffs]"); *id.*, ¶ 107 (Defendants "failed to identify eligible students with disabilities and notify eligible students of their right to a FAPE . . . Defendants have denied a FAPE to Named Plaintiffs"); *id.*, ¶ 121 ("Defendants' actions deny eligible students with disabilities access to a FAPE"); *id.*, "Wherefore" clause, pp. 44-46 (requesting order directing Defendants to "provide compensatory education of special education and related services and high school education" to Plaintiffs who were "denied . . . access to a FAPE").

Thus, although their claims are brought under the IDEA, the Rehabilitation Act, and the ADA, Plaintiffs seek the same relief for the same alleged harm under each statute. And because the relief Plaintiffs seek for violations of each of these statutes—special education and related

services necessary to provide a FAPE—is available under the IDEA, the IDEA's exhaustion requirement applies to all these claims. *See Luna Perez v. Sturgis Public Sch.*, 598 U.S. 142, 146-47 (2023) (holding that IDEA's exhaustion requirement applies to claims brought under other statutes where relief sought is available under IDEA).

### D. The futility exception to exhaustion does not apply.

Although they concede in their complaint that, other than E.H. and A.M., they failed to exhaust their administrative remedies, Plaintiffs allege that their exhaustion is excused because participation in the administrative process would be futile. Compl. ¶ 18. In certain narrow circumstances, a plaintiff "may bypass the [IDEA] administrative process where exhaustion would be futile or inadequate." *Honig v. Doe*, 484 U.S. 305, 327 (1988). A plaintiff seeking to evade exhaustion bears the burden of showing "the futility or inadequacy of administrative review." *Id*. The futility of engaging with the administrative process is not a subjective evaluation for the plaintiff to make; rather, the question is whether the alleged injuries can "be redressed to some degree by the IDEA's administrative procedures and remedies." *McCormick v. Waukegan Sch. Dist. No. 60*, 374 F.3d 564, 568 (7th Cir. 2004). Only if a plaintiff alleges injuries that a hearing officer cannot redress to any degree is exhaustion "futile." *Id.*; *Simmons*, 2022 WL 7100611, at *4 (futility exception "boil[s] down to the same idea: pursuing administrative remedies is futile when the administrative officer can't order the changes necessary to ensure a [FAPE]").

Plaintiffs allege that it would be futile to bring their claims in administrative hearings because their claims are "systemic" and "hearing officers lack jurisdiction to hear systemic claims and grant systemic relief." Compl. ¶¶ 18-19. The Court should reject this argument at the outset because, as discussed, two of the named Plaintiffs have brought their claims in the administrative process, received a due process hearing, and were awarded relief by the administrative officer. *Supra* at 2-3. Not only does that moot the claims of those individuals, *see supra* at 3, but it also

shows that anyone who believes that their right to a FAPE is being violated has a viable, effective remedy.

The administrative process is especially important because what each Plaintiff seeks—a FAPE—is a "complex, highly individualized task"; "[e]very step of the child-find inquiry and IEP process under the IDEA is child specific and requires the application of trained and particularized professional educational judgment." *Jamie S.*, 668 F.3d at 496. Applying a futility exception to the exhaustion requirement would allow Plaintiffs to do an end-run around the "complex" and "highly individualized" process that Congress created to ensure that education professionals are able to apply their expertise and craft solutions to each individual's needs. The available administrative process is required under the IDEA for all of the Plaintiffs before they sue for judicial intervention.

The Seventh Circuit has declined the invitation, like the one Plaintiffs extend here, to find that the futility exception applies to "systemic" claims under the IDEA. A court in this District has noted that the claimed "'systemic violation' exception is something of an enigma" that "hasn't been recognized by the Seventh Circuit." *Simmons*, 2022 WL 7100611, at *4 n.3. And only one (the Second) of the few Circuits to entertain the possibility of a systemic-violation exception to the exhaustion requirement "has ever found one in practice." *Id.* (collecting cases). That is because "plaintiffs can't sidestep the exhaustion requirement just by bringing their case as a class action." *Id.* at *5.

Simply wanting class-wide relief that a hearing officer cannot order is insufficient. As the Third Circuit held, "[i]f this truism—that administrative hearings cannot order class-wide relief—were sufficient to satisfy the systemic exception, the IDEA's exhaustion requirement would be meaningless every time Rule 23 was invoked." *T.R. v. City of Philadelphia*, 4 F.4th 179, 194 (3d Cir. 2021). As this Court has explained, "'IDEA's singular focus on an individualized, cooperative

-9-

educational approach providing customized remedies makes Congress's neglect of broad-based actions understandable and renders IDEA ill-suited to class-wide relief.'" *H.P.*, 385 F. Supp. 3d at 635 (quoting *Blackman v. Dist. of Columbia*, 633 F.3d 1088, 1094 (D.C. Cir. 2011)).

Instead, Plaintiffs must show that "an administrative officer would be incapable of granting them the [] relief they request," and if Plaintiffs are unable to do so, "they haven't shown that exhaustion is futile." *Simmons*, 2022 WL 7100611, at *5. *Simmons* explicitly rejected the argument that even if individual plaintiffs can obtain relief, the administrative officer cannot award class-wide relief, so exhaustion is futile. As the Third Circuit has explained, "the systemic exception is not met every time a plaintiff challenges centralized, uniform policies that affect all students within a school or school district." *T.R.*, 4 F.4th at 192; *see also Simmons*, 2022 WL 7100611, at *5 ("A policy or practice is not necessarily systemic or of general applicability simply because . . . the complaint is structured as a class action seeking injunctive relief."). In *T.R.*, two individuals challenged a school policy that failed to provide translated documents and claimed that their parents were therefore unable to effectively participate in the IEP process. 4 F.4th at 192. The court found that this was not a "systemic" challenge that excused exhaustion because the challenged policy did not "effectively deprive the plaintiffs of an administrative forum." *Id*. at 192 (cleaned up). Even though the hearing officer could not order class-wide relief, the officer could order "whatever process would ensure meaningful participation for that parent," relief that would be "individualized" and tailored to the needs of each claimant. *Id*. at 194. Additionally, the relief the hearing officer ordered "could create spillover effects" for others and "provide a universally positive outcome." *Id*.

In other words, Plaintiffs may not bundle their claims together and then argue futility because the administrative officer only has the authority to address one person's complaint at a

time. Rather, the operative question is whether the administrative officer can provide effective relief to each Plaintiff. Here, the Plaintiffs' own allegations establish that the administrative process has provided effective relief for the two Plaintiffs who utilized it. Compl. ¶ 20 (noting that E.H. and A.M. "received Final Determinations and Orders on their individual claims," but that in this lawsuit they "are pursuing only the systemic claims that were stricken from their dur process complaints"). Exhaustion is not futile simply because each Plaintiff must bring his or her own complaint. Requiring exhaustion allows for the consideration of each individual's needs and thus serves the fundamental purpose of the IDEA to provide "highly individualized" relief to each student.

**E.    Vicarious exhaustion is unavailable to Plaintiffs**.

The Court also should reject Plaintiffs' effort to claim vicarious exhaustion due to E.H.'s and A.M.'s participation in the administrative process. *See* Compl. ¶ 21. The vicarious exhaustion theory posits that in some circumstances when one class member has exhausted their administrative remedies, the remaining class members need not do so. *See Flynn v. Doyle*, 2007 WL 805788, at *7 (E.D. Wis. Mar. 14, 2007). Because the claims of E.H. and A.M. must be dismissed as moot, Plaintiffs lack any remaining representative who has properly exhausted to invoke this theory. That alone disqualifies this suit from the "vicarious exhaustion" exception.

But even if Plaintiffs had such a representative, the Court should decline to declare a mass exemption from the critical administrative processes required by IDEA and PLRA. Each person's participation in the IDEA administrative process is a highly individualized proceeding designed to provide relief unique to that person. This is not a case where one size fits all, such that, as a practical matter, one person's exhaustion of administrative remedies resolves the issues presented for everyone else. *See Flynn*, 2007 WL 805788, at * 8. To the contrary, resolution of the issues at the

core of each Plaintiff's complaint will depend on each person's particular needs as determined by the administrative officer.

The individualized nature of each Plaintiff's situation is underscored by the two named Plaintiffs who exhausted their administrative remedies. *Compare* Dkt. 1-3 (E.H. Final Determination and Order) *with* Dkt. 1-4 (A.M. Final Determination and Order). Both hearings resulted in determinations by the administrative officer that E.H. and A.M. were entitled to certain services. Because E.H. was over age 21, the independent hearing officer awarded compensatory education – the only available remedy. Dkt. 1-3 at 23-24. The award specified a number of hours of services to be provided. *Id.* at 30. In contrast, A.M. was awarded several specific curricula by the independent hearing officer after significant fact development about the student's individual needs. Dkt. 1-4 at 23. Each named Plaintiff and putative class member necessarily will require an individualized determination based on their unique facts and circumstances.

The Seventh Circuit has considered a similar case, in which the plaintiffs complained of "systemic" IDEA shortcomings (albeit outside the correctional context) and requested a "systemic" remedy. *Jamie S.*, 668 F.3d at 488. The Court emphasized the individualized nature of IDEA determinations in explaining that the IDEA does not lend itself to class-wide relief: "That the plaintiffs have superficially structured their case around a claim for class-wide injunctive and declaratory relief does not satisfy Rule 23(b)(2) if as a substantive matter the relief sought would merely initiate a process through which highly individualized determinations of liability and remedy are made; this kind of relief would be class-wide in name only, and it would certainly not be final." *Id*. at 499. The Court concluded that plaintiffs did not "come close to satisfying Rule 23(b)(2)'s standard." *Id.* The Seventh Circuit left to the district court whether its initial decision to excuse exhaustion remained correct, as the district "court's reasons for excusing administrative

exhaustion appear to have been tied to the class allegations, and it's not clear whether the court would have excused exhaustion for any of the individual claims." *Id.* at 499-500. The district court proceeded to hold that the case required judgment in defendants' favor, as none of the individual plaintiffs had exhausted their administrative remedies. *Jamie S v. Milwaukee Bd. of Sch. Dirs.*, 2012 U.S. Dist. LEXIS 117672, *12 (E.D. Wis. Aug. 20, 2012).

Courts have declined to invoke vicarious exhaustion where – like here and like in *Jamie S.* – the underlying claims were "not sufficiently similar, but substantively varied and individualized." *Breen v. Chao*, 2018 U.S. Dist. LEXIS 50209, *21 (D.D.C. Mar. 27, 2018) (citing cases). In addition, courts have not universally adopted the vicarious exhaustion doctrine even where (unlike here) that doctrine's requirements *were* satisfied. *Compare Lacy v. Dart*, 2015 WL 1995576 (N.D. Ill. Sept. 29, 2015), *with Nash v. Akinbayo*, 2019 WL 4393159 (D. Del. Sept. 13, 2019). And the Seventh Circuit has never applied vicarious exhaustion in either the IDEA or PLRA context. *Wallace v. Baldwin*, 55 F.4th 535, 544 n.8 (7th Cir. 2022) (noting that court has not applied vicarious exhaustion in PLRA context). This Court should not allow Plaintiffs to use vicarious exhaustion as an end-run around the strict limits courts place on the narrow exception to the exhaustion requirement for the same reasons the futility exception should be narrowly drawn and does not apply here. Congress intended the IDEA to have "singular focus" on each individual; accordingly, it is not suited to "broad-based actions." *H.P.*, 385 F. Supp. 3d at 635. Extending the vicarious exhaustion doctrine to this case would be irreconcilable with that purpose.

### F. **Plaintiffs' claims are barred by the PLRA for failure to exhaust**.

The PLRA also imposes its own exhaustion requirement on Plaintiffs. 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Ross v. Blake*, 578 U.S. 632, 639 (2016) ("[M]andatory exhaustion statutes like the PLRA establish

-13-

mandatory exhaustion regimes, foreclosing judicial discretion."). Because Plaintiffs had available administrative options that they declined to use, their claims may not be heard in this forum. *E.g.*, *Bowers v. Dart*, 1 F.4th 513, 518 (7th Cir. 2021) ("[F]ederal courts lack discretion to consider a claim that has not traveled the required administrative path.").

**III.     The statute of limitations bars the IDEA claims of numerous Plaintiffs.**

In addition, this Court should dismiss the IDEA claims of Plaintiffs E.H., A.M., D.G., I.H, S.H., D.L., A.T., I.J., K.N., J.G., N.D., A.D., D.P. and D.H. because they are barred by the statute of limitations in 20 U.S.C. § 1415.

Section 1415 sets forth a two-year limitations period for complaints alleging a violation of the IDEA. The above-named Plaintiffs, however, failed to satisfy the statute of limitations because they filed their claims more than two years after they entered IDOC custody, the point when they knew or should have known any violation occurred.[4] Compl. ¶¶ 23-25, 29, 31-38, 42-43. Plaintiffs claim that because Defendants did not notify them of their rights, they were "unaware of their rights to special education or high school programming" and thus, the statute of limitations should be tolled. *Id*. ¶ 5. But Plaintiffs allege that, when they entered IDOC custody, they had an IEP in place. *Id*. ¶ 9. Therefore, they allege that they knew of their rights to receive special education and related services under the IDEA, and their claims are time-barred.

---

[4]     Several of these students are also well past the age of eligibility for any IDEA services.  For students who have turned 21, they are "beyond the safeguards of IDEA."  *Bd. of Educ. of Oak Park & River Forest Dist.*, 79 F.3d at 659 ("[E]xcept for the judge-created remedial exception for claims for compensatory education, the entitlements created by the Individuals with Disabilities Education Act expire when the disabled individual turns 21.").  Their only possible entitlement is to compensatory education.

**IV.** **Plaintiffs' state law claims must be dismissed**.

    **A.** **Plaintiffs' state law claims are barred by the Eleventh Amendment**.

The Eleventh Amendment bars plaintiffs' claims brought under two provisions of the Illinois School Code, 105 ILCS 5/13-40, 105 ILCS 5/14-102, (Compl. ¶¶ 150-157); plaintiffs seek a declaration that Defendants violated these state law provisions, as well as injunctive relief requiring Defendants to remedy the alleged violations (Compl. at pp. 44-46). "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Doing so "conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Id*. Accordingly, the Eleventh Amendment bars a federal court from entering any relief, "whether prospective or retroactive," against state officials for claimed violations of state law. *Id*. Plaintiffs' effort to bring claims under the Illinois School Code therefore "runs headlong into the rule that federal courts cannot grant relief against state officials based on a conclusion that they have violated state law," and those state law claims must be dismissed. *Svendsen v. Pritzker*, 91 F.4th 876, 877 (7th Cir. 2024).

    **B.** **Section 5/13-40 the Illinois School Code does not provide Plaintiffs with any enforceable rights**.

Plaintiffs' first state law claim, under section 5/13-40 of the School Code, fails on the additional ground that it provides no enforceable rights. Section 13-40 is the general enabling provision establishing a school district for individuals in IDOC custody and setting out the legislative purpose for creating the school district. 105 ILCS 5/13-40. The General Assembly amended Section 13-40 in 2006 to transfer responsibility for the school district to the then-newly created IDJJ. 105 ILCS 5/13-40; *see* Ill. Pub. Act 94-696 (eff. July 1, 2006). While subsequent

School Code provisions enumerate IDJJ's authority and responsibilities, Section 5/13-40 is a general enabling provision that does not provide specific enforceable rights to individuals.

In their complaint (at ¶ 151), Plaintiffs quote a portion of Section 5/13-40, which in turn quoted the Education Article of the Illinois Constitution, that "'[a] fundamental goal of the People of the State is the educational development of all persons to the limits of their capacities.'" 105 ILCS 5/13-40 (quoting Ill. Const. art. X, § 1). The Illinois Supreme Court has held that that provision of the Illinois Constitution does not present any judicially cognizable entitlements. *Lewis E. v. Spagnolo*, 186 Ill. 2d 198, 210 (1999) ("[P]laintiffs may not state a claim based upon the education article of the Illinois Constitution."); *Committee for Educational Rights v. Edgar*, 174 Ill. 2d 1, 24 (1996) ("[Q]uestions relating to the quality of education are solely for the legislative branch to answer."). The statutory section quoting that constitutional provision likewise does not present any judicially cognizable entitlements.

### C. Section 5/14-1.02 of the School Code is enforceable through Illinois's administrative procedures.

Plaintiffs purport to bring Count V pursuant to section 5/14-1.02 of the School Code. Compl. ¶¶ 154-157. That provision defines "children with disabilities" as "children between the ages of 3 and 21 for whom it is determined, through definitions and procedures described in the Illinois Rules and Regulations to Govern the Organization and Administration of Special Education, that special education services are needed." 105 ILCS 5/14-1.02. The provision also states that an eligible student is entitled to "continued public school educational experience to facilitate his or her successful transition and integration into adult life" and "is eligible for such services through age 21, inclusive, which, for purposes of this Article, means the day before the student's 22nd birthday, unless his or her 22nd birthday occurs during the school year, in which case he or she is eligible for such services through the end of the school year." *Id*. Finally, Section

5/14-1.02 specifies that "[a]n individualized education program must be written and agreed upon by appropriate school personnel and parents or their representatives for any child receiving special education." *Id.*

Under the School Code, a party who believe their rights under Section 5/14-1.02 have been violated may request an impartial hearing before the ISBE. 105 ILCS 5/14-8.02a. If the party remains dissatisfied, it then may seek judicial review of the hearing officer's determination. 105 ILCS 5/14-8.02a(i). As with their federal claims, Plaintiffs' attempt to do an end-run around the administrative process by bringing an action directly under Section 5/14-1.02 is irreconcilable with the comprehensive administrative remedies the General Assembly provided, and this attempt should be rejected.

**V.     IDOC should be dismissed because it would not be responsible for providing the relief Plaintiffs seek.**

Since 2006, the Illinois School Code has provided that the school district operated by IDJJ has been responsible for providing educational programs for individuals within the IDOC who are 21 and younger and have not yet earned a high school diploma. 105 ILCS 5/13-40. The School Code grants extensive "power and duties" to IDJJ to administer the school district, from "mak[ing] the necessary rules and regulations as to enrollment, attendance and all other matters regarding [the] school district" and "determin[ing] the educability of each inmate," to "nam[ing] the various individual schools." *Id.*, § 5/13-43.

IDOC has only limited authority under the School Code; it "retains authority as provided for in subsection (d) of Section 3-6-2 of the Unified Code of Corrections." And the Code of Corrections, in turn, provides that IDOC "may establish programs of mandatory education and may establish rules and regulations for the administration of such programs." 730 ILCS 5/3-6-2(d). That general authority to establish programs and rules notwithstanding, the School Code makes

clear that providing a FAPE to individuals in IDOC custody is squarely within the province of IDJJ. In sum, the relief Plaintiffs seek—identifying individuals with disabilities without high school diplomas who may need special education or related services, notifying them of their right to a FAPE, and providing necessary services—is the responsibility of IDJJ as the LEA. IDOC is not a proper party to implement that relief.

**VI.     Plaintiffs failed to allege a claim against ISBE**.

In addition to the foregoing reasons for dismissal applicable to the claims against all Defendants, Plaintiffs' claims against ISBE also fail because the few allegations in the Complaint pertaining to ISBE are only threadbare, conclusory statements that are not sufficient to state a claim. "'[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim. *Freeman v. Ocwen Loan Servicing, LLC*, 113 F.4th 701, 706 (7th Cir. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Here, Plaintiffs assert that ISBE "is also complicit in this systemic failure, neglecting its obligations to provide guidance regarding, to administer funding for, and to monitor and ensure the provision of special education and related services in compliance with applicable federal and state law." Compl. ¶ 11. According to Plaintiffs, "ISBE has failed to ensure that adult students in IDOC custody are being provided a FAPE by their LEA." *Id*. ¶ 91. Plaintiffs, however, include no factual allegations regarding what ISBE allegedly did or failed to do to fulfill its obligations under the law.

As SEA, ISBE is charged with the "supervision of public elementary schools and secondary schools" and is "responsible for general supervision" of compliance with the statute. 20 U.S.C. §§ 1401(32), 1412(a)(11); *see also* 20 Ill. Admin. Code § 226.760(a) ("The extent to which a school district is fulfilling its responsibilities to children with disabilities shall be determined by the State Board of Education."). ISBE is required to ensure that (1) the requirements of the IDEA are satisfied in the State and (2) the "educational programs for children with disabilities in the

-18-

State" are "under the general supervision" of individuals responsible for programs and "meet the educational standards" ISBE sets. 20 U.S.C. § 1412(a)(11)(A).

The Illinois School Code states that ISBE "shall make rules under which local boards shall determine the eligibility of children to receive special education." 105 ILCS 5/14-8.02(a). The School Code requires the State Superintendent "to develop uniform notices setting forth procedures" to be used by all school boards. 105 ILCS 5/14-6.01. ISBE has promulgated regulations setting forth the procedures school districts are to use in "seeking out and identifying" children within the district "who may be eligible for special education and related services." 23 Ill Admin. Code § 226.100(a). ISBE has issued regulations that LEAs must follow to provide notice to individuals of their rights to be evaluated for special education services and to conduct such evaluations. 23 Ill. Admin. Code § 226.110. The ISBE's regulations also provide rules that LEAs must follow in creating IEPs. 23 Ill. Admin. Code § 226.200-260. Additionally, ISBE has issued regulations LEAs must follow to implement the procedural safeguards required under the IDEA. 23 Ill. Admin. Code § 226.500-570. Further, ISBE has complied with its obligations to provide an administrative process to conduct due process hearings. 23 Ill. Admin. Code § 226.600-690.

ISBE's regulatory enactments thus (1) provide guidance and rules that LEAs must follow in identifying eligible students, notifying students of their rights, and providing special education and related services and (2) set forth the due process hearing procedure. Additionally, as Plaintiffs allege, E.H. and A.M. obtained relief through the administrative hearing process overseen by ISBE. Compl. ¶ 20 & Exs. 3-4. In light of ISBE's regulations and oversight of the administrative process through which eligible students can vindicate their rights to special education and related services, Plaintiffs' conclusory allegations (at ¶ 11) that ISBE "neglect[ed] its obligations to provide guidance regarding, to administer funding for, and to monitor and ensure the provision of

special education and related services in compliance with applicable federal and state law" or (at

¶ 91) "failed to ensure that adult students in IDOC custody are being provided a FAPE by their

LEA" cannot state a claim. *See Brockett v. Effingham Cnty., Ill.*, 116 F.4th 680, 685 (7th Cir. 2024)

("Allegations that state legal conclusions' or '[t]hreadbare recitals of the elements of a cause of

action' are not entitled to the assumption of truth." (quoting *Iqbal*, 556 U.S. at 678)).

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint.


Dated:  December 2, 2024                                    Respectfully submitted,

**Illinois Department of Juvenile Justice, Illinois Department of Corrections, and Illinois State Board of Education**, Defendants

*/s/ Nicki B. Bazer*
One of Their Attorneys

Nicki B. Bazer (nbb@franczek.com)
Michael A. Warner, Jr. (maw@franczek.com)
John Swinney (js@franczek.com)
Special Assistant Attorneys General
Franczek P.C.
300 S. Wacker. St., Suite 3400
Chicago, IL 60606
(312) 986-0300

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned attorney hereby certifies that she caused a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** to be filed with the Clerk of the Court using the CM/ECF Filing System which will electronically serve copies upon all counsel of record on this 2nd day of December, 2024.

*/s/ Nicki B. Bazer* _____