**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| EXODUS HEBERT *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 1:24-cv-07950-SLE |
| v. | ) |
| | ) Judge Sara L. Ellis |
| ILLINOIS DEPARTMENT OF | ) |
| CORRECTIONS; ILLINOIS | ) Magistrate Judge Beth W. Jantz |
| DEPARTMENT OF JUVENILE | ) |
| JUSTICE; and ILLINOIS STATE | ) |
| BOARD OF EDUCATION, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND**
**MOTION TO STRIKE CLASS ALLEGATIONS**

Nicki B. Bazer (nbb@franczek.com)
Michael A. Warner, Jr. (maw@franczek.com)
John E. Swinney (js@franczek.com)
Special Assistant Attorneys General
Franczek P.C.
300 S. Wacker. St., Suite 3400
Chicago, IL 60606
(312) 986-0300


Dated:   November 20, 2025

3465036.2

## TABLE OF CONTENTS

Page(s)

ARGUMENT ........................................................................................................... 4

I.  The Court lacks subject matter jurisdiction over E.H.'s and A.M.'s claims. ........ 4

II.  The remaining Plaintiffs' federal claims are barred for failure to exhaust their remedies under the IDEA and the PLRA. ................................... 7

    A.  Plaintiffs concede that they failed to exhaust their IDEA claim. .............. 7

    B.  Plaintiffs' claims all amount to failure to provide FAPE. ........................ 9

    C.  Section 1915(*l*) bars Plaintiffs' other federal claims. ............................. 10

    D.  The futility exception to exhaustion does not apply. .............................. 11

    E.  Vicarious exhaustion is unavailable to Plaintiffs. ................................... 14

    F.  Plaintiffs' claims are barred by the PLRA for failure to exhaust. .......... 17

III.  Plaintiffs cannot enforce state law against state agencies in federal court. ......... 18

IV.  Plaintiffs' outdated and inaccurate factual allegations do not show a plausible right to relief ...................................................................... 21

V.  Age and time related limitations and bars significantly narrow Plaintiffs' claims ............................................................................................ 22

VI.  Plaintiffs failed to allege a claim against IDOC. ................................................ 24

VII.  Plaintiffs failed to allege a claim against ISBE ................................................. 23

VIII.  Plaintiffs' putative class allegations should be stricken ..................................... 25

CONCLUSION ...................................................................................................... 29

3465036.2

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page(s)**

Cases

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................ 24, 26

*Bd. of Educ. of Oak Park & River Forest Dist.*,
    79 F.3d ................................................................................................................... 23, 29

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................ 21, 23

*Bills by Bills v. Homer Consol. Sch. Dist. No. 33-C*,
    959 F. Supp. 507 (N.D. Ill. 1997) ................................................................................ 8

*Blackman v. Dist. of Columbia*,
    633 F.3d 1088 (D.C. Cir. 2011) ................................................................................. 13

*Bowers v. Dart*,
    1 F.4th 513 (7th Cir. 2021) ........................................................................................ 18

*Breen v. Chao*,
    2018 U.S. Dist. LEXIS 50209, *21 (D.D.C. Mar. 27, 2018) .................................... 16

*Brockett v. Effingham Cnty., Ill.*,
    116 F.4th 680 (7th Cir. 2024) ................................................................................... 26

*Brunner v. Liautaud*,
    No. 14-5509, 2015 U.S. Dist. LEXIS 46018, *18-19 (N.D. Ill. April 8, 2015) ........ 26

*Chafin v. Chafin*,
    568 U.S. 165 (2013) ................................................................................................... 4

*Charlie F. by Neil F. v. Bd. of Edu. of Skokie Sch. Dist.*,
    98 F.3d 989 (7th Cir. 1996) ........................................................................................ 8

*Christopher v. United States*,
    148 F.4th 885 (7th Cir. 2025) ................................................................................ 20, 21

*Flynn v. Doyle*,
    2007 WL 805788 (E.D. Wis. Mar. 14, 2007) ........................................................... 15

*Food & Drug Admin. v. Alliance for Hippocratic Medicine*,
    602 U.S. 367 (2024) ................................................................................................... 6

3465036.2

## TABLE OF AUTHORITIES
### (CONTINUED)

**Page(s)**

*Foster v. Center Township of LaPorte Cnty.*,
  798 F.2d 237 (7th Cir. 1986)............................................................... 4

*Freeman v. Ocwen Loan Servicing, LLC*,
  113 F.4th 701 (7th Cir. 2024)............................................................ 24

*H.P. v. Chicago Bd. of Ed.*,
  385 F. Supp. 3d 623 (N.D. Ill. 2019) ......................................... passim

*Honig v. Doe*,
  *484 U.S. 305 (1988)* ....................................................................... 11

*Jamie S v. Milwaukee Bd. of Sch. Dirs.*,
  2012 U.S. Dist. LEXIS 117672, *12 (E.D. Wis. Aug. 20, 2012) ..................... 16, 28

*Jamie S. v. Milwaukee Pub. Sch.*,
  668 F.3d 481 (7th Cir. 2012)........................................................ passim

*Jones v. Bock*,
  549 U.S. 199 (2007) .......................................................................... 18

*Jones v. Sullivan*,
  938 F.2d 801 (7th Cir. 1991)............................................................... 4

*Lacy v. Dart*,
  2015 WL 1995576 (N.D. Ill. Sept. 29, 2015)...................................... 17

*Linda T. v. Rice Lake Area Sch. Dist.*,
  417 F.3d 704 (7th Cir. 2005)................................................................ 5

*Luna Perez v. Sturgis Public Sch.*,
  598 U.S. 142 (2023) .......................................................................... 11

*McCormick v. Waukegan Sch. Dist. No. 60*,
  374 F.3d 564 (7th Cir. 2004)............................................................. 11

*Mosely v. Bd. of Ed. of City of Chicago*,
  434 F. 3d 527 (7th Cir. 2006)............................................................... 7

*Nash v. Akinbayo*,
  2019 WL 4393159 (D. Del. Sept. 13, 2019) ...................................... 17

iii

## TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Parungao v. Cmty. Health Sys.*,
  858 F.3d 452 (7th Cir. 2017) ................................................................................. 5

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) ................................................................................................ 18

*Porter v. Nussle*,
  534 U.S. 516 (2002) .............................................................................................. 17

*Ross v. Blake*,
  578 U.S. 632 (2016) .............................................................................................. 18

*Simmons v. Pritzker*,
  2022 WL 7100611 (N.D. Ill. Oct. 12, 2022) ......................................... 9, 11, 12, 13

*St. John's United Church of Christ v. City of Chicago*,
  502 F.3d 616 (7th Cir. 2007) .................................................................................. 4

*Svendsen v. Pritzker*,
  91 F.4th 876 (7th Cir. 2024) ................................................................................. 18

*T.R. v. City of Philadelphia*,
  4 F.4th 179 (3d Cir. 2021) .............................................................................. 12, 13

*Tunstall v. Bergeson*,
  141 Wn.2d 201 (Wash. S.Ct. 2000) ..................................................................... 19

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S.Ct. 2541 (2011) ..................................................................................... 27, 28

*Wallace v. Baldwin*,
  55 F.4th 535 (7th Cir. 2022) ................................................................................. 17

*Williamson v. Curran*,
  714 F.3d 432 (7th Cir. 2013) .................................................................................. 4

*Zimny v. Geneva Cmty. Unit Sch. Dist. 304*,
  718 F. Supp. 3d 766 (N.D. Ill. 2024) .................................................................... 7

4:06-cv-52, 2008 U.S. Dist. LEXIS 75830, *4 (N.D. Fla. Sept. 30, 2008) ................................. 19

3465036.2

## TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

Statutes

105 ILCS 5/13-40 ................................................................................................ 19, 20

105 ILCS 5/14-102 ...................................................................................................... 19

105 ILCS 5/14-6.01 ..................................................................................................... 25

105 ILCS 5/14-8.02(a) ................................................................................................. 25

105 ILCS 5/26-1 .......................................................................................................... 20

18 U.S.C. § 3626(a)(1)(A)-(B) ............................................................................... 19, 20

20 U.S.C. § 1401(9) ..................................................................................................... 19

20 U.S.C. § 1412(a)(1)(B)(i) ....................................................................................... 19

20 U.S.C. § 1415(i)(2) ....................................................................................... 6, 8, 9, 23

42 U.S.C. § 1997e(a) .................................................................................................... 17

730 ILCS 5/3-9-1(a)(5) ................................................................................................ 20


Rules

Fed. R. Civ. P. 11 ........................................................................................................ 22

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 21


Regulations

20 Ill. Admin. Code § 226.760(a) ................................................................................ 25

23 Ill Admin. Code § 226.100(a) ................................................................................. 25

23 Ill. Admin. Code § 226.110 ..................................................................................... 25

23 Ill. Admin. Code § 226.200-260 ............................................................................. 25

23 Ill. Admin. Code § 226.500-570 ............................................................................. 25

## TABLE OF AUTHORITIES
### (CONTINUED)

**Page(s)**

23 Ill. Admin. Code § 226.600-690 ........................................................................ 25

34 CFR § 300.324(d) ............................................................................................... 9

34 CFR §300.102(a)(2)(i) ........................................................................................ 9

Ill. Admin. Code tit. 20, § 405 ............................................................................... 20

Ill. Admin. Code tit. 20, § 405.50 .......................................................................... 21

Ill. Admin. Code tit. 20, § 405.70 .......................................................................... 21

P.A. 102-1100 .......................................................................................................... 21

3465036.2

Plaintiffs filed their putative class action Complaint over 15 months ago, asserting that Defendants have failed to provide a putative class of disabled individuals in adult prisons between the ages of 18 and 22 with a "free and appropriate public education" in violation of the Individuals with Disabilities in Education Act (IDEA) and Illinois state law. Defendants agree with Plaintiffs that expanding the educational opportunities available to young adults who are incarcerated is good policy. To that end, the Illinois Department of Juvenile Justice (IDJJ) today operates high school credit-bearing classrooms at six Illinois Department of Corrections (IDOC) prisons. (The number will be seven soon, and all eight facilities identified to host these classrooms should be up and running before this motion is fully briefed.) More than 165 students (70+ with IEPs) are currently enrolled, and that number is growing. One named Plaintiff already has graduated from this program with a high school diploma. And Plaintiffs have acknowledged that – aside from a single disputed issue – they agree with the Defendants' written policies that underpin this program. These high school classrooms supplement the adult education programs that have long been offered at IDOC facilities – through which another named Plaintiff recently earned his State of Illinois High School Diploma (formerly GED). The premise of Plaintiffs' suit – a complete lack of educational programming and related policies – is belied by these diplomas and the policies plaintiffs' attorneys and expert approved.

Although Defendants agree in many respects with Plaintiffs' broad policy goals, Defendants disagree that federal court is the proper forum for determining whether Defendants' efforts have met these shared goals. In essence, Plaintiffs ask this Court to superintend a state-run school district within a state-run penal system. The Court should deny that invitation. For several interrelated reasons, this Court must and should dismiss the complaint.

1

***First*, Plaintiffs are required to exhaust available administrative remedies.**

Both the IDEA and the Prison Litigation Reform Act (PLRA) unequivocally require plaintiffs to exhaust available administrative remedies before filing suit. These are not meaningless hurdles: IDEA due process hearings ensure that the unique individualized needs and circumstances of a student are considered in the first instance by a person with educational training and expertise to craft an appropriate remedy tailored to address any deprivation.

Plaintiffs seek to be excused wholesale from the exhaustion requirement, halfheartedly characterizing the administrative process as inadequate or futile. But there is no real dispute that the administrative process is available and provides effective relief. Plaintiffs acknowledge that the two named Plaintiffs who attempted the administrative process obtained the relief they sought. Those two Plaintiffs' claims are moot, and the remaining named Plaintiffs are similarly required by federal law to proceed through the administrative process before seeking relief in this court.

***Second*, Plaintiffs cannot enforce state law against state agencies in federal court.**

Plaintiffs seek to have a federal court enter an injunction against sovereign State agencies, raising separation of powers and federalism concerns. Those concerns are heightened here when Plaintiffs point to state law – not federal law – as the source of many of the legal entitlements they seek to enforce. Supreme Court precedent has long forbidden federal district courts from enforcing state compliance with state law.

***Third*, Plaintiffs' outdated Complaint does not show a plausible right to relief.**

Plaintiffs' Complaint was filed in August 2024, and its allegations no longer are plausible in light of since-conceded and indisputable facts. Indeed, the lawsuit is premised on Defendants having a complete lack of educational infrastructure or programs, which is plainly not accurate today. Among other problems, the Complaint alleges the lack of any relevant policies when it is

2

now undisputed that those policies exist and are generally agreed. Likewise, the Complaint alleges a lack of any high school credit-bearing educational offerings when more than 165 students currently are enrolled in such classes, and one named Plaintiff has graduated as a result. In addition, several named Plaintiffs no longer are in IDOC custody or have aged out of IDEA entitlements. In light of these discrepancies, the Complaint does not adequately provide plausible grounds for any current entitlement to relief.

### *Fourth*, Plaintiffs' claims are inherently individualized and cannot proceed on a class-wide basis.

Finally, Plaintiffs' putative class allegations should be stricken. Binding Seventh Circuit precedent regarding class treatment under the IDEA forecloses class certification here. *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481 (7th Cir. 2012). And the lessons from that case – cautioning about "the propriety of a federal-court takeover of a school district's special-education program as a remedy for individual IDEA violations," *id.* at 494 – loom large in this one. On the other side of the coin, the Seventh Circuit's analysis and reasoning – including its observation that "[e]very step of the … IEP process under the IDEA is child specific and requires the application of trained and particularized professional educational judgment," *id.* at 496, once again favors the administrative hearing forum that offers individualized consideration by hearing officers with expertise. And – because it bears repeating – that administrative process has worked for every plaintiff who attempted it.

For these and the additional reasons described below, Plaintiffs' complaint should be dismissed, and Plaintiffs' class allegations stricken.

3465036.2

**ARGUMENT**

**I.      The Court lacks subject matter jurisdiction over E.H.'s and A.M.'s claims**.

E.H.'s and A.M.'s claims to a FAPE already have been adjudicated by the administrative process, and there is no effective relief that this Court can grant them in this lawsuit.  Compl. ¶¶ 19-21.  Claims that are moot should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). To satisfy Article III's standing requirements, a plaintiff's claim must present "an actual 'case' or 'controversy.'" *Jones v. Sullivan*, 938 F.2d 801, 805 (7th Cir. 1991) (quoting *Foster v. Center Township of LaPorte Cnty.*, 798 F.2d 237, 245 (7th Cir. 1986)). "No case or controversy exists, and a suit becomes moot . . . when it is impossible for the court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). Here, Plaintiffs' complaint alleges that E.H. and A.M. have received an order from the administrative officer providing the individualized relief each Plaintiff seeks in this action. Compl. ¶ 20. Therefore, there is no effective relief that the Court can provide them.

The Court previously acknowledged "issues … with the original complaint where the named plaintiffs may have standing problems because they actually received what they are looking for …."  8/25/25 Hr'g Tr. at 4.  The Court queried whether Plaintiffs might "substitute in" other people who may have standing.  *Id.*  But Plaintiffs have not done so and cannot do so, because every other putative class member who has initiated the administrative hearing process has also succeeded in obtaining relief in the form of a settlement.[1]  *E.g.*, Compl. ¶ 1 n.1; Dkt. 57 at Ex. 4, Ex. 5, Ex. 6 (examples of these settlement agreements).

---

[1]      Documents "referenced in the complaint and central to the claim(s)" are properly considered on a motion to dismiss.  *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

4

Removing any doubt about whether E.H. and A.M. have standing, after Plaintiffs filed this lawsuit, both E.H. and A.M. (represented by the same counsel as this case) filed separate lawsuits asserting that each is the "prevailing party" in the "successful prosecution of a special education due process hearing."[2] The question before the administrative officer was the same question presented in this lawsuit: whether Plaintiffs were denied a FAPE. Ex. 1 ¶ 4 ("[E.H.] prevailed when the Impartial Hearing Officer ("IHO") issued an order finding that the District denied [E.H.] a free appropriate public education ("FAPE")"); Ex. 2 ¶ 4 (same for A.M.). E.H. and A.M. both acknowledge that they successfully obtained individualized relief that is now final – "Final Determinations and Orders on their individual claims" – through the administrative process as the IDEA contemplates. Compl. ¶ 20. Their separate lawsuits seek attorneys' fees as the "prevailing part[ies]" in the "successful prosecution of a special education due process hearing." *See* Ex. 1 at 1, Ex. 2 at 1. Those complaints tout the relief that they were awarded with statements like "[t]he Plaintiff [E.H.] succeeded on the primary significant issue of being denied a FAPE and secured benefit." Ex. 1 at ¶ 18; *see also* Ex. 1 at ¶ 12 (describing findings in Plaintiff's "favor"); Ex. 2 at ¶ 13 (same). And the complaints seek significant fee amounts totaling more than half a million dollars total – more than $241,000 for E.H., Ex. 1 at 10, and more than $268,000 for A.M., Ex. 2 at 10 – which Plaintiffs describe as "reasonable" and "consistent with the overall results obtained." Ex. 1 ¶ 19-21; Ex. 2 ¶ 19-21; *see also* Dkt. 110 at 3 (describing the relief obtained as "substantial"). Given that the most critical factor in a fee award is the degree of success obtained, *Linda T. v. Rice*

---

[2]    *See* Complaint, *Hebert v. Bd. of Educ. Of Ill. Dept. of Juvenile Justice Sch. Dist. #428*, No. 24-12964 (N.D. Ill.), attached as Exhibit 1; Complaint, *Monroe v. Bd. of Educ. Of Ill. Dept. of Juvenile Justice Sch. Dist. #428*, No. 24-2639 (S.D. Ill.), attached as Exhibit 2. The Court may take judicial notice of these Complaints. *Parungao v. Cmty. Health Sys.*, 858 F.3d 452, 457 (7th Cir. 2017).

*Lake Area Sch. Dist.*, 417 F.3d 704, 708 (7th Cir. 2005), Plaintiffs' substantial fee requests reflect their legal position that the administrative process yielded a successful result.

If these two named plaintiffs desired additional relief, they had specific avenues of recourse under the IDEA that they chose not to pursue. Once they obtained a final administrative order, E.H. and A.M. had a statutory cause of action to appeal the hearing officer's determination within 90 days. 20 U.S.C. § 1415(i)(2). They elected not to do so. Compl. ¶ 20; Dkt. 110 at 3 ("Plaintiff's status as the prevailing party became final in September 2024 because neither party appealed the Impartial Hearing Officer's final order and determination within 120 days."); Ex. 1 ¶ 14 ("The IHO's order became final in September of 2024 …"); Ex. 2 at ¶ 15 (same). And if E.H. or A.M. "have issues with [Defendants'] compliance with the ordered relief, their recourse lies in an action to enforce the hearing officer's decision." *H.P. v. Chicago Bd. of Ed.*, 385 F. Supp. 3d 623, 636 (N.D. Ill. 2019). Again, however, they have opted not to exercise that option.

Instead, they say they seek to vindicate *other people's rights*, asserting that E.H. and A.M. are not appealing from their individual administrative orders in any way, but instead "are pursuing only the systemic claims that were stricken from their due process complaints." Compl. ¶ 20. However, they lack standing to bring such claims because they each individually received full relief in the underlying due process proceedings. Foundational principles of limited federal jurisdiction foreclose these two Plaintiffs from proceeding solely on others' behalf in federal court. *Food & Drug Admin. v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 379 (2024) ("For a plaintiff to get in the federal courthouse door and obtain a judicial determination of what the governing law is, the plaintiff cannot be a mere bystander, but instead must have a personal stake in the dispute.") (internal quotation marks omitted).

The claims of E.H. and A.M. are moot and must be dismissed; this court lacks jurisdiction to hear their claims.

## II. The remaining Plaintiffs' federal claims are barred for failure to exhaust their remedies under the IDEA and the PLRA.

Other than E.H. and A.M., whose claims are moot, the remaining Plaintiffs failed to exhaust their administrative remedies as expressly required by the PLRA and the IDEA. Accordingly, the remaining Plaintiffs' claims must be dismissed.

### A. Plaintiffs concede that they failed to exhaust their IDEA claim.

In the "EXHAUSTION" section of the Complaint (at pp. 7-8), Plaintiffs acknowledge that all but two of them have failed to exhaust their administrative remedies as required by § 1415(l).[3] Compl. ¶ 19; *see also id.* ¶¶ 23-43. The Complaint alleges that only two Plaintiffs, E.H. and A.M., satisfied the exhaustion requirement. *Id.* ¶¶ 19, 23-24. Plaintiffs do not allege that the remaining Plaintiffs have engaged in the administrative procedures required by § 1415(f) and (g), nor is there anything in the Complaint to suggest that they have. *Id.* ¶¶ 23-43; *id.* ¶¶ 19-21 (alleging that only E.H. and A.M. have met the exhaustion requirement and arguing that the remaining Plaintiffs need not do so). To the contrary, Plaintiffs explicitly allege that their failure to exhaust was excused. *Id.* ¶¶ 18-21.

---

[3] Defendants acknowledge that failure to exhaust is generally an affirmative defense and plaintiffs are not required to plead that they exhausted their administrative remedies. *Mosely v. Bd. of Ed. of City of Chicago*, 434 F. 3d 527, 533 (7th Cir. 2006). There is an exception to this general rule, however, that holds defendants may properly raise the exhaustion defense on a motion to dismiss when the basis for the defense appears on the face of the complaint. *Zimny v. Geneva Cmty. Unit Sch. Dist. 304*, 718 F. Supp. 3d 766, 786 (N.D. Ill. 2024) ("However, the Court may grant a motion to dismiss on failure to exhaust grounds if something on the 'face of the complaint [ ] compels a conclusion' that the plaintiff failed to exhaust" (quoting *Mosely*, 434 F.3d at 533)). Here, Defendants' exhaustion defense is predicated on the allegations in Plaintiffs' complaint.

"The IDEA requires a plaintiff to first exhaust available administrative remedies before filing suit." *H.P.*, 385 F. Supp. 3d at 633; *see also* 20 U.S.C. § 1415(*l*). The IDEA sets forth procedures a party must follow to bring a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a Free and Appropriate Public Education to such child." 20 U.S.C. § 1415(b)(6), (f), (g). Under Section 1415(f), "[w]henever" a party presents such a complaint, the parties involved must have an opportunity for an "impartial due process hearing" conducted by the SEA, here the ISBE. The statute prescribes a comprehensive administrative process to resolve the complaint, including, if a settlement is not reached, a hearing conducted by an impartial officer, *id.*, § 1415(f)(1)(A)(ii), (f)(3). These administrative procedures are not optional; "[B]efore the filing of a civil action under such [other federal] laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted." *Id.*, § 1415(*l*).

The exhaustion requirement is essential to safeguarding the IDEA's stated purpose to provide children with disabilities with individualized educational opportunities that meet their unique needs. *See, e.g.*, § 1414(d)(1)(A)-(B) (individualized education program teams must design IEPs for each child tailored to his or her level of academic achievement and performance, as well as specific disability); *cf. Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 496 (7th Cir. 2012) ("Every step of the child-find inquiry and IEP process under the IDEA is child specific and requires the application of trained and particularized professional educational judgment."). The administrative hearing process ensures that "educational professionals"—not courts—"have at least the first crack at formulating a plan to overcome the consequences of educational shortfalls." *Charlie F. by Neil F. v. Bd. of Edu. of Skokie Sch. Dist.*, 98 F.3d 989, 992 (7th Cir. 1996), *abrogated on other grounds by Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154 (2017); *see also Bills by Bills v.*

8

*Homer Consol. Sch. Dist. No. 33-C*, 959 F. Supp. 507, 511 (N.D. Ill. 1997) (enumerating purposes served by IDEA's exhaustion requirement).

Administrative exhaustion is important here for additional reasons relating to the correctional setting. First, individual students are not entitled to FAPE if they were not identified as being a child with a disability in their "last educational placement prior to their incarceration in an adult correctional facility." 34 CFR §300.102(a)(2)(i). Plaintiffs allege in conclusory fashion that they do not fall into this exception, Compl. ¶ 63, but they do not plead for any specific Plaintiff that their "last educational placement" was one in which they had an IEP. This is the type of individual determination best made by the administrative hearing officer in assessing each student's particular circumstances and needs. Second, for any student residing in a correctional facility, the IEP Team may modify the student's IEP or placement in light of a bona fide security or compelling penological interest. 34 CFR § 300.324(d). These security considerations are best considered by the administrative process in the context of individual needs and circumstances, not on a blanket basis by a federal court that lacks any specialized expertise and has been deprived of an administrative record by Plaintiffs' failure to exhaust.

## B.     Plaintiffs' claims all amount to failure to provide FAPE.

Section 1415(*l*) "requires exhaustion when the gravamen of a complaint seeks redress for a[n institution's] failure to provide a FAPE." *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 170 (2017). In *Fry*, the Court applied a two-part test to determine whether a plaintiff's claims fall within the exhaustion requirement. "First," the Court asked, "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance?" *Id.* at 171; *see also Simmons*

9

*v. Pritzker*, 2022 WL 7100611, at *4 (N.D. Ill. Oct. 12, 2022), *aff'd*, 2023 WL 8649881 (7th Cir. Dec. 14, 2023) (applying test).

Here, Plaintiffs' claims unquestionably seek redress for failure to provide a FAPE, and therefore they are subject to the IDEA's exhaustion requirement. And the face of the complaint makes clear that plaintiffs other than E.H. and A.M. did not exhaust their administrative remedies. Compl. ¶¶ 18-21.

### C.    Section 1915(l) bars Plaintiffs' other federal claims.

The IDEA's exhaustion requirement "extends to claims under other statutes to the extent those claims seek relief that is also available under the IDEA." *H.P.*, 385 F. Supp. 3d at 633 (internal quotation marks omitted). Plaintiffs' claims under the ADA and Rehabilitation Act also concern the alleged failure to provide a FAPE and seek relief—the provision of a FAPE—that is available under the IDEA. Compl. ¶ 5 (Plaintiffs have a "right to a FAPE while in the custody of IDOC"); *id.*, ¶ 6 (Plaintiffs were "depriv[ed] . . . of their right to a FAPE"); *id.*, ¶ 10 ("IDOC and IDJJ[] . . . fail[ed] to provide a FAPE"); 98 (harms include the "deprivation of a FAPE to [Plaintiffs]"); *id.*, ¶ 107 (Defendants "failed to identify eligible students with disabilities and notify eligible students of their right to a FAPE . . . Defendants have denied a FAPE to Named Plaintiffs"); *id.*, ¶ 121 ("Defendants' actions deny eligible students with disabilities access to a FAPE"); *id.*, "Wherefore" clause, pp. 44-46 (requesting order directing Defendants to "provide compensatory education of special education and related services and high school education" to Plaintiffs who were "denied . . . access to a FAPE").

Thus, although their claims are brought under the IDEA, the Rehabilitation Act, and the ADA, Plaintiffs seek the same relief for the same alleged harm under each statute. And because the relief Plaintiffs seek for violations of each of these statutes—special education and related

10

services necessary to provide a FAPE—is available under the IDEA, the IDEA's exhaustion requirement applies to all these claims. *See Luna Perez v. Sturgis Public Sch.*, 598 U.S. 142, 146-47 (2023) (holding that IDEA's exhaustion requirement applies to claims brought under other statutes where relief sought is available under IDEA).

**D.    The futility exception to exhaustion does not apply**.

Plaintiffs allege that exhaustion is excused because participation in the administrative process would be futile. Compl. ¶ 18. A plaintiff seeking to evade exhaustion bears the burden of showing "the futility or inadequacy of administrative review." *Honig v. Doe*, 484 U.S. 305, 327 (1988).  The futility of engaging with the administrative process is not a subjective evaluation for the plaintiff to make; rather, the question is whether the alleged injuries can "be redressed to some degree by the IDEA's administrative procedures and remedies." *McCormick v. Waukegan Sch. Dist. No. 60*, 374 F.3d 564, 568 (7th Cir. 2004). Only if a plaintiff alleges injuries that a hearing officer cannot redress to any degree is exhaustion "futile." *Id.*; *Simmons*, 2022 WL 7100611, at *4 (futility exception "boil[s] down to the same idea: pursuing administrative remedies is futile when the administrative officer can't order the changes necessary to ensure a [FAPE]").

Plaintiffs allege that it would be futile to bring their claims in administrative hearings because their claims are "systemic" and "hearing officers lack jurisdiction to hear systemic claims and grant systemic relief." Compl. ¶¶ 18-19. The Court should reject this argument at the outset because, as discussed, two of the named Plaintiffs have brought their claims in the administrative process, received a due process hearing, and were awarded relief by the administrative officer. Not only does that moot the claims of those individuals, but it also shows that anyone who believes that their right to a FAPE is being violated has a viable, effective remedy.

11

The administrative process is especially important because what each Plaintiff seeks—a FAPE—is a "complex, highly individualized task"; "[e]very step of the child-find inquiry and IEP process under the IDEA is child specific and requires the application of trained and particularized professional educational judgment." *Jamie S.*, 668 F.3d at 496. Applying a futility exception to the exhaustion requirement would allow Plaintiffs to do an end-run around the "complex" and "highly individualized" process that Congress created to ensure that education professionals are able to apply their expertise and craft solutions to each individual's needs. The available administrative process is required under IDEA for all the Plaintiffs before they sue for judicial intervention.

The Seventh Circuit has declined the invitation, like the one Plaintiffs extend here, to find that the futility exception applies to "systemic" claims under the IDEA. A court in this District has noted that the claimed "'systemic violation' exception is something of an enigma" that "hasn't been recognized by the Seventh Circuit." *Simmons*, 2022 WL 7100611, at *4 n.3. And only one (the Second) of the few Circuits to entertain the possibility of a systemic-violation exception to the exhaustion requirement "has ever found one in practice." *Id.* (collecting cases). That is because "plaintiffs can't sidestep the exhaustion requirement just by bringing their case as a class action." *Id.* at *5.

Simply wanting class-wide relief that a hearing officer cannot order is insufficient. As the Third Circuit held, "[i]f this truism—that administrative hearings cannot order class-wide relief—were sufficient to satisfy the systemic exception, the IDEA's exhaustion requirement would be meaningless every time Rule 23 was invoked." *T.R. v. City of Philadelphia*, 4 F.4th 179, 194 (3d Cir. 2021). As this Court has explained, "'IDEA's singular focus on an individualized, cooperative educational approach providing customized remedies makes Congress's neglect of broad-based

12

actions understandable and renders IDEA ill-suited to class-wide relief.'" *H.P.*, 385 F. Supp. 3d at 635 (quoting *Blackman v. Dist. of Columbia*, 633 F.3d 1088, 1094 (D.C. Cir. 2011)).

Instead, Plaintiffs must show that "an administrative officer would be incapable of granting them the [] relief they request," and if Plaintiffs are unable to do so, "they haven't shown that exhaustion is futile." *Simmons*, 2022 WL 7100611, at *5. *Simmons* explicitly rejected the argument that even if individual plaintiffs can obtain relief, the administrative officer cannot award class-wide relief, so exhaustion is futile. As the Third Circuit has explained, "the systemic exception is not met every time a plaintiff challenges centralized, uniform policies that affect all students within a school or school district." *T.R.*, 4 F.4th at 192; *see also Simmons*, 2022 WL 7100611, at *5 ("A policy or practice is not necessarily systemic or of general applicability simply because . . . the complaint is structured as a class action seeking injunctive relief."). In *T.R.*, two individuals challenged a school policy that failed to provide translated documents and claimed that their parents were therefore unable to effectively participate in the IEP process. 4 F.4th at 192. The court found that this was not a "systemic" challenge that excused exhaustion because the challenged policy did not "effectively deprive the plaintiffs of an administrative forum." *Id.* at 192 (cleaned up). Even though the hearing officer could not order class-wide relief, the officer could order "whatever process would ensure meaningful participation for that parent," relief that would be "individualized" and tailored to the needs of each claimant. *Id.* at 194. Additionally, the relief the hearing officer ordered "could create spillover effects" for others and "provide a universally positive outcome." *Id.*

In other words, Plaintiffs may not bundle their claims together and then argue futility because the administrative officer only has the authority to address one person's complaint at a

time. Rather, the operative question is whether the administrative officer can provide effective relief to each Plaintiff.

Here, Plaintiffs concede that the administrative process has provided effective relief for the two Plaintiffs who utilized it. Compl. ¶ 20 (noting that E.H. and A.M. "received Final Determinations and Orders on their individual claims," but that in this lawsuit they "are pursuing only the systemic claims that were stricken from their dur process complaints"); Ex. 1 at 1, Ex. 2 at 1 (E.H. and A.M. asserting that they are "prevailing part[ies]" in the "successful prosecution of a special education due process hearing.").

Notably, and as referenced in footnote 1 of Plaintiffs' Complaint, several other putative class members also successfully obtained relief through the administrative process, favorably settling prior to an administrative hearing. *E.g.*, Dkt. 57 at Ex. 4, Ex. 5, Ex. 6. As with the two named Plaintiffs' awards, those settlement agreements reflect unique and individualized relief tailored to each student's needs and entitlements. *Id.*; *see also* Dkt. 56-1 at 4-6 (describing the differences). As Plaintiffs acknowledge, one individual who settled during the administrative process received credits from IDJJ; he went on to receive his high school diploma from IDJJ as a result of the relief obtained. Compl. ¶ n.1.

Exhaustion is not futile simply because each Plaintiff must bring his or her own complaint. Requiring exhaustion allows for the consideration of each individual's needs and thus serves the fundamental purpose of the IDEA to provide "highly individualized" relief to each student.

### E.    Vicarious exhaustion is unavailable to Plaintiffs.

The Court also should reject Plaintiffs' effort to claim vicarious exhaustion due to E.H.'s and A.M.'s participation in the administrative process. *See* Compl. ¶ 21. The vicarious exhaustion theory posits that in some circumstances when one class member has exhausted their

14

administrative remedies, the remaining class members need not do so. *See Flynn v. Doyle*, 2007 WL 805788, at *7 (E.D. Wis. Mar. 14, 2007). Because the claims of E.H. and A.M. must be dismissed as moot, Plaintiffs lack any remaining representative who has properly exhausted to invoke this theory. That alone disqualifies this suit from the "vicarious exhaustion" exception.

But even if Plaintiffs had such a representative, the Court should decline to declare a mass exemption from the critical administrative processes required by IDEA and PLRA. Each person's participation in the IDEA administrative process is a highly individualized proceeding designed to provide relief unique to that person. This is not a case where one size fits all, such that, as a practical matter, one person's exhaustion of administrative remedies resolves the issues presented for everyone else. *See Flynn*, 2007 WL 805788, at * 8. To the contrary, resolution of the issues at the core of each Plaintiff's complaint will depend on each person's particular needs as determined by the administrative officer.

The individualized nature of each Plaintiff's situation is underscored by the two named Plaintiffs who exhausted their administrative remedies. *Compare* Dkt. 1-3 (E.H. Final Determination and Order) *with* Dkt. 1-4 (A.M. Final Determination and Order). Both hearings resulted in determinations by the administrative officer that E.H. and A.M. were entitled to certain services, but the nature of those services differed due to their unique circumstances. Because E.H. was over age 21, the independent hearing officer awarded compensatory education – the only available remedy. Dkt. 1-3 at 23-24. The award specified a number of hours of services to be provided. *Id.* at 30. In contrast, A.M. was awarded several specific curricula by the independent hearing officer after significant factual development about the student's individual needs. Dkt. 1-4 at 23. So, too, for the settlement agreements reached with other putative class members during the administrative hearing process, which each reflect the individual needs and entitlements of the

15

student. *See* Dkt. 57 at Ex. 4, Ex. 5, Ex. 6. Each named Plaintiff and putative class member necessarily will require an individualized determination based on their unique facts and circumstances.

The Seventh Circuit considered a similar case in *Jamie S.*, (although this case presents additional individualized considerations because of the prison context), where the plaintiffs complained of "systemic" IDEA shortcomings and requested a "systemic" remedy. 668 F.3d at 488. The Court emphasized the individualized nature of IDEA determinations in explaining that the IDEA does not lend itself to class-wide relief: "That the plaintiffs have superficially structured their case around a claim for class-wide injunctive and declaratory relief does not satisfy Rule 23(b)(2) if as a substantive matter the relief sought would merely initiate a process through which highly individualized determinations of liability and remedy are made; this kind of relief would be class-wide in name only, and it would certainly not be final." *Id*. at 499. The Court concluded that plaintiffs did not "come close to satisfying Rule 23(b)(2)'s standard." *Id.* The Seventh Circuit left to the district court whether its initial decision to excuse exhaustion remained correct, as the district "court's reasons for excusing administrative exhaustion appear to have been tied to the class allegations, and it's not clear whether the court would have excused exhaustion for any of the individual claims." *Id.* at 499-500. The district court proceeded to hold that the case required judgment in defendants' favor, as none of the individual plaintiffs had exhausted their administrative remedies. *Jamie S v. Milwaukee Bd. of Sch. Dirs.*, 2012 U.S. Dist. LEXIS 117672, *12 (E.D. Wis. Aug. 20, 2012).

Courts have declined to invoke vicarious exhaustion where – like here and like in *Jamie S.* – the underlying claims were "not sufficiently similar, but substantively varied and individualized." *Breen v. Chao*, 2018 U.S. Dist. LEXIS 50209, *21 (D.D.C. Mar. 27, 2018) (citing

16

cases).  In addition, courts have not universally adopted the vicarious exhaustion doctrine even where (unlike here) that doctrine's requirements *were* satisfied. *Compare Lacy v. Dart*, 2015 WL 1995576 (N.D. Ill. Sept. 29, 2015), *with Nash v. Akinbayo*, 2019 WL 4393159 (D. Del. Sept. 13, 2019). And the Seventh Circuit has never applied vicarious exhaustion in either the IDEA or PLRA context. *Wallace v. Baldwin*, 55 F.4th 535, 544 n.8 (7th Cir. 2022) (noting that court has not applied vicarious exhaustion in PLRA context). This Court should not allow Plaintiffs to use vicarious exhaustion as an end-run around the strict limits courts place on the narrow exception to the exhaustion requirement for the same reasons the futility exception should be narrowly drawn and does not apply here. Congress intended the IDEA to have "singular focus" on each individual; accordingly, it is not suited to "broad-based actions." *H.P.*, 385 F. Supp. 3d at 635. Extending the vicarious exhaustion doctrine to this case would be irreconcilable with that purpose.

## F.     Plaintiffs' claims are barred by the PLRA for failure to exhaust.

The PLRA also imposes its own exhaustion requirement. 42 U.S.C. § 1997e(a). Defendants present this argument briefly so as not to repeat the detailed exhaustion arguments above.  But the argument is no less significant or dispositive: the PLRA plainly states that "No action shall be brought with respect to prison conditions … unless such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The purpose is to "afford[ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case," *Porter v. Nussle*, 534 U.S. 516, 525 (2002) – a purpose illustrated by Defendants' actions here. *See* 8/25/25 Hr'g Tr. at 4 (observing that the "landscape … has changed so fundamentally"). Courts lack discretion to hear a case subject to the PLRA (as this one indisputably is) that has not met this statutory requirement.

17

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Ross v. Blake*, 578 U.S. 632, 639 (2016) ("[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."). Because Plaintiffs had available administrative options that they declined to use, their claims may not be heard in this forum. As the Supreme Court and Seventh Circuit have repeatedly emphasized, "federal courts lack discretion to consider a claim that has not traveled the required administrative path." *E.g.*, *Bowers v. Dart*, 1 F.4th 513, 518 (7th Cir. 2021) (citing *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) ("[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.").

## III.  **Plaintiffs cannot enforce state law against state agencies in federal court**.

This IDEA lawsuit is fundamentally different from others in a critical respect: it is brought against a sovereign State (because it is brought against state agencies). For that reason, it is important to distinguish whether the legal basis for Plaintiff's claims and requested relief is federal law or state law. "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Doing so "conflicts directly with the principles of federalism." *Id.* Accordingly, federal courts cannot enter any relief, "whether prospective or retroactive," against state officials for claimed violations of state law. *Id.* A significant portion of Plaintiff's Complaint therefore "runs headlong into the rule that federal courts cannot grant relief against state officials based on a conclusion that they have violated state law." *Svendsen v. Pritzker*, 91 F.4th 876, 877 (7th Cir. 2024).

Plaintiffs seek to flout this fundamental principle and ask that a federal court begin an indefinite period of supervision over State agencies regarding how they conform their conduct to state law. Plaintiffs purport to bring certain claims directly under the Illinois School Code, 105 ILCS 5/13-40, 105 ILCS 5/14-102, (Compl. ¶¶ 150-157). In addition, Plaintiffs rely overwhelmingly in their Complaint on State – not federal – law, repeatedly citing Illinois statutes and the Illinois administrative code rather than federal law requirements as the legal underpinning of their claims. But the Court may not superintend the State's compliance with State law (with which Defendants are substantially compliant in any event).

Federal law is deferential to State law and practice when it comes to FAPE for children ages 3-5 and 18-21. The IDEA limits the obligation to provide FAPE for these ages "to the extent that its application to those children would be inconsistent with State law or practice." 20 U.S.C. § 1412(a)(1)(B)(i); *see also* 34 CFR § 300.102 (exception to FAPE for certain ages). It likewise limits the obligation to provide FAPE for individuals incarcerated in an adult correctional facility. 20 U.S.C. § 1412(a)(1)(B)(ii). As a result, courts have held that "the IDEA does not require the State to provide special education services to persons over age 18 who are incarcerated in adult prisons." *Tunstall v. Bergeson*, 141 Wn.2d 201, 228 (Wash. S.Ct. 2000), *cert. denied*, 532 U.S. 920 (2001); *see also MP v. Fla. Dep't of Corr.,* No. 4:06-cv-52, 2008 U.S. Dist. LEXIS 75830, *4 (N.D. Fla. Sept. 30, 2008) (holding that "the adult education program provided to [plaintiff] was not contrary to the standards of free and appropriate public education offered by the Florida Department of Corrections under the IDEA, 20 U.S.C. § 1401(9); and it was consistent with state law and practice").

The PLRA, for its part, also requires exclusive focus on Federal – not state – rights, and is similarly deferential to state law. 18 U.S.C. § 3626(a)(1)(A)-(B). And it limits any prospective

19

relief to only what is "necessary to correct the violation of a Federal right," further dictating that "[t]he court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id.* The court must give "substantial weight" to any adverse impact on the "operation of a criminal justice system." *Id.*

State law contains several provisions relating to the educational offerings for individuals incarcerated in adult facilities. *E.g.*, 105 ILCS 5/13-40; Ill. Admin. Code tit. 20, § 405. While Plaintiffs focus on "high school credit-bearing courses" throughout their Complaint, State law is not prescriptive. State statute provides that the Department of Juvenile Justice "may establish primary, secondary, vocational, adult, special and advanced educational schools." 105 ILCS 5/13-40 (emphasis added). It further provides that programming, including educational services, 730 ILCS 5/3-9-1(a)(5), is "subject to appropriation and with the cooperation of other State agencies." 730 ILCS 5/3-9-1(a). State law also distinguishes between institutions and facilities housing persons of compulsory school attendance age versus non-compulsory attendance age. (A child is no longer of compulsory school attendance age when they turn 17. 105 ILCS 5/26-1.) Among other differences, for persons of compulsory age, state law requires state agencies to "establish an educational program," whereas for persons not of compulsory age state law requires state agencies to "make available programs and training." *See* 730 ILCS 5/3-9-1(b)-(c) ("Educational Programs"); *see also Christopher v. United States*, 148 F.4th 885, 895 (7th Cir. 2025) (where particular language is included in one section of a statute but not another, a court must presume that the legislature intended a difference in meaning).

20

Along the same lines, State administrative code provides for "High school credits" as a component of "Juvenile Division educational programs," but not "Adult Division educational programs." *Id.* § 405.20 (Adult and Juvenile Educational Programs). A principal offering in the adult division is Adult Basic Education, *id.*, which is offered to some incarcerated individuals and is mandated for others. *Id.* § 405.50. Another related offering is education toward achieving a State of Illinois High School Diploma – which replaced the GED and was renamed in 2022 to signify equivalence and equal value to a high school degree. *See* P.A. 102-1100; Ill. Admin. Code tit. 20, § 405.50. State law sets out eligibility criteria for enrollment, Ill. Admin. Code tit. 20, § 405.50(c), and reasons why an individual may be removed from educational programming, *id.* § 405.50(h). It provides that all such educational programming may be suspended due to "safety and security, budgetary constraints, insufficient program resources, inadequate space or unavailability of educational staff," among other reasons. Ill. Admin. Code tit. 20, § 405.70.

Plaintiffs plead that educational programs like Adult Basic Education are offered to incarcerated adults as part of State law and practice, Compl. ¶¶ 132-35. (And indeed, virtually all the named Plaintiffs have in fact received educational services through the adult basic education program; one has earned a State of Illinois High School Diploma as a result.) The Defendants are substantially in compliance with State law and State practice regarding 18-to-21 year olds in IDOC custody. But to the extent they are not, a federal court is not the forum to adjudicate state agencies' compliance with state law.

## IV. Plaintiffs' outdated and inaccurate factual allegations do not show a plausible right to relief.

To survive a motion to dismiss for failure to state a claim, Fed. R. Civ. P. 12(b)(6), the complaint must include sufficient factual allegations to show a plausible right to relief. *See Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  And allegations are required to have factual support, or likely factual support.  Fed. R. Civ. P. 11.  Because of the factual developments that have occurred since Plaintiffs filed their original Complaint in August 2024 (15 months ago, as of the date of this filing), the allegations do not show a plausible right to relief.  Several examples illustrate the point.

First, Plaintiffs allege repeatedly that "Defendants have failed to establish *any* policies or practices."  *E.g.*, Compl. ¶ 8 (emphasis in original).  But Plaintiffs now acknowledge that these policies exist and provide the "framework" they argued was missing, and that the Parties have reached an agreement on all issues but one (whether a five-hour school day is required) with respect to the contents of these Administrative Directives.  *See* Dkt. 131 at 5 ("[T]he parties have largely reached an agreement on the substance of the amendments to Defendants' Administrative Directives."); *see also* 8/25/25 Hr'g Tr. at 8.  This makes Plaintiffs' allegations entirely contrary to the facts they have since acknowledged.

Second, Plaintiffs' overall Complaint is premised on the lack of any high school credit-bearing education at IDOC.  But that is no longer an allegation that has evidentiary support.  More than 165 incarcerated individuals at 6 IDOC facilities (soon to be 8) now are taking high-school credit-bearing courses.  As of the filing of this Memorandum, those individuals have completed 260 total courses for which they received high school credit.

Third, and relatedly, the facts have changed materially for individual Plaintiffs.  The Complaint alleges that Plaintiff Jeremiah Brown "has not received any special education, related services, or high school credit-bearing courses since his incarceration at IDOC."  Compl. ¶ 28.  But in fact, he completed sufficient coursework at IDOC to earn his high school diploma through IDJJ School District #428.  Likewise, the Complaint alleges that Plaintiff Antwan Tompkin was

22

not "eligible to enroll in GED or pre-GED classes" at IDOC, Compl. ¶ 33, but he has obtained his State of Illinois High School Diploma (formerly GED) because of the educational programing he was provided at IDOC.

As this Court previously observed, since this case was filed the landscape "has changed so fundamentally." 8/25/25 Hr'g Tr. at 4. The Complaint no longer describes "where we are now and what's in play now," *id.*, and as a result does not accurately or sufficiently provide the plausible "grounds" for any entitlement to relief. *Twombly*, 550 U.S. at 555.

## V. Age and time-related limitations and bars significantly narrow Plaintiffs' claims.

The application of age and time-related limitations and bars also significantly narrow Plaintiffs' claims, and introduce yet another individual consideration that cannot be resolved on a class wide basis, and which should be considered by the administrative hearing officer in the first instance.

First, several Plaintiffs are well past the age of eligibility for any IDEA services. For students who have turned 21, their IDEA "entitlements" have expired. *Bd. of Educ. of Oak Park & River Forest Dist.*, 79 F.3d at 659 ("[E]xcept for the judge-created remedial exception for claims for compensatory education, the entitlements created by the Individuals with Disabilities Education Act expire when the disabled individual turns 21."). Their only possible entitlement is to compensatory education. By the time this motion is fully briefed, only one named Plaintiff will have any current entitlements under IDEA. (He is enrolled in high school credit-bearing classes.)

Second, many of the Plaintiffs' claims are barred by the statute of limitations in 20 U.S.C. § 1415. Section 1415 sets forth a two-year limitations period for complaints alleging a violation of the IDEA. Several Plaintiffs, however, failed to satisfy the statute of limitations because they filed their claims more than two years after they entered IDOC custody, the point when they knew

23

or should have known any violation occurred. Compl. ¶¶ 23-25, 29, 31-38, 42-43. They argue in conclusory fashion that they did not understand their rights such that the limitations period should be tolled. But that argument introduces one more inherently individualized inquiry not subject to resolution on a class-wide basis.

## VI.     Plaintiffs failed to allege a claim against IDOC.

According to Plaintiffs' allegations, it is IDJJ that is responsible for providing a FAPE to the Plaintiffs. Compl. ¶ 45. Plaintiffs' Complaint does not identify any basis under which IDOC is an appropriate Defendant in this lawsuit – the fact that it is a "political subdivision" does not provide any basis for liability under the IDEA. *E.g.*, Compl. ¶¶ 44, 62.

## VII.    Plaintiffs failed to allege a claim against ISBE.

In addition to the foregoing reasons for dismissal applicable to the claims against all Defendants, Plaintiffs' claims against ISBE also fail because the few allegations in the Complaint pertaining to ISBE are only threadbare, conclusory statements that are not sufficient to state a claim. "'[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim. *Freeman v. Ocwen Loan Servicing, LLC*, 113 F.4th 701, 706 (7th Cir. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Here, Plaintiffs assert that ISBE "is also complicit in this systemic failure, neglecting its obligations to provide guidance regarding, to administer funding for, and to monitor and ensure the provision of special education and related services in compliance with applicable federal and state law." Compl. ¶ 11. According to Plaintiffs, "ISBE has failed to ensure that adult students in IDOC custody are being provided a FAPE by their LEA." *Id.* ¶ 91. Plaintiffs, however, include no factual allegations regarding what ISBE allegedly did or failed to do to fulfill its obligations under the law.

24

As SEA, ISBE is charged with the "supervision of public elementary schools and secondary schools" and is "responsible for general supervision" of compliance with the statute. 20 U.S.C. §§ 1401(32), 1412(a)(11); *see also* 20 Ill. Admin. Code § 226.760(a) ("The extent to which a school district is fulfilling its responsibilities to children with disabilities shall be determined by the State Board of Education."). ISBE is required to ensure that (1) the requirements of the IDEA are satisfied in the State and (2) the "educational programs for children with disabilities in the State" are "under the general supervision" of individuals responsible for programs and "meet the educational standards" ISBE sets. 20 U.S.C. § 1412(a)(11)(A).

The Illinois School Code states that ISBE "shall make rules under which local boards shall determine the eligibility of children to receive special education." 105 ILCS 5/14-8.02(a). The School Code requires the State Superintendent "to develop uniform notices setting forth procedures" to be used by all school boards. 105 ILCS 5/14-6.01. ISBE has promulgated regulations setting forth the procedures school districts are to use in "seeking out and identifying" children within the district "who may be eligible for special education and related services." 23 Ill Admin. Code § 226.100(a). ISBE has issued regulations that LEAs must follow to provide notice to individuals of their rights to be evaluated for special education services and to conduct such evaluations. 23 Ill. Admin. Code § 226.110. The ISBE's regulations also provide rules that LEAs must follow in creating IEPs. 23 Ill. Admin. Code § 226.200-260. Additionally, ISBE has issued regulations LEAs must follow to implement the procedural safeguards required under the IDEA. 23 Ill. Admin. Code § 226.500-570. Further, ISBE has complied with its obligations to provide an administrative process to conduct due process hearings. 23 Ill. Admin. Code § 226.600-690.

ISBE's regulatory enactments thus (1) provide guidance and rules that LEAs must follow in identifying eligible students, notifying students of their rights, and providing special education

25

and related services and (2) set forth the due process hearing procedure. Additionally, as Plaintiffs allege, E.H. and A.M. obtained relief through the administrative hearing process overseen by ISBE. Compl. ¶ 20 & Exs. 3-4. In light of ISBE's regulations and oversight of the administrative process through which eligible students can vindicate their rights to special education and related services, Plaintiffs' conclusory allegations (at ¶ 11) that ISBE "neglect[ed] its obligations to provide guidance regarding, to administer funding for, and to monitor and ensure the provision of special education and related services in compliance with applicable federal and state law" or (at ¶ 91) "failed to ensure that adult students in IDOC custody are being provided a FAPE by their LEA" cannot state a claim. *See Brockett v. Effingham Cnty., Ill.*, 116 F.4th 680, 685 (7th Cir. 2024) ("Allegations that state legal conclusions' or '[t]hreadbare recitals of the elements of a cause of action' are not entitled to the assumption of truth." (quoting *Iqbal*, 556 U.S. at 678)).

## VIII. Plaintiffs' putative class allegations should be stricken.

Although Plaintiffs' claims should be dismissed altogether, Plaintiffs' class claims additionally cannot withstand scrutiny and should be stricken. If the plaintiff's class allegations are facially and inherently deficient "a motion to strike class allegations … can be an appropriate device to determine whether [the] case will proceed as a class action." *Brunner v. Liautaud*, No. 14-5509, 2015 U.S. Dist. LEXIS 46018, *18-19 (N.D. Ill. April 8, 2015) (citing cases). Plaintiffs' defective class allegations fail even at the pleading stage. And the individualized nature of a given student's needs and entitlements further counsel toward allowing the administrative hearing to carefully assess these individualized factors in the first instance.

The authoritative case in the Seventh Circuit regarding class treatment for IDEA claims, *Jamie S.*, is instructive on the critical issues in this case, and counsels fully in Defendants' favor. As the Seventh Circuit put it, the case involved "issues regarding the suitability of IDEA claims

for class certification, the kind and degree of evidence necessary to find a local school district in systemic violation of the IDEA, and the propriety of a federal-court takeover of a school district's special-education program as a remedy for individual IDEA violations." 668 F.3d at 490.

With respect to the propriety of class certification, the Court held that – as with *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2552 (2011) – "resolving any individual class member's claim for relief under the IDEA requires an <u>inherently</u> particularized inquiry into the circumstances of the child's case." *Jamie S.*, 668 F.3d at 498 (emphasis added). As in *Wal-Mart* and in *Jamie S.*, the only type of "systemic" failure that might warrant class treatment would be "significant proof" of illegal policies. *Id.* at 498. And as in *Wal-Mart* and *Jamie S.*, "proof of an illegal policy is entirely absent here." *Id.* (cleaned up). Indeed, Plaintiffs have conceded that Defendants' policies are generally agreed. *See* Dkt. 131 at 5 ("[T]he parties have largely reached an agreement on the substance of the amendments to Defendants' Administrative Directives."); *see also* 8/25/25 Hr'g Tr. at 8.

Likewise, the Seventh Circuit held "that the district court also erred when it certified an injunction class," citing the exact same defects that are facially apparent in this case. *Id.* at 499. As the Court emphasized, "[t]he injunctive or declaratory relief sought must be 'final' to 'the class as a whole.'" *Id.* (cleaned up). It explained, "That the plaintiffs have superficially structured their case around a claim for class-wide injunctive and declaratory relief does not satisfy Rule 23(b)(2) if as a substantive matter the relief sought would merely initiate a process through which highly individualized determinations of liability and remedy are made; this kind of relief would be class-wide in name only, and it would certainly not be final." *Id.* The "intricate remedial scheme" that did "not come close to satisfying Rule 23(b)(2)'s standard" is exactly what the Plaintiffs here are

27

seeking: "thousands of individual determinations of class membership, liability, and appropriate remedies." *Id.* at 499.

So too here. As described throughout this brief, there are countless inquiries that must be made in order to determine what is required for an individual student's FAPE in light of their unique circumstances; there are even more inquiries needed in a correctional environment. There is no single injunction (and certainly Plaintiffs have not proposed one) that would provide <u>final</u> relief to any class member. "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted–the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360. As in *Wal-Mart* and *Jamie S.*, "It is no answer to say that the [proposed order] affects the entire class; that order merely establishes a system for eventually providing individualized relief. It does not, on its own, provide 'final' relief to any class member." *Id.* That is the case here: some plaintiffs did not need any injunction at all to obtain relief; and others have individualized educational needs and entitlements that would not be remedied by a class-wide injunction. Class certification under Rule 23(b)(2) – the device Plaintiffs seek to invoke – is squarely foreclosed in these circumstances by Supreme Court and Seventh Circuit precedent.

The Seventh Circuit in *Jamie S.* concluded its analysis relating to class certification by turning back to the claims of the individual plaintiffs, noting two points applicable here. *First*, because "the court's reasons for excusing administrative exhaustion appear to have been tied to the class allegations, … it's not clear whether the court would have excused exhaustion for any of the individual claims." *Id.* at 499-500. (The district court proceeded to hold that the case required judgment in defendants' favor, as none of the individual plaintiffs had exhausted their administrative remedies. *Jamie S v. Milwaukee Bd. of Sch. Dirs.*, 2012 U.S. Dist. LEXIS 117672,

28

*12 (E.D. Wis. Aug. 20, 2012). That was after eleven years of litigation.) *Second*, the Court noted that "it's possible—perhaps likely—that some of the named plaintiffs' individual factual circumstances have changed such that their claims are now moot." *Jamie S.*, 668 F.3d at 500.

Those two considerations demonstrate the vast superiority of the administrative process to this federal forum. As evidenced in the vastly different relief sought and afforded in the various due process hearings, students' needs and entitlements vary widely. *Supra* at 15-16. And individual circumstances have changed: One named Plaintiff has received his high school diploma; another has received his State of Illinois High School Diploma; six are no longer in IDOC custody. By the time this motion is fully briefed, all but one named Plaintiff will have turned 21 (he is currently enrolled in classes), such that their active IDEA entitlements will have expired, other than potential entitlement to compensatory education. *Bd. of Educ. of Oak Park & River Forest Dist.*, 79 F.3d at 659. As reasoned by *Jamie S.*, any compensatory education award would need to be individualized in a way that is incompatible with class treatment. 668 F.3d at 491.

In addition to the reasons described throughout this brief why this case both must and should yield to the administrative process, the inherently individualized nature of the plaintiffs' needs and entitlements also counsels towards utilizing the administrative process in the first instance, and away from any class-wide relief in a federal court. Because Plaintiffs' class allegations are "facially and inherently deficient," they should be stricken.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint and strike Plaintiffs' class allegations.

3465036.2

Dated: November 20, 2025

Respectfully submitted,

**Illinois Department of Juvenile Justice, Illinois Department of Corrections, and Illinois State Board of Education**, Defendants.

By: */s/ Nicki B. Bazer* (ARDC No. 6277099)
        One of Their Attorneys

Nicki B. Bazer (nbb@franczek.com)
Michael A. Warner, Jr. (maw@franczek.com)
John E. Swinney (js@franczek.com)
Special Assistant Attorneys General
Franczek P.C.
300 S. Wacker. St., Suite 3400
Chicago, IL 60606
(312) 986-0300

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned attorney hereby certifies that she caused a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS** to be filed with the Clerk of the Court using the CM/ECF Filing System which will electronically serve copies upon all counsel of record on this 20th day of November, 2025.

*/s/ Nicki B. Bazer*

3465036.2