**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| EXODUS HEBERT, ANTONIO MONROE, DAMEN GONZALEZ, DELEON MOFFETT, GEORGE GARCIA, JEREMIAH BROWN, ISAIHA HERRING, THAILAN HOPKINS, SHIRICE HENDRIX, DARRION LONGSTREET, ANTWON TOMPKIN, IVAN JOHNSON, KEYSHAWN NICHOLS, JESSE GARZA, NYREE DUGANS, ANTJUAN DAVIS, AMARU EVANS, ROBERT "RAVEN" MELTON, QURAN BROOMFIELD, DASHEEM PICKENS, and DELCHEVA HARRIS, on behalf of themselves and all others similarly situated, | Case No.  1:24-cv-07950-SLE District Judge Sara L. Ellis Magistrate Judge Beth W. Jantz |
| Plaintiffs, | |
| v. | |
| ILLINOIS DEPARTMENT OF CORRECTIONS, ILLINOIS DEPARTMENT OF JUVENILE JUSTICE and ILLINOIS STATE BOARD OF EDUCATION, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................2

I.    DEFENDANTS ARE LEGALLY OBLIGATED TO PROVIDE STUDENTS WITH DISABILITIES A FREE AND APPROPRIATE PUBLIC EDUCATION............2

II.   DEFENDANTS ARE STILL FAILING TO PROVIDE A FAPE .......................................6

    A.    Based on Information Provided by Plaintiffs and Their Experiences, Defendants Are Not Providing Legally-Required Notice of Available Procedural Safeguards to Students With Disabilities in IDOC's Custody. ............8

    B.    Defendants' Current and Projected High School Diploma Programs Cannot Educate All Students With Disabilities. .....................................................9

    C.    Based on Information Provided by Plaintiffs and Their Experiences, Defendants Are Not Holding IEP Meetings, Conducting Evaluations, Re-evaluations, Behavioral Assessments, or Developing or Revising  IEPs. .............11

    D.    Based on Information Provided by Plaintiffs and Their Experiences, Students Enrolled in the High School Diploma Program Are Not Receiving Special Education and Related Services...............................................11

    E.    ISBE Has Failed its Supervisory Duties as the SEA to Ensure the Provision of a FAPE by IDJJ and IDOC. .............................................................13

III.   IDOC'S ADULT EDUCATION AND VOCATIONAL SERVICES FAIL TO MAKE REASONABLE ACCOMMODATIONS FOR STUDENTS WITH DISABILITIES ..................................................................................................................13

IV.   DEFENDANTS' FAILURES HARM NAMED PLAINTIFFS AND THE PLAINTIFF CLASS. ......................................................................................................15

V.   ADMINISTRATIVE DUE PROCESS COMPLAINTS DID NOT AND CANNOT ACHIEVE SYSTEMIC CHANGE....................................................................16

    A.    Exodus Hebert's Due Process Proceedings .........................................................16

    B.    Antonio Monroe's Due Process Proceedings ......................................................17

LEGAL STANDARD.................................................................................................18

ARGUMENT ..........................................................................................................18

I.      DEFENDANTS' ADOPTION OF ADMINISTRATIVE DIRECTIVES DO NOT MOOT THE NEED FOR A PRELIMINARY INJUNCTION..........................................18

II.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ...................................20

      A.     Defendants Are Systemically Violating Plaintiffs' Right to a FAPE Under the IDEA and Illinois Law.....................................................................21

            1.     Defendants Have Violated the Procedural Requirements of the IDEA, Thereby Depriving Special Education Eligible Students of a FAPE...............................................................................................22

            2.     Defendants' Failure to Provide Special Education Eligible Students with Any Special Education and Related Services Substantively Violates the IDEA.........................................................................24

      B.     Defendants' Actions Systematically Discriminate Against Students with Disabilities in Violation of the ADA and the Rehabilitation Act. .........................26

      C.     Plaintiffs Have Standing. .......................................................................30

III.    PLAINTIFFS WILL SUFFER IRREPARABLE INJURY IF A PRELIMINARY INJUNCTION IS NOT GRANTED ................................................................................31

IV.    THE BALANCE OF HARMS WEIGHS IN PLAINTIFFS' FAVOR.............................33

V.     THE PUBLIC INTEREST WOULD BE SERVED BY A PRELIMINARY INJUNCTION.........................................................................................................34

CONCLUSION.......................................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alexander v. Choate*,
    469 U.S. 287 (1985).........................................................................................28

*Andrew M. v. Del. Cnty. Off. of Mental Health & Mental Retardation*,
    490 F.3d 337 (3d Cir. 2007)...........................................................................28

*Artichoker v. Todd Cnty. Sch. Dist.*,
    2016 WL 7489033 (D.S.D. Dec. 29, 2016) ...................................................23

*Bd. Of Educ. Of the Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. V. Rowley*,
    458 U.S. 176 (1982)..............................................................................21, 22

*Chang v. Cnty of Siskiyou*,
    746 F. Supp. 3d 808 (E.D. Cal. 2024)............................................................19

*Cook Cnty. v. Wolf*,
    962 F.3d 208 (7th Cir. 2020) ..........................................................................18

*Ctr., Inc. v. Sch. City of Mishawaka*,
    13 F.3d 1052 (7th Cir. 1994) ..........................................................................22

*D.L. v. District of Columbia*,
    194 F. Supp. 3d 30 (D.D.C. 2016) .................................................................23

*Donnell C. v. Ill. State Bd. Of Educ.*,
    829 F. Supp. 1016 (N.D. Ill. 1993) ................................................................21

*Easter v. D.C.*,
    128 F. Supp. 3d 173 (D.D.C. 2015) ...............................................................20

*Edward M.-R. v. Dist. of Columbia*,
    660 F. Supp. 3d 82 (D.D.C. 2023) .................................................................25

*Fed. Bureau of Investigation v. Fikre*,
    601 U.S. 234 (2024).........................................................................................19

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
    528 U.S. 167 (2000)..............................................................................19, 30

*Haskins v. Stanton*,
    794 F.2d 1273 (7th Cir. 1986) ........................................................................34

*Hirsch v. Will Cnty., Illinois,*
    2021 WL 1531602 (N.D. Ill. Apr. 19, 2021) ........................................................30

*J.S. ex rel. N.S. v. Attica Cent. Schs.,*
    386 F.3d 107 (2d Cir. 2004)..................................................................................7, 25

*Jaros v. Ill. Dep't of Corrs.,*
    684 F.3d 667 (7th Cir. 2012) ..................................................................................27

*Kahn v. Cleveland Clinic Fla. Hosp.,*
    2019 WL 3290542 (S.D. Fla. July 22, 2019).........................................................20

*Kevin T. v. Elmhurst Cmty. Sch. Dist. No. 205,*
    2002 WL 433061 (N.D. Ill. Mar. 20, 2002)...........................................................22

*Knable ex rel. Knable v. Bexley City Sch. Dist.,*
    238 F.3d 755 (6th Cir. 2001) ..................................................................................23

*Lacy v. Cook Cnty.,*
    897 F.3d 847 (7th Cir. 2018) ..................................................................................27

*Love v. Westville Corr. Ctr.,*
    103 F.3d 558 (7th Cir. 1996) ..................................................................................30

*Massey v. D.C.,*
    400 F. Supp. 2d 66 (D.D.C. 2005) ..............................................................32, 33, 34

*Middleton v. D.C.,*
    312 F. Supp. 3d 113 (D.D.C. 2018)........................................................................22

*Nat'l Inst. of Fam. & Life Advocates v. Raoul,*
    685 F. Supp. 3d 688 (N.D. Ill. 2023) .....................................................................18

*Nein v. Greater Clark Cnty. Sch. Corp.,*
    95 F. Supp. 2d 961 (S.D. Ind. 2000) ......................................................................25

*Pierce v. Dist. of Columbia,*
    128 F. Supp. 3d 250 (D.D.C. 2015)..................................................................28, 29

*Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dept. Health,*
    699 F.3d 962 (7th Cir. 2012) ............................................................................33, 34

*Public Interest Law Initiative v. Public Interest Law Institute,*
    2011 WL 13555749 (N.D. Ill. Mar. 10, 2011)........................................................19

*R.F. v. Bd. of Educ.,*
    2022 WL 1805099 (N.D. Ill. June 2, 2022) ..............................................32, 33, 34

*Silk v. City of Chicago*,
    194 F.3d 788 (7th Cir. 1999) ........................................................................27

*Skelly v. Brookfield LaGrange Park Sch. Dist. 95*,
    968 F. Supp. 385 (N.D. Ill. 1997) ...............................................................32

*Smith v. Henderson*,
    944 F. Supp. 2d 89 (D.D.C. 2013) ...............................................................24

*Tindell v. Evansville-Vanderburgh Sch. Corp.*,
    2010 WL 557058 (S.D. Ind. Feb. 10, 2010) ................................................32

*United Air Lines, Inc. v. Air Line Pilots Ass'n., Int'l*,
    2008 WL 4936847 (N.D. Ill. Nov. 17, 2008), *aff'd* 563 F.3d 257 (7th Cir.
    2009) ...............................................................................................................33

*United States v. NCR Corp.*,
    688 F.3d 833 (7th Cir. 2012) ........................................................................18

*USA-Halal Chamber of Com., Inc. v. Best Choice Meats, Inc.*,
    402 F. Supp. 3d 427 (N.D. Ill. 2019) ...........................................................18

*Vincent v. Kenosha Unified Sch. Dist.*,
    2012 WL 4470515 (E.D. Wis. Sept. 26, 2012) ............................................24

*Wade v. Dist. of Columbia*,
    322 F. Supp. 3d 123 (D.D.C. 2018) (holding that the student was denied a
    FAPE when the District of Columbia Public Schools failed to provide "more
    than one-fourth of the specialized instruction hours prescribed by [the
    student's] IEP") ..............................................................................................25

*Washington v. Ind. High Sch. Athletic Ass'n, Inc.*,
    181 F.3d 840 (7th Cir. 1999) ........................................................................29

*Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. Of Educ.*,
    858 F.3d 1034 (7th Cir. 2017) ......................................................................31

*Wisc. Cmty. Servs., Inc. v. City of Milwaukee*,
    465 F.3d 737 (7th Cir. 2006) ........................................................................29

## STATUTES

105 ILCS 5/13-40 ....................................................................................................4

105 ILCS 5/14-6.10 .................................................................................................5

20 U.S.C.

§ 1400(d)(1)(A) ........................................................................................................2, 21
§ 1401(9) ...........................................................................................................................3
§ 1401(26)(A) ..............................................................................................................3, 26
§ 1401(29) .........................................................................................................................3
§ 1401(32) .........................................................................................................................4
§ 1412(a)(1)(A) .................................................................................................................3
§ 1412(a)(11) .....................................................................................................................4
§ 1412(a)(11)(A) .............................................................................................................13
§ 1413(g)(1)(B) ...............................................................................................................13
§ 1414(a)-(c) ......................................................................................................................5
§ 1414(d)(1)(A)(i)(IV) ....................................................................................................25
§ 1414(d)(2)(A) .................................................................................................................5
§ 1414(d)(2)(C)(ii) ............................................................................................................4
§ 1414(d)(4)(A)(i) .............................................................................................................5
§ 1414(d)(4)(A)(ii) ............................................................................................................5
§ 1415(b)(3) .......................................................................................................................5
§ 1415(d) ..........................................................................................................................23
§ 1415(d)(1)(A) .................................................................................................................5
§ 1415(d)(2) .......................................................................................................................5
§ 1415(f)(3)(E)(ii) ...........................................................................................................22
§ 1415(k)(1)(F)(i) ..............................................................................................................5
§ 1415(m) ...........................................................................................................................5

29 U.S.C.

§ 749 ................................................................................................................................27
§ 794(a) ............................................................................................................................26
§ 794(b)(2)(B) ..................................................................................................................26

42 U.S.C.

§ 12101(b)(1) ...................................................................................................................27
§ 12102(1)(A) ..................................................................................................................27
§ 12131(2) ........................................................................................................................28
§ 12132 .......................................................................................................................26, 27

ADA .............................................................................................................................. passim

Freedom of Information Act ...................................................................................6, 9

Individuals with Disabilities Education Act .................................................... passim

Rehabilitation Act .................................................................................................... passim

## REGULATIONS

28 C.F.R.

§ 35.130(b)(7) ..................................................................................................................27
§ 35.152(a) .......................................................................................................................27

34 C.F.R.
§ 104.33(a) ................................................................................................26
§ 300.2(b)(1) .............................................................................................3
§ 300.2(b)(1)(iv) ........................................................................................4
§ 300.34 ....................................................................................................26
§ 300.34(a) ................................................................................................3
§ 300.101(a) ..............................................................................................3
§ 300.102(a)(2)(i) ......................................................................................3
§ 300.116(a)-(b) ........................................................................................6
§ 300.149 ..................................................................................................13
(34 C.F.R. § 300.323(c)(2)) ......................................................................5

§ 300.503(a) ..............................................................................................5
§ 300.504(a) ..............................................................................................5
§ 300.504(c) ..............................................................................................5
§ 300.513(a)(2) .........................................................................................22
§ 300.600 ..................................................................................................13

23 Ill. Adm. Code § 226.50(c)(4) ...................................................................3

23 Ill. Admin. Code
§ 226.50(a)(2) ...........................................................................................4
§ 226.50(a)(2)(B) ......................................................................................5
§ 226.50(d) ...............................................................................................3
§ 226.230 ..................................................................................................13

## **INTRODUCTION**

For nearly two decades, Defendants ignored their responsibilities under the Individuals with Disabilities Education Act ("IDEA") and other federal laws by failing to: (i) identify special education eligible students in the custody of the Illinois Department of Corrections ("IDOC"); (ii) notify such students of their rights under the IDEA;  (iii) have any special education services and high school credit-bearing courses; and (iv) provide eligible students with any special education services and high school credit-bearing courses.  Following a Preliminary Injunction hearing in March 2025, in collaboration with Plaintiffs' counsel, Defendants took initial steps towards compliance with the IDEA and other laws by updating the Administrative Directives for IDOC and the Illinois Department of Juvenile Justice ("IDJJ," the Local Education Agency, or "LEA") and opening a limited-capacity high school diploma program in six IDOC correctional centers out of twenty-five.

Although Defendants now have written policies aimed at complying with the IDEA, they still are not providing special education and related services to eligible students with disabilities in IDOC custody, including those enrolled in the new high school diploma programs.  Nor have they complied with basic IDEA requirements, including the requirements to: (i) notify eligible students in IDOC's custody of their IDEA rights and available procedural safeguards; (ii) convene Individualized Education Program ("IEP") meetings and initiate or complete evaluations, re-evaluations, and functional behavioral assessments ("FBAs"); and (iii) develop or revise IEPs. Without an IEP, a student has no educational plan that identifies the special education supports and services he or she needs to access his or her education.

Consequently, special education eligible students continue to face significant barriers to achieving the education they need to secure employment and contribute to society upon their release.  The lack of access to special education locks most of these individuals out of the

vocational or post-secondary educational programming at IDOC, resulting in inadequate employment skills upon release to the community and increased likelihood of recidivism. There is no adequate remedy at law for this deprivation, which underscores the urgent need for an injunction compelling Defendants to fulfill their legal obligations. Plaintiffs therefore seek a preliminary injunction requiring Defendants to implement a special education program, under which they must: (i) implement their Administrative Directives to notify special education eligible students of their rights and available procedural safeguards under the IDEA; (ii) implement their Administrative Directives to convene IEP meetings and conduct evaluations, re-evaluations, and behavioral assessments as necessary, and (iii) implement their Administrative Directives to develop or revise IEPs as necessary. Only such swift judicial intervention can safeguard Plaintiffs and class members (the "Plaintiff Class") from the harmful short- and long-term consequences of Defendants' continued failure to provide any special education and related services.[1]

## **BACKGROUND**

### I.  **DEFENDANTS ARE LEGALLY OBLIGATED TO PROVIDE STUDENTS WITH DISABILITIES A FREE AND APPROPRIATE PUBLIC EDUCATION**

The IDEA mandates that ***all*** children with disabilities have access to a "free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A).  Under the IDEA, a "free appropriate public education" ("FAPE") is defined as:

> [S]pecial education and related services that—(A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate . . .

---

[1] On October 15, 2024, the Court conditionally certified the Plaintiff Class for purposes of the preliminary injunction hearing.  *See* Dkt. 33.

secondary school education in the State involved; and (D) are provided in conformity with the individualized education program required[.]

20 U.S.C. § 1401(9). "Special education" is teacher-provided instruction designed to meet the needs of the student. *See* 20 U.S.C. § 1401(29). "Related services" are services that assist the student in accessing the instruction, including social work, speech therapy, nursing, and physical therapy. *See* 20 U.S.C. § 1401(26)(A); 34 C.F.R. § 300.34(a).

The IDEA and its implementing regulations, along with Illinois state law and regulations, extend the state's obligation to provide a FAPE to individuals in the legal custody of IDOC, aged 18 through the end of the school year in which they turn 22.[2] 20 U.S.C. § 1412(a)(1)(A); 34 C.F.R. § 300.101(a); 23 Ill. Adm. Code § 226.50(c)(4); *see also* Dear Colleague Letter, U.S. Department of Education Office of Special Education and Rehabilitative Services (Dec. 5, 2014), attached hereto as Exhibit A, at 1-2 ("Absent a specific exception, all IDEA protections apply to students with disabilities in correctional facilities and their parents … Every agency at any level of government that is involved in the provision of special education and related services to students in correctional facilities must ensure the provision of a FAPE, even if other agencies share that responsibility."); 34 C.F.R. § 300.2(b)(1) (IDEA mandates apply to "all political subdivisions of the State that are involved in the education of children with disabilities.").

In Illinois, the three entities responsible for providing special education and related services to eligible students with disabilities in IDOC's custody are the Illinois State Board of Education ("ISBE," the State Educational Agency or "SEA"), IDJJ, and IDOC. As the SEA, ISBE is the

---

[2] Specifically, Illinois regulations extend the protections of the IDEA to incarcerated students through the end of the school year in which they turn 22 years old. *See* 23 Ill. Adm. Code § 226.50(c)(4). These protections do not apply *only* if a student falls within the Code's limited exception: where the student "were not identified as eligible and did not have IEPs in their educational placements immediately prior to incarceration." 23 Ill. Admin. Code § 226.50(d); *see also* 34 C.F.R. § 300.102(a)(2)(i). By definition, members of the Plaintiff Class do not fall within this exception. Compl. ¶¶ 23-43, 47.

agency "primarily responsible for the State supervision of public elementary schools and secondary schools." 20 U.S.C. § 1401(32). Furthermore, as the SEA, ISBE must ensure that a FAPE is made available to all eligible Illinois students with disabilities and that all programs administered by Illinois agencies meet Illinois educational standards. *See* 20 U.S.C. § 1412(a)(11). IDJJ's District 428 is the LEA for eligible students in IDOC's custody and is responsible for providing a FAPE to eligible students. *See* 105 ILCS 5/13-40. Finally, IDOC is a state-run correctional facility, and a subdivision of the state that is mandated to provide appropriate educational and support services under the IDEA to individuals with disabilities in its custody. 34 C.F.R. § 300.2(b)(1)(iv).

The IDEA places responsibility on the LEA receiving a new student—*i.e.*, IDJJ's District 428, for eligible students entering IDOC—to obtain the student's educational records from previous school districts, including the student's IEP if he or she has one. 20 U.S.C. § 1414(d)(2)(C)(ii) ("[T]he new school in which the child enrolls shall take reasonable steps to promptly obtain the child's records, including the IEP and supporting documents and any other records relating to the provision of special education or related services … from the previous school in which the child was enrolled."). The Illinois Administrative Code adopts this section by reference, providing that the new school district must not leave a special education eligible student in limbo and must provide services while it waits to obtain the student's current IEP or develop a new one. 23 Ill. Admin. Code § 226.50(a)(2) ("If the new school district does not receive a copy of the child's current IEP … the child shall be enrolled and served in the setting that the receiving district believes will meet the child's needs until a copy of the current IEP is obtained or a new IEP is developed by the school district … (A) ***In no case*** shall a child be allowed to remain without [special education] services during this interim.") (emphasis added). The Code mandates that the

4

receiving district "shall request the student's records from the sending district or school by the end of the next business day after the date of enrollment." 23 Ill. Admin. Code § 226.50(a)(2)(B).

Further, IDJJ's District 428, as the LEA, must provide a notice of procedural safeguards to students with disabilities at least once every school year and at specific trigger points (such as upon request for an evaluation). *See* 20 U.S.C. § 1415(d)(1)(A); *see also* 34 C.F.R. § 300.504(a).[3] The procedural safeguards notice must include "a full explanation of all of the procedural safeguards" available to the student, including that the LEA shall provide a written prior notice to the eligible student when it proposes or refuses to initiate "the identification, evaluation, or education placement of the [student], or the provision of a [FAPE] to [the student]." *See* 20 U.S.C. § 1415(d)(2); 34 C.F.R. § 300.504(c); 20 U.S.C. § 1415(b)(3); 34 C.F.R. § 300.503(a).

Finally, IDJJ's District 428 must provide access to a FAPE to all students with disabilities in IDOC's custody, including: (i) having an IEP in effect at the beginning of each school year to meet the special education needs of these students (20 U.S.C. § 1414(d)(2)(A)); (ii) conducting evaluations and re-evaluations in accordance with certain procedural requirements, and conducting a functional behavioral assessment where needed (20 U.S.C. § 1414(a)-(c); 20 U.S.C. § 1415(k)(1)(F)(i)); (iii) reviewing the IEPs at least annually to determine whether the goals for the student are being achieved (20 U.S.C. § 1414(d)(4)(A)(i)); and (iv) revising the IEPs as appropriate (20 U.S.C. § 1414(d)(4)(A)(ii)). In addition, District 428 must implement an IEP as soon as possible (34 C.F.R. § 300.323(c)(2)) and must propose an appropriate placement for the student

---

[3] While the IDEA and its implementing regulations require that notification of procedural safeguards be provided to the parents of a child with a disability (*see* 20 U.S.C. § 1415(d)(1)(A); *see also* 34 C.F.R. § 300.504(a)), Illinois state law, in accordance with federal law, transfers parents' rights under the IDEA to students with disabilities once they reach eighteen. *See* 105 ILCS 5/14-6.10; 20 U.S.C. § 1415(m).

that can provide the special education and related services required under the IEP.  34 C.F.R. § 300.116(a)-(b).

In sum, each Defendant owes legal duties to Plaintiffs and the Plaintiff Class.  IDJJ's District 428 is legally responsible for the education of individuals in IDOC's custody who have not yet earned a high school diploma or its equivalent, prior to the expiration of their special education eligibility, including the responsibility for providing special education and related services.  *See* disc. *supra* at 3-6.  IDOC is legally responsible for ensuring that eligible students in its custody receive a FAPE, insofar as it must provide access to its facilities to ensure IDJJ can provide those students with the special education and related services to which they are legally entitled.  *See* disc. *supra* at 3-4.  And ISBE is legally responsible for overseeing and enforcing compliance with the IDEA, including ensuring that eligible students with disabilities receive a FAPE.  *See* disc. *supra* at 3-4.  Because IDOC and IDJJ do not provide special education and related services to eligible students in IDOC's custody, denying them a FAPE, each Defendant has failed to meet its legal obligations.

## II.   DEFENDANTS ARE STILL FAILING TO PROVIDE A FAPE[4]

Named Plaintiffs filed this action in August 2024.  *See* Compl. (Dkt. 1).  Before the filing of this case, IDJJ—as the LEA—had no policies or procedures regarding the identification of special education eligible students in IDOC or the provision of special education and related services to eligible students in IDOC.  Ex. 1 to Mem. Ex. JJ (IDJJ Response to Freedom of

---

[4] Undersigned counsel were able to refresh the declarations for nineteen of the twenty-one Plaintiffs and add one declaration from a putative class member.  For the two Plaintiffs from whom the undersigned counsel were unable to secure a refreshed declaration—Messrs. Garcia and Pickens—their declarations from September 2024 are attached hereto as Exhibits.  As of September 2025 when a Staff Attorney from Equip for Equality last spoke to Mr. Pickens, and as of October 2025 when the same Staff Attorney from Equip for Equality last spoke to Mr. Garcia, their declarations from September 2024 still accurately reflected their experience.  *See* Ex. KK (Declaration of Cristina Kinsella).

Information Act Request dated August 23, 2024). Seven months later—at the March 2025 Preliminary Injunction hearing (Dkt. 118)—Defendants still had no policies or procedures to identify special education eligible students or notify them of their educational rights. Ex. B (March 2025 Preliminary Injunction Hearing Transcript) (Dkt. 125) 152:11-153:9; 153:23-154:3; 163:23-164:1; 204:2-5; 204:22-205:1. It took this lawsuit to spur Defendants to develop these policies and procedures aimed at complying with the IDEA.

Despite now having policies and procedures to address the IDEA requirements, however, Defendants still are not complying with their obligations to provide a FAPE to eligible students in IDOC's custody. First, Defendants have failed to implement their Administrative Directives to notify eligible students in IDOC's custody of their rights and the procedural safeguards available to them under the IDEA. Second, the existing and projected high school diploma programs provided by IDJJ in IDOC facilities cannot educate all eligible students with disabilities in IDOC's custody, leaving a significant portion of the eligible student population unable to access special education and related services. Third, even for eligible students with disabilities enrolled in the high school diploma programs, Defendants have failed to provide them with special education and related services. Defendants have also failed to convene IEP meetings, conduct evaluations, re-evaluations, and behavioral assessments, or develop new or revised IEPs where necessary. These failures are not discrete or isolated, but are systemic: they do not concern deficiencies in any one individual's IEP or services, or any one individual's entitlement to procedural protections that the IDEA provides; rather, Defendants' "framework and procedures for assessing and placing students in appropriate educational programs" are at issue. *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 114 (2d Cir. 2004).

Dr. Michael Krezmien—a distinguished authority in special education and correctional education—notes these failures in his expert opinion. *See generally* Declaration of Michael P. Krezmien, Ph.D. ("Krezmien Decl."), attached hereto as Exhibit C. In forming his opinion, Dr. Krezmien conducted an extensive review of factual materials and scholarly research pertaining to Defendants' failures to provide special education and related services in IDOC. This review encompassed, among other sources, information received from Defendants' counsel delineating the status of high school diploma programs in IDOC facilities, IDOC's and IDJJ's Administrative Directives, federal guidance documents, public reports by IDOC and IDJJ, published research and articles, stipulated facts from the due process hearings for Messrs. Hebert and Monroe, and the declarations of Plaintiffs and a putative class member submitted herewith. *See* Ex. C, Krezmien Decl. ¶ 12.

> **A.    Based on Information Provided by Plaintiffs and Their Experiences, Defendants Are Not Providing Legally-Required Notice of Available Procedural Safeguards to Students With Disabilities in IDOC's Custody.**

The IDEA requires IDJJ's District 428 to notify students with disabilities of their rights and the procedural safeguards available to them under the IDEA at least once every school year and at specific trigger points. *See* disc. *supra* at 5. IDJJ has not done so. Since the March 2025 Preliminary Injunction hearing, in collaboration with Plaintiffs' counsel, IDJJ and IDOC have devised policies and procedures designed to address the IDEA's procedural requirements, *see generally* Ex. D, IDOC and IDJJ Administrative Directives, but the agencies are not implementing critical components of those Directives. To date, IDJJ and IDOC have not provided ***any*** Plaintiffs—each of whom entered IDOC with an IEP in place—with ***any*** form of notice of their

rights and protections under the IDEA as is required by law.[5]  Because IDJJ and IDOC are not notifying individuals with disabilities of their rights and available procedural safeguards (such as the right to receive a prior written notice if IDJJ proposes to change their educational placement), such individuals do not know they have federal protections under the IDEA, and are unaware of their rights to special education and related services.

**B.**  **Defendants' Current and Projected High School Diploma Programs Cannot Educate All Students With Disabilities.[6]**

As of October 29, 2025, IDJJ had launched a high school diploma program in six IDOC facilities.  *See* Ex. 1 to Mem. Ex. HH (Email from Defendants' counsel to Plaintiffs' counsel dated

---

[5] *See, e.g.*, Ex. E, Hebert Decl. ¶ 8; Ex. F, Monroe Decl. ¶ 8; Ex. G, Gonzalez Decl. ¶ 8; Ex. H, Moffett Decl. ¶ 9; Ex. I, Garcia Decl. ¶ 8; Ex. J, Brown Decl. ¶ 9; Ex. K, Herring Decl. ¶ 10; Ex. L, Hopkins Decl. ¶ 10; Ex. M, Hendrix Decl. ¶ 7; Ex. N, Longstreet Decl. ¶ 8; Ex. O, Tompkin Decl. ¶ 10; Ex. P, Johnson Decl. ¶ 9; Ex. Q, Nichols Decl. ¶ 8; Ex. R, Garza Decl. ¶ 8; Ex. S, Dugans Decl. ¶¶ 10-11; Ex. T, Davis Decl. ¶ 8; Ex. U, Evans Decl. ¶ 10; Ex. V, Melton Decl. ¶ 9; Ex. W, Broomfield Decl. ¶ 9; Ex. X, Pickens Decl. ¶ 8; Ex. Y, Harris Decl. ¶ 7.

[6] On November 14, 2025, undersigned counsel submitted a FOIA request to IDJJ for information regarding the status of high school programming and special education in IDOC facilities.  Ex. II (Declaration of Rachel Shapiro) ¶ 3.  On November 21, 2025, the IDJJ FOIA officer invoked the five-day statutory extension and requested until December 3, 2025 to respond.  *Id.* ¶ 4.  On December 2, 2025, the FOIA officer asked undersigned counsel whether the agency could have until December 17, 2025 to respond.  *Id.* ¶ 5.  Undersigned counsel requested that the FOIA officer send responsive information as it became available and agreed to an extension until December 8, 2025.  *Id.*  Having not received anything on December 8, 2025, undersigned counsel reached out on December 9, 2025 asking for a status update—at which point the response was six days overdue.  *Id.* ¶ 6.  The FOIA officer responded on December 10, 2025 that they were still working on the request without providing any additional information.  *Id.* ¶ 7.  On December 11, 2025, undersigned counsel called the FOIA officer, who again stated that they were working on the response without providing any additional information.  *Id.* ¶ 8.  On the same day, undersigned counsel requested assistance from Defendants' counsel in facilitating the receipt of the requested information.  *Id.*  Defendants' counsel represented that they do not represent the agencies in connection with FOIA requests, but agreed to pass along the request.  *Id.*  Undersigned counsel then followed up again with IDJJ's FOIA officer on December 15, 2025 and escalated the issue to IDJJ's General Counsel on the same day.  *Id.* ¶ 9.  IDJJ's General Counsel wrote back on December 16, 2025, stating that the FOIA team was working on the response and hoped to complete the request by the end of the week.  *Id.* ¶ 10.  On December 19, 2025—hours before Plaintiffs' deadline to file the instant motion—IDJJ responded to the FOIA request.  *Id.* ¶ 11.  Plaintiffs' counsel has not had the opportunity to fully review the information IDJJ provided and may seek leave to supplement the record once that review is complete.

October 29, 2025). These programs collectively had the capacity to accommodate 240 students, including both general education students and those with disabilities. *See id.*

In addition to the six existing programs, a program with a maximum capacity of sixteen students should have launched at Lawrence Correctional Center on November 12, 2025, though by Defendants' own admission, that program still has not launched as of November 20, 2025. *See* Ex. 1 to Mem. Ex. HH (Email from Defendants' counsel to Plaintiffs' counsel dated October 29, 2025); Mem. of Law in Support of Mot. to Dismiss at 8 (Dkt. 147) (the number of facilities with a high school diploma program would "be seven soon"). Menard Correctional Center should also house a program for sixteen students, but nine months after the March 2025 Preliminary Injunction hearing, the program still has not launched, and Defendants have not provided an anticipated start date for this program. Ex. 1 to Mem. Ex. HH (Email from Defendants' counsel to Plaintiffs' counsel dated October 29, 2025).

As of October 29, 2025, Defendants had identified 227 students who entered IDOC with an IEP. *See id.* Of those 227 students, Defendants stated that 129 had expressed an interest in enrolling in the high school diploma program, and 65 of those students were enrolled in a high school diploma program. *See id.* Defendants have not explained why only 65 students with disabilities have been enrolled. As the eligible student population grows (either as a result of Defendants' continued identification of eligible students, or as more students with an IEP enter IDOC custody), the lack of a defined strategy to meet this demand will widen the gap between program capacity and student need, lengthening wait times, increasing age-outs before graduation, and continuing to deprive students with disabilities of their IDEA rights.

**C.  Based on Information Provided by Plaintiffs and Their Experiences, Defendants Are Not Holding IEP Meetings, Conducting Evaluations, Re-evaluations, Behavioral Assessments, or Developing or Revising IEPs.**

As the LEA, IDJJ's District 428 is required to promptly convene IEP meetings to develop IEPs for eligible students, conduct the necessary evaluations, and implement, review, and revise IEPs where appropriate for eligible students in IDOC's custody. *See* disc. *supra* at 4-6. During their period of eligibility in IDOC, none of the Named Plaintiffs have been invited to participate in any IEP meetings[7] or evaluations, or had any of their IEPs revised.[8] Without an IEP—the central document for students' special education—students cannot receive special education and related services . *See* Ex. C, Krezmien Decl. ¶¶ 23, 41.

**D.  Based on Information Provided by Plaintiffs and Their Experiences, Students Enrolled in the High School Diploma Program Are Not Receiving Special Education and Related Services.**

As of October 29, 2025, 65 students with disabilities were enrolled in an IDJJ-operated high school diploma program in six IDOC facilities. *See* disc. *supra* at 10. However, of the four Named Plaintiffs and one class member who have participated in this program, not one has received any special education and related services.[9] The education they receive is limited to online coursework through Connexus—a digital education platform that does not (and cannot)

---

[7] Mr. Hebert and Mr. Monroe did have their IEP meetings convened, but only as a result of prevailing in the individual due process proceedings and the hearing officers ordering IDJJ to convene such meetings.

[8] *See, e.g.*, Ex. G, Gonzalez Decl. ¶ 7; Ex. H, Moffett Decl. ¶¶ 7-8; Ex. I, Garcia Decl. ¶ 7; Ex. J, Brown Decl. ¶¶ 7-8; Ex. K, Herring Decl. ¶¶ 7-8; Ex. L, Hopkins Decl. ¶¶ 6-7; Ex. M, Hendrix Decl. ¶ 6; Ex. N, Longstreet Decl. ¶ 7; Ex. O, Tompkin Decl. ¶¶ 8-9; Ex. P, Johnson Decl. ¶¶ 7-8; Ex. Q, Nichols Decl. ¶¶ 9-10; Ex. R, Garza Decl. ¶ 7; Ex. S, Dugans Decl. ¶¶ 7-8; Ex. T, Davis Decl. ¶ 7; Ex. U, Evans Decl. ¶¶ 8-9; Ex. V, Melton Decl. ¶¶ 7-8; Ex. W, Broomfield Decl. ¶¶ 7-8; Ex. X, Pickens Decl. ¶ 7; Ex. Y, Harris Decl. ¶ 6.

[9] *See, e.g.*, Ex. H, Moffett Decl. ¶ 17; Ex. J, Brown Decl. ¶ 18; Ex. P, Johnson Decl. ¶ 14; Ex. W, Broomfield Decl. ¶ 12; Ex. Z, Sidney Decl. ¶ 11.

deliver special education.[10]  *See* Ex. C, Krezmien Decl. ¶¶ 33-34.  Although there are teachers in the classroom, they do not teach and only answer questions when they arise.[11]  This reactive approach falsely assumes that students with disabilities can identify, formulate, and voice the right questions at the right time, and such students are deprived of the explicit, direct instruction they need to access the curriculum and make meaningful progress towards obtaining content area skills and knowledge.  Ex. C, Krezmien Decl. ¶¶ 20, 36-37.  Further, none of these individuals have been invited to participate in an IEP meeting.[12]  Similarly, none of them have participated in any evaluations or behavioral assessments.[13]  As a result, they are not receiving ***any*** form of special education and related services in class.  *See* Ex. C, Krezmien Decl. ¶ 44.  In addition, based on information provided by Plaintiffs and their experiences, students in these programs who receive a disciplinary write-up and are subsequently placed in segregation are not even allowed to attend school.[14]  *See id.* ¶¶ 42-43.

Access to a high school credit-bearing program is ***not*** the same as receiving special education and related services.  Ex. C, Krezmien Decl. ¶ 21.  Defendants cannot meet their IDEA requirements simply by giving students with disabilities access to credit-bearing high school courses.  *See id.* ¶¶ 17, 21.  In sum, Defendants continue to deny special education eligible students

---

[10] *See, e.g.*, Ex. H, Moffett Decl. ¶ 13; Ex. J, Brown Decl. ¶ 15; Ex. P, Johnson Decl. ¶ 14; Ex. W, Broomfield Decl. ¶ 11; Ex. Z, Sidney Decl. ¶ 11.

[11] *See, e.g.*, Ex. H, Moffett Decl. ¶ 16; Ex. J, Brown Decl. ¶ 16; Ex. P, Johnson Decl. ¶ 14; Ex. W, Broomfield Decl. ¶ 11; Ex. Z, Sidney Decl. ¶ 11.

[12] *See, e.g.*, Ex. H, Moffett Decl. ¶ 7; Ex. J, Brown Decl. ¶ 7; Ex. P, Johnson Decl. ¶ 7; Ex. W, Broomfield Decl. ¶ 7; Ex. Z, Sidney Decl. ¶ 7.

[13] *See, e.g.*, Ex. H, Moffett Decl. ¶ 8; Ex. J, Brown Decl. ¶ 8; Ex. P, Johnson Decl. ¶ 8; Ex. W, Broomfield Decl. ¶ 8; Ex. Z, Sidney Decl. ¶ 7.

[14] *See, e.g.*, Ex. W, Broomfield Decl. ¶ 10.

a FAPE by failing to evaluate them, convene IEP meetings, develop IEPs, and provide special education and related services (including during segregation).

### E. ISBE Has Failed its Supervisory Duties as the SEA to Ensure the Provision of a FAPE by IDJJ and IDOC.

As the SEA for Illinois, ISBE is responsible for ensuring that LEAs and other responsible public entities provide a FAPE to students with disabilities. *See* 34 C.F.R. § 300.600; 20 U.S.C. § 1412(a)(11)(A); 34 C.F.R. § 300.149. This includes the responsibility to oversee and monitor special education services in IDOC and to ensure incarcerated individuals with disabilities receive the educational support to which they are entitled under the IDEA. 23 Ill. Admin. Code § 226.230. When ISBE identifies noncompliance with the IDEA by LEAs, it must take steps to correct that noncompliance as quickly as possible. 34 C.F.R. § 300.600. Further, if ISBE determines that an LEA in Illinois is unable to establish and maintain programs that meet the requirements of the IDEA, then ISBE must provide special education and related services directly to children with disabilities who belong to that LEA's resident school district. *See* 20 U.S.C. § 1413(g)(1)(B). With respect to IDOC's and IDJJ's failures as set forth above, ISBE has likewise failed in its duty to monitor the delivery of special education services and the provision of procedural protections to individuals with disabilities in IDOC's custody, and has failed to take action to remedy the noncompliance by IDJJ and IDOC. *See* Ex. C, Krezmien Decl. ¶¶ 46-47.

### III. IDOC'S ADULT EDUCATION AND VOCATIONAL SERVICES FAIL TO MAKE REASONABLE ACCOMMODATIONS FOR STUDENTS WITH DISABILITIES

Even though IDJJ operates a limited-capacity high school diploma program at a select few IDOC facilities, these programs do not address the needs of students with disabilities due to a systemic lack of special education supports and services in these programs. *See* disc. *supra* at 11-13. As a result, students with disabilities enrolled in these programs remain at a significant disadvantage as compared to their general education peers because they remain deprived of the

services and accommodations critical to their educational development. *See* Ex. C, Krezmien Decl. ¶ 61.

Students with disabilities ***not*** enrolled in existing high school education programs face an even more uphill battle. Unless they are enrolled in the high school diploma program in one of the six IDOC facilities (which do not offer special education and related services), their only educational opportunities while in IDOC's custody are the Adult Basic Education ("ABE") and General Educational Development ("GED") programs—neither of which is designed to meet the needs of students with disabilities. *See* Ex. C, Krezmien Decl. ¶¶ 48-49. Further, individuals in ABE courses can be dropped for disability-related reasons, such as failure to complete work above their comprehension level, which makes students with disabilities less likely to complete the program than their general education peers. *See id.* ¶ 48. With respect to GED programming, access is contingent upon achieving a requisite score on the Test of Adult Basic Education ("TABE"). *See id.* ¶ 49. But without the necessary special education support and accommodations, students with disabilities are at a significant disadvantage as compared to their general education peers, and they struggle to obtain the required TABE score to test out of the ABE program. *See id.* ¶ 49.

Consequently—despite the existence of some educational programs within IDOC—students with disabilities do not have the same access to, and cannot enjoy the same benefits from, those programs as their non-disabled peers, due to Defendants' failure to provide special education and related services. *See id.* ¶¶ 49-50. Similarly, IDOC also offers post-secondary vocational training and college programs to adults in its custody, but entry into these post-secondary programs typically requires either a high school diploma or a GED certificate, both of which remain out of reach to most of the Named Plaintiffs and the Plaintiff Class due to the lack of special education

support.  *See id.* ¶ 51.   No Named Plaintiff has been able to participate in vocational programming or training since entering IDOC.[15]   The majority of these individuals cannot participate in such programming because they have not yet finished high school or a high school equivalent.[16]

## IV.   DEFENDANTS' FAILURES HARM NAMED PLAINTIFFS AND THE PLAINTIFF CLASS.

Defendants' failures inflict serious, long-term damage on students with disabilities.   These students are entitled to a FAPE, yet Defendants' conduct hinders their ability to learn effectively, make meaningful academic progress, and earn a high school diploma or a GED.  *See id.* ¶ 61.   This denial of their rights also blocks their access to post-secondary vocational training or college programs that require such qualifications.  *See id.* ¶¶ 51, 61.

Research consistently shows that the provision of educational services in correctional facilities leads to improved academic outcomes, diploma attainment, improved economic outcomes, and a reduced risk of recidivism post-release.  *See id.* ¶¶ 18, 52.   Conversely, the inability to obtain a high school diploma is linked to negative economic outcomes and severely diminished quality of life.  *See id.* ¶ 53.   These adverse outcomes can also increase the likelihood of future criminal behavior, raising the risk of reincarceration.  *See id.* ¶ 53.

Named Plaintiffs are individuals who want to avoid this fate by furthering their educational development, and each understands that without a high school diploma, they will face difficulties

---

[15] *See, e.g.*, Ex. E, Hebert Decl. ¶ 22; Ex. F, Monroe Decl. ¶ 19; Ex. G, Gonzalez Decl. ¶ 12; Ex. H, Moffett Decl. ¶ 20; Ex. I, Garcia Decl. ¶ 13; Ex. J, Brown Decl. ¶ 19; Ex. K, Herring Decl. ¶ 16; Ex. L, Hopkins Decl. ¶ 15; Ex. M, Hendrix Decl. ¶ 12; Ex. N, Longstreet Decl. ¶ 14; Ex. O, Tompkin Decl. ¶ 18; Ex. P, Johnson Decl. ¶ 16; Ex. Q, Nichols Decl. ¶ 16; Ex. R, Garza Decl. ¶ 13; Ex. S, Dugans Decl. ¶ 14; Ex. T, Davis Decl. ¶ 13; Ex. U, Evans Decl. ¶ 15; Ex. V, Melton Decl. ¶ 16; Ex. W, Broomfield Decl. ¶ 15; Ex. X, Pickens Decl. ¶ 13; Ex. Y, Harris Decl. ¶ 13.

[16] *See, e.g.*, Ex. E, Hebert Decl. ¶ 22; Ex. F, Monroe Decl. ¶ 19; Ex. G, Gonzalez Decl. ¶ 12; Ex. H, Moffett Decl. ¶ 20; Ex. I, Garcia Decl. ¶ 13; Ex. K, Herring Decl. ¶ 16; Ex. L, Hopkins Decl. ¶ 15; Ex. M, Hendrix Decl. ¶ 12; Ex. N, Longstreet Decl. ¶ 14; Ex. P, Johnson Decl. ¶ 16; Ex. Q, Nichols Decl. ¶ 16; Ex. R, Garza Decl. ¶ 13; Ex. S, Dugans Decl. ¶ 14; Ex. T, Davis Decl. ¶ 13; Ex. U, Evans Decl. ¶ 15; Ex. V, Melton Decl. ¶ 16; Ex. W, Broomfield Decl. ¶ 15; Ex. X, Pickens Decl. ¶ 13; Ex. Y, Harris Decl. ¶ 13.

obtaining employment when they re-enter society.[17]  In turn, obtaining employment is critical for these individuals to achieve long-term economic stability, which they must do to become self-sufficient contributors to society.  *See id.* ¶ 70.

## V.  ADMINISTRATIVE DUE PROCESS COMPLAINTS DID NOT AND CANNOT ACHIEVE SYSTEMIC CHANGE.

Defendants' ongoing violations are systemic in nature, and can only be remedied through systemic relief, which cannot be achieved through the administrative remedies available to individuals in IDOC's custody who have been harmed by Defendants' violations.  Illustratively, two Named Plaintiffs, Exodus Hebert and Antonio Monroe, brought due process complaints to request systemic and individual relief to obtain special education and related services.  In both cases, the assigned Impartial Hearing Officer ("IHO") found that these individuals had been denied a FAPE while in IDOC's custody, but found that the IHO lacks jurisdiction to order systemic relief.

### A.      Exodus Hebert's Due Process Proceedings

On May 31, 2023, Mr. Hebert filed an administrative due process complaint, requesting both individual and systemic relief.  Ex. AA, E. Hebert Due Process Request.  In pre-hearing motions, the IHO denied the request for systemic relief on the basis that he can only order individual relief.  *See* Ex. BB, E. Hebert Hearing Officer Order (striking claims for systemic relief as outside of administrative hearing officer's jurisdiction).  The due process hearing took place from April 16 through April 19, 2024.  Ex. CC, E. Hebert Due Process Decision at 1.

---

[17] *See, e.g.*, Ex. E, Hebert Decl. ¶¶ 21-25; Ex. F, Monroe Decl. ¶¶ 18-21; Ex. G, Gonzalez Decl. ¶¶ 14-17; Ex. H, Moffett Decl. ¶¶ 19-21; Ex. I, Garcia Decl. ¶¶ 14-16; Ex. J, Brown Decl. ¶ 19; Ex. K, Herring Decl. ¶¶ 15-19; Ex. L, Hopkins Decl. ¶¶ 14-18; Ex. M, Hendrix Decl. ¶¶ 11-15; Ex. N, Longstreet Decl. ¶¶ 16-18; Ex. Q, Tompkin Decl. ¶ 18; Ex. P, Johnson Decl. ¶¶ 15-20; Ex. Q, Nichols Decl. ¶¶ 14-18; Ex. R, Garza Decl. ¶¶ 12-16; Ex. S, Dugans Decl. ¶¶ 13-14; Ex. T, Davis Decl. ¶¶ 12-16; Ex. U, Evans Decl. ¶¶ 14-18; Ex. V, Melton Decl. ¶ 19; Ex. W, Broomfield Decl. ¶¶ 14-17; Ex. X, Pickens Decl. ¶¶ 14-16; Ex. Y, Harris Decl. ¶¶ 12-16.

On May 6, 2024, the IHO found that Mr. Hebert had been denied a FAPE while in IDOC's custody. *Id.* at 22. The IHO ordered that IDJJ convene an IEP meeting, provide 108 hours of counseling services, and provide 1,120 hours of compensatory special education services, among other relief. *Id.* at 28-30. Despite this Order, to date—***nineteen months*** later— Defendants have still not developed a new IEP for Mr. Hebert,[18] and Mr. Hebert has only received limited tutoring but no special education and related services. Ex. E, Hebert Decl. ¶¶ 16-20. Moreover, even if Defendants had provided the specific remedies required by the IHO's order, that individualized relief would not remedy Defendants' systemic failures to comply with IDEA.

### B. Antonio Monroe's Due Process Proceedings

On May 31, 2023, Mr. Monroe filed an administrative due process complaint, requesting both individual and systemic relief. Ex. EE, A. Monroe Due Process Request. In pre-hearing motions, the IHO denied the request for systemic relief on the basis that he can only order individual relief. Ex. FF, A. Monroe Hearing Officer Order (striking claims for systemic relief as outside of administrative hearing officer's jurisdiction). The due process hearing took place in May 2024. Ex. GG, A. Monroe Due Process Decision at 1.

On May 21, 2024, the IHO found in favor of Mr. Monroe, ordering IDOC and IDJJ to convene an IEP meeting, develop an IEP that included certain services, and provide Mr. Monroe with compensatory education, among other relief. *Id.* at 19-23. Despite this Order, to date— almost ***nineteen months*** later—Mr. Monroe has not received any special education and related services. Ex. F, Monroe Decl. ¶¶ 15, 17.

---

[18] Mr. Hebert's latest IEP is dated March 7, 2018. Ex. DD, Signature Page of E. Hebert IEP Conference Summary Report dated March 7, 2018.

## **LEGAL STANDARD**

A party seeking a preliminary injunction must establish that: (1) its claim is likely to succeed on the merits; (2) absent preliminary relief, it is likely to suffer irreparable harm prior to final resolution of its claims; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *See United States v. NCR Corp.*, 688 F.3d 833, 837 (7th Cir. 2012). To establish a likelihood of success on the merits, a party does not need to show that it "definitely will win the case," nor must it establish proof by a preponderance of evidence—instead, this showing "normally includes a demonstration of how the applicant proposes to prove the key elements of the case." *Nat'l Inst. of Fam. & Life Advocates v. Raoul*, 685 F. Supp. 3d 688, 699 (N.D. Ill. 2023).

If the moving party satisfies each of these requirements, the court must then "weigh[] the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *USA-Halal Chamber of Com., Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 433 (N.D. Ill. 2019). Courts in the Seventh Circuit employ a "sliding scale approach" to balance these factors: the "more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Cook Cnty. v. Wolf,* 962 F.3d 208, 234 (7th Cir. 2020). The Court's analysis of the "public interest" factor focuses on "[the] effects that granting or denying the preliminary injunction would have on the public." *See id.*

## **ARGUMENT**

## I.    **DEFENDANTS' ADOPTION OF ADMINISTRATIVE DIRECTIVES DO NOT MOOT THE NEED FOR A PRELIMINARY INJUNCTION**

As a threshold matter, despite the amended Administrative Directives and the creation of a high school diploma program within six IDOC facilities, Named Plaintiffs' request for a

preliminary injunction is not moot. As discussed, Defendants have failed to comply with their obligations under the IDEA to: (i) notify special education eligible students of their rights under the IDEA, (ii) convene IEP meetings and conduct evaluations, re-evaluations, and behavioral assessments, (iii) develop or revise IEPs as necessary; and (iv) provide special education and related services. *See* disc. *supra* at 8-13. Critically, Defendants have not provided any special education and related services to those enrolled in the high school diploma program. *See* disc. *supra* at 11-13. Therefore, Defendants continue to engage in the challenged conduct, *i.e.*, failures to provide special education and related services under the IDEA, and to provide accommodations and modifications under the ADA and the Rehabilitation Act.

Further, even if Defendants had started to address the conduct challenged in the instant motion, that would not moot the need for a preliminary injunction. It is well-established that voluntary cessation of the challenged conduct moots a dispute only if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Public Interest Law Initiative v. Public Interest Law Institute*, 2011 WL 13555749, at *2 (N.D. Ill. Mar. 10, 2011) (*quoting Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000)). "That much holds for governmental defendants no less than for private ones." *Chang v. Cnty of Siskiyou*, 746 F. Supp. 3d 808, 821 (E.D. Cal. 2024) (*quoting Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024)). Defendants bear the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur." *Public Interest Law Initiative*, 2011 WL 13555749, at *2. Given that Defendants ignored their responsibilities under the IDEA and other federal laws for almost twenty years, and that it took this lawsuit for them to adopt written policies aimed at addressing those responsibilities (critical aspects of which still are not being implemented), Defendants cannot carry their burden. *See, e.g.*,

19

*Kahn v. Cleveland Clinic Fla. Hosp.*, 2019 WL 3290542, at *10 (S.D. Fla. July 22, 2019) (denying motion to dismiss where defendant failed to show that the allegedly wrongful behavior, which was defendant's "long-standing practice," could not reasonably be expected to recur even if temporarily rectified).

## II.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

Defendants' failures to implement the IDEA's procedural protections and provide any special education and related services to students in IDOC's custody are systemic and ongoing. These failures: (i) deprive Named Plaintiffs and the Plaintiff Class of a FAPE in violation of the IDEA and Illinois law, and their respective implementing regulations; and (ii) constitute discrimination on the basis of disability in violation of Section 504 of the Rehabilitation Act, the Americans with Disabilities Act (ADA), and their respective implementing regulations.

These failures cannot be cured on a student-by-student basis.  This is not a case about Defendants' failure to provide procedural protections to one specific student, or their failure to accommodate one particular student's unique educational needs—it is about Defendants' wholesale failures affecting all special education eligible students  in IDOC's custody.  *See Easter v. D.C.*, 128 F. Supp. 3d 173, 178 (D.D.C. 2015) (systemic claims are "precisely the type of issue that cannot be addressed on a student-by-student basis during Due Process Hearings, but [are] better addressed by seeking injunctive relief in federal court[.]").  Accordingly, these violations can only be remedied by an injunction issued by this Court requiring Defendants to implement their Administrative Directives to ensure that a FAPE is provided to members of the following subclasses:

> **Current and Future Eligible Subclass:** All persons who as of the filing of the Complaint or at any time thereafter (1) are or will be in the legal custody of IDOC; (2) entered IDOC custody prior to the expiration of their special education eligibility and are eligible to

receive special education; (3) had an IEP from their last education placement at the time they entered IDOC custody and had not yet received their high school diploma; and (4) are being or will be denied special education services and a high school education while in the legal custody of IDOC.

**Formerly Eligible Subclass:** All persons who as of June 1, 2006 or at any time thereafter (1) are in the legal custody of IDOC; (2) entered IDOC custody prior to the expiration of their special education eligibility and are now past the age of eligibility; (3) had an IEP from their last educational placement and had not yet received their high school diploma; and (4) have been denied special education services and a high school education while in the legal custody of IDOC.

### A. Defendants Are Systemically Violating Plaintiffs' Right to a FAPE Under the IDEA and Illinois Law.

The substantive rights, procedural protections, and remedies available to students with disabilities under the IDEA apply with equal force to students in adult correctional facilities. *See Donnell C. v. Ill. State Bd. Of Educ.,* 829 F. Supp. 1016, 1020 (N.D. Ill. 1993). The IDEA is a cornerstone of educational equity in the United States, ensuring that every child with disabilities is entitled to a FAPE. This law is designed not only to address their current educational requirements but also to "prepare them for further education, employment and independent living." 20 U.S.C. § 1400(d)(1)(A). To fulfill this mission, school districts and other responsible state entities like Defendants must comply with both the procedural and substantive mandates of the IDEA, thereby guaranteeing a FAPE for each student. *See Bd. Of Educ. Of the Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. V. Rowley*, 458 U.S. 176, 205-06 (1982) ("Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large

21

measure of participation at every stage of the administrative process … as it did upon the measurement of the resulting IEP against a substantive standard.").

A plaintiff may establish a claim for deprivation of a FAPE in violation of the IDEA based on substantive deficiencies, procedural defects, or both. *See Fam. & Child.'s Ctr., Inc. v. Sch. City of Mishawaka*, 13 F.3d 1052, 1060 (7th Cir. 1994) ("[T]he IDEA conditions federal assistance upon a state's compliance with the substantive and procedural goals of the Act."); *see also Rowley*, 458 U.S. at 205-06 (similar). Here, Defendants are responsible for both substantive and procedural violations of their obligations to provide a FAPE.

### 1. Defendants Have Violated the Procedural Requirements of the IDEA, Thereby Depriving Special Education Eligible Students of a FAPE.

To prevail on a deprivation of a FAPE claim based on a procedural violation, a student must establish: (1) that the public agency responsible for providing educational services to the student with a disability failed to comply with the IDEA's identification, evaluation, or placement procedures or with the IDEA's procedural safeguards; and (2) that the procedural inadequacy impeded the student's right to a FAPE; significantly impeded the student's opportunity to participate in the decision-making process regarding the provision of a FAPE to the student; or caused a deprivation of an educational benefit. *See* 20 U.S.C. §1415(f)(3)(E)(ii); 34 C.F.R. §300.513(a)(2); *see also Kevin T. v. Elmhurst Cmty. Sch. Dist. No. 205*, 2002 WL 433061, at *5 (N.D. Ill. Mar. 20, 2002) ("[P]rocedural inadequacies that result in the loss of educational opportunity … result in the denial of a [FAPE]."). Actionable procedural violations of this kind may include: (i) failure to provide notification of the procedural safeguards available to an eligible student with a disability (*see Middleton v. D.C.*, 312 F. Supp. 3d 113, 135-36 (D.D.C. 2018) (finding procedural violations of the IDEA resulting in denial of a FAPE where parent never received a prior written notice of her child's placement decision or any opportunity to

meaningfully participate in that decision)); (ii) failure to convene IEP meetings (*see Knable ex rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 765-67 (6th Cir. 2001) (failure to convene an IEP conference constitutes a procedural violation of the IDEA resulting in the denial of a FAPE because the parents were denied a meaningful opportunity to participate in the IEP process)); and (iii) failure to conduct an initial evaluation or periodic reevaluation (*see Artichoker v. Todd Cnty. Sch. Dist.*, 2016 WL 7489033, at *6-*7 (D.S.D. Dec. 29, 2016) (affirming hearing officer's decision that the district violated the IDEA by failing to provide an evaluation)).

A school district does not comply with the IDEA merely by having written policies and procedures that comport with the IDEA. A school district must ***implement*** those policies and procedures to provide a FAPE to eligible students. *See D.L. v. District of Columbia*, 194 F. Supp. 3d 30, 84 (D.D.C. 2016) ("The relevant provisions of the IDEA do not merely require that the District issue policies. Rather, they require that the District ***implement policies and procedures*** that ensure identification and provision of a FAPE, timely evaluation, timely eligibility determination, and smooth and effective transition of preschool-age children with disabilities.") (emphasis added).

As discussed above, since the March 2025 preliminary injunction hearing, IDOC and IDJJ have developed policies and procedures aimed at addressing the IDEA's procedural requirements. *See* disc. *supra* at 8. However, the agencies have not implemented key provisions of these Administrative Directives, violating the procedural requirements of the IDEA and substantively depriving the Named Plaintiffs and the Plaintiff Class of a FAPE. Specifically, based on information provided by Plaintiffs and their experiences, the agencies are not providing a written notification to eligible students of their rights and available procedural safeguards, in violation of the IDEA and IDJJ's Administrative Directives. *See* disc. *supra* at 8-9; *see also* 20 U.S.C. §

1415(d); IDJJ Administrative Directives at 04.10.105 ¶ II.F.6(A).  If eligible students do not know their rights under the IDEA, they cannot participate in decision-making about their education (such as the IEP process), challenge agency decisions concerning their education, or seek remedies for violations of their rights.  *See, e.g.*, *Smith v. Henderson*, 944 F. Supp. 2d 89, 104 (D.D.C. 2013) ("children with disabilities and their parents are guaranteed procedural safeguards, allowing them to participate in writing in the individualized education program and to bring administrative and then judicial challenges if anything goes awry.").  Additionally, based on information provided by Plaintiffs and their experiences, Defendants are not convening IEP meetings, conducting evaluations or behavioral assessments, or developing new IEPs.[19]  *See* disc. *supra* at 11.  Each failure eviscerates the IDEA's mechanisms for identifying special education needs, setting goals, assigning services, and monitoring progress.  A student cannot receive a FAPE without these processes implemented.  *See* Ex. C, Krezmien Decl. ¶¶ 17, 21.

> **2.    Defendants' Failure to Provide Special Education Eligible Students with Any Special Education and Related Services Substantively Violates the IDEA.**

To establish a substantive IDEA violation, a student may demonstrate that he or she has been deprived of services in accordance with his or her IEP.  *See, e.g.*, *Vincent v. Kenosha Unified Sch. Dist.*, 2012 WL 4470515, at *10 (E.D. Wis. Sept. 26, 2012) (affirming an administrative law judge's decision that "a 'special needs child who is not provided services in accordance with an IEP is, by definition, denied a FAPE.'"); *T.H.*, 564 F.Supp.3d at 1359 (failure "to implement substantial or significant provisions of the child's IEP" violated the IDEA).  Although IEPs are

---

[19] Defendants have convened IEP meetings for two Named Plaintiffs, Mr. Hebert and Mr. Monroe, but only because the impartial hearing officer in Mr. Hebert's and Mr. Monroe's due process cases ordered Defendants to do so.  Ex. E, Hebert Decl. ¶¶ 15-16; Ex. F, Monroe Decl. ¶¶ 11-12, 15.  And Defendants still have not developed IEPs for Messrs. Hebert and Monroe, even after the IEP meetings, despite having been ordered to do so nineteen months ago.  Ex. E, Hebert Decl. ¶ 16; Ex. F, Monroe Decl. ¶¶ 12, 15; Ex. CC, E. Hebert Due Process Decision at 28; Ex. GG, A. Monroe Due Process Decision at 22.

individualized to meet the unique needs of each student, ***all*** IEPs by definition impose obligations on the responsible public agencies to provide some form of special education services. 20 U.S.C. § 1414(d)(1)(A)(i)(IV) (defining an IEP as "a written statement for each child with a disability . . . that includes . . . a statement of the special education and related services . . . to be provided to the child"). Therefore, a ***wholesale*** failure to provide ***any*** special education and related services is necessarily a denial of a FAPE, and thus a substantive IDEA violation. *See, e.g.*, *Nein v. Greater Clark Cnty. Sch. Corp.*, 95 F. Supp. 2d 961, 963 (S.D. Ind. 2000) (summary judgment for plaintiff where defendant "failed to meet its obligation under the IDEA to provide minimally adequate educational services" to the plaintiff.); *Wade v. Dist. of Columbia*, 322 F. Supp. 3d 123, 134 (D.D.C. 2018) (holding that the student was denied a FAPE when the District of Columbia Public Schools failed to provide "more than one-fourth of the specialized instruction hours prescribed by [the student's] IEP"); *Edward M.-R. v. Dist. of Columbia*, 660 F. Supp. 3d 82, 101 (D.D.C. 2023) ("if [a student with disability] does not receive services and therapy in the manner prescribed by the IEP, she is denied a FAPE."); *see also J.S.*, 386 F.3d at 115 (affirming district court's order denying motion to dismiss where challenge was not to the content of IEPs but rather to the school district's "***total failure to prepare and implement*** Individualized Education Programs") (emphasis added).

As discussed above, based on information provided by Plaintiffs and their experiences, Defendants are not providing special education services to special education eligible students in IDOC's custody, and none of the Named Plaintiffs have received ***any*** form of special education services while in IDOC's custody. *See* disc. *supra* at 11-13. Likewise, IDOC and IDJJ have also failed to provide the related services that the IDEA mandates must accompany special education (*e.g.*, speech-language pathology and audiology services, interpreting services, psychological

25

services, physical and occupational therapy), which are necessary for students to obtain an education.  *See* Ex. C, Krezmien Decl. ¶ 27; *see also* 20 U.S.C. § 1401(26)(A); 34 C.F.R. § 300.34.

Accordingly, Defendants have violated the IDEA on both procedural and substantive grounds.  Plaintiffs and the Plaintiff Class are thus likely to prevail on the merits of their IDEA claims for deprivation of a FAPE.

**B.  Defendants' Actions Systematically Discriminate Against Students with Disabilities in Violation of the ADA and the Rehabilitation Act.**

Defendants' failures as described above also discriminate against Plaintiffs and the Plaintiff Class on the basis of disability, in violation of the ADA and Section 504 of the Rehabilitation Act ("Section 504").

Section 504 requires that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from participation, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  Section 504 further states that, "[f]or the purposes of this section, the term 'program or activity' means all of the operations of . . . a local educational agency . . . or other school system[.]" 29 U.S.C. § 794(b)(2)(B).  The regulations relating to Section 504 provide that "[a] recipient that operates a public elementary or secondary education program or activity shall provide a free appropriate public education to each qualified handicapped" student in its jurisdiction.  34 C.F.R. § 104.33(a).

Similarly, the ADA prohibits exclusion on the basis of disability and discrimination against individuals with disabilities in major areas of public life, including public services, programs, and activities under Title II.  *See* 42 U.S.C. § 12132 ("Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity,

or be subjected to discrimination by any such entity.").  It was designed to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," 42 U.S.C. § 12101(b)(1), and address both intentional discrimination and discrimination that is the product of "thoughtlessness and indifference." *Lacy v. Cook Cnty.*, 897 F.3d 847, 863 (7th Cir. 2018) (certifying class of detainees and affirming permanent injunction under the ADA).  These protections apply to individuals with disabilities in both adult and juvenile jails and prisons.  *See id.*; 29 U.S.C. § 749; 28 C.F.R. § 35.152(a).  The ADA requires reasonable accommodations and modifications to ensure that people with disabilities are not excluded from or denied the benefits of the programs of a public entity.  42 U.S.C.§ 12132; 28 C.F.R. § 35.130(b)(7).

The elements of claims under Title II of the ADA and Section 504 of the Rehabilitation Act are nearly identical.  *Silk v. City of Chicago*, 194 F.3d 788, 798 n.6 (7th Cir. 1999) ("A plaintiff who brings claims under both the ADA and the Rehabilitation Act, statutes that are nearly identical, can prove his claims by presenting either direct or indirect evidence of discrimination.").[20]  Plaintiffs must show they (1) are "a qualified individual with a disability;" (2) were denied the "benefits of the services, programs, or activities" of Defendants or were "otherwise subjected to discrimination by such an entity;" and (3) "that the denial or discrimination [was] by reason of" their disability.  *Lacy*, 897 F.3d at 853.  Plaintiffs satisfy each element.

*First*, Plaintiffs are qualified individuals with a disability.  An individual with a disability is "[one who has] a physical or mental impairment that substantially limits one or more [of their] major life activities," including, among other things, learning.  42 U.S.C. § 12102(1)(A).  A

---

[20] The Rehabilitation Act "includes as an additional element the receipt of federal funds [by the public agency], which all states accept for their prisons." *Jaros v. Ill. Dep't of Corrs.*, 684 F.3d 667, 671 (7th Cir. 2012).

"qualified individual with a disability" is "an individual with a disability who … meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Each Named Plaintiff and Plaintiff Class member is a qualified individual, as they are entitled to a high school education by law and have been identified as individuals with disabilities under the IDEA. *See Andrew M. v. Del. Cnty. Off. of Mental Health & Mental Retardation*, 490 F.3d 337, 350 (3d Cir. 2007) ("When a state fails to provide a disabled child with a free and appropriate public education, it violates the IDEA. However, it also violates the [Rehabilitation Act] because it is denying a disabled child a guaranteed education merely because of the child's disability.").

*Second*, Defendants have failed to provide reasonable accommodations to allow Plaintiffs access to educational programming. Reasonable accommodations "must be sufficient to provide a disabled person with an 'equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement' as a person who is not disabled." *See Pierce v. Dist. of Columbia*, 128 F. Supp. 3d 250, 266 (D.D.C. 2015) (citing *Alexander v. Choate*, 469 U.S. 287, 305 (1985)). As stated above, IDJJ provides high school credit-bearing programming in six IDOC facilities, but only about half of the special education eligible students identified as of October 9, 2025 had been enrolled, and not one Named Plaintiffs enrolled in the high school diploma program has received any special education and related services. *See* disc. *supra* at 11-13. Without special education, students with disabilities enrolled in the high school diploma programs cannot access the curriculum, earn credits at pace, master course content, or make meaningful progress toward their high school degree. *See* Ex. C, Krezmien Decl. ¶¶ 20-21, 50. In short, without required special education services, the current programming is effectively inaccessible to many students with disabilities, substantially diminishing any potential educational benefit.

For students with disabilities not enrolled in the high school diploma programs, their only path to a high school diploma equivalent is to participate in the GED program and pass the GED exam. However, access to this programming is contingent upon attaining a certain score on the TABE, which is much harder for students with disabilities to achieve than their general education peers in the absence of accommodations. *See id.* ¶ 49. As a result, the only educational option for these students is to participate in ABE, which itself does not provide special education instruction or accommodations. *See id.* ¶ 48. These students are also locked out of the vocational training and post-secondary courses that IDOC offers because access to almost all of those programs requires a high school diploma or a GED. *Id.* ¶ 51. Thus, because of Defendants' failures to make reasonable accommodations, Named Plaintiffs and the Plaintiff Class do not have an equal opportunity to obtain the benefits of Defendants' educational programming or reach the same level of achievement as their general education peers. *See Pierce*, 128 F. Supp. 3d at 272 (finding that the District violated the ADA and Section 504 of the Rehabilitation Act where prison officials failed to provide individuals in custody with accommodations that were necessary for them to access the prison's programs and services).

*Third*, the denial of educational programming impacts Named Plaintiffs and members of the Plaintiff Class because of their status as individuals with disabilities. The Seventh Circuit has held that public entities have an independent duty to take "prophylactic" steps to accommodate individuals with disabilities when necessary to avoid discrimination. *Wisc. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006). In other words, a plaintiff can "demonstrate discrimination on the basis of disability by [the City's] refusal to make a reasonable accommodation." *Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 848 (7th Cir. 1999) ("[I]t is possible to demonstrate discrimination on the basis of disability by a defendant's

refusal to make a reasonable accommodation."); *Hirsch v. Will Cnty., Illinois,* 2021 WL 1531602, at *3 (N.D. Ill. Apr. 19, 2021) (same).  Plaintiffs, as evidenced by their IEPs, need specialized education to learn.  Defendants' failure to provide special education and related services and other reasonable accommodations puts Plaintiffs at a disadvantage vis-à-vis their non-disabled peers, and hamstrings their ability to learn, obtain a high school diploma or its equivalent, and attain the qualifications needed to access Defendants' other programming.  *See* Ex. C, Krezmien Decl. ¶¶ 21, 61.  General education students do not face these same barriers.

In sum, Defendants have deprived Plaintiffs of the benefits of educational programming on the basis of disability, in violation of the ADA and Section 504.  *See Love v. Westville Corr. Ctr.*, 103 F.3d 558, 561 (7th Cir. 1996).  Plaintiffs are thus likely to prevail on the merits of their ADA and Section 504 claims.

## C. Plaintiffs Have Standing.

In order to prevail on the merits of their claims, Plaintiffs must also demonstrate their Article III standing, which requires them to show that (1) they have suffered an "injury in fact that is: (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) the injury is "fairly traceable to the challenged action" of Defendants; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

Plaintiffs satisfy each of these requirements.  First, each Plaintiff has been injured in fact by Defendants' denial of a FAPE in violation of the IDEA, and by their discriminatory conduct on the basis of disability in violation of the Rehabilitation Act and the ADA.  *See* disc. *supra* at 20-30.  Second, that injury is more than "fairly traceable" to Defendants' actions.  Defendants are collectively responsible under federal and state law for ensuring the provision of special education services and a high school education to Plaintiffs, and the harm Plaintiffs have suffered because of

the deprivation of those services thus flows directly from Defendants' inactions. *See* disc. *supra* at 3-6. Finally, Plaintiffs' injuries will clearly be redressed by a favorable decision. Each Named Plaintiff and member of the Plaintiff Class either is currently eligible for special education services (the "Currently Eligible Subclass") or was eligible during their incarceration in IDOC (the "Formerly Eligible Subclass") and suffered the consequences of Defendants' violations. The relief sought in this Motion is specifically constructed to enjoin, and remedy the effects of, Defendants' injurious conduct against both groups by requiring Defendants to provide the IDEA-required procedural protections and special education and related services to Named Plaintiffs and the Plaintiff Class.

## III.  PLAINTIFFS WILL SUFFER IRREPARABLE INJURY IF A PRELIMINARY INJUNCTION IS NOT GRANTED

To establish an inadequate remedy at law, Plaintiffs must show that they are likely to suffer irreparable harm absent the issuance of temporary and injunctive relief. *See Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. Of Educ.*, 858 F.3d 1034, 1044-45 (7th Cir. 2017). Without this Court's swift action, Plaintiffs will wait a long time for the special education to which they are legally entitled. For some, it will be too late. They will have exited IDOC's custody and be left with diminished employment prospects and an increased likelihood of recidivism. *See* Ex. C, Krezmien Decl. ¶¶ 53, 61. Named Plaintiffs and the Plaintiff Class do not seek monetary damages in this action. Instead, they seek to attain legally-mandated procedural protections and special education and related services, thereby better positioning themselves to seek gainful employment, provide for themselves, and contribute to society upon their release.

The IDEA recognizes that for individuals with disabilities, special education services are necessary to achieve these goals. Courts have repeatedly held that the failure to provide an appropriate education in violation of the IDEA constitutes irreparable harm, for which there is no

adequate remedy at law. *See, e.g.*, *Tindell v. Evansville-Vanderburgh Sch. Corp.*, 2010 WL 557058, at *5 (S.D. Ind. Feb. 10, 2010) (recognizing that "[t]he denial of a FAPE over an extended period does constitute harm, and the longer that denial continues, the more irreparable it becomes.") (internal citation omitted); *see also R.F. v. Bd. of Educ.*, 2022 WL 1805099, at *11 (N.D. Ill. June 2, 2022) ("A deprivation of meaningful education services to a child who depends on them constitutes an irreparable injury[.]" ); *Massey,* 400 F. Supp. 2d at 75 (finding that the failure to provide a free appropriate public education (FAPE) constituted irreparable harm).

Time is of the essence for Named Plaintiffs and the Plaintiff Class. Without the services and accommodations mandated under the IDEA, these individuals will not receive a FAPE and will lose critical years in their educational development. *See* Ex. C, Krezmien Decl. ¶¶ 31-32. Each day these individuals spend without the benefit of necessary educational supports and accommodations is a day lost in their educational development. *See Skelly v. Brookfield LaGrange Park Sch. Dist. 95*, 968 F. Supp. 385, 396 (N.D. Ill. 1997) (plaintiff will "suffer irreparably from the lack of educational and social interaction . . . Such lost days could not be replaced in [plaintiff's] educational life."). And each passing day without services consumes scarce eligibility time and permanently reduces a student's chance to graduate before aging out. Defendants' actions illustrate the real possibility of delay in providing education to Plaintiffs and the Plaintiff Class.

The harms that Plaintiffs and the Plaintiff Class will face, absent relief, are severe and long-lasting. Deprivation of special education services is likely to result in negative academic outcomes for these individuals, which will pose detrimental long-term effects on their well-being and quality of life. *See* Ex. C, Krezmien Decl. ¶¶ 52-53, 61. These effects will, in turn, increase their likelihood of negative economic outcomes, thereby increasing their likelihood of recidivism and

reincarceration. *See id.* ¶¶ 52-53, 61. No form of legal relief is an adequate remedy for those injuries, which Plaintiffs will continue to suffer if they do not receive swift injunctive relief.

## IV.     THE BALANCE OF HARMS WEIGHS IN PLAINTIFFS' FAVOR

Once a party seeking a preliminary injunction demonstrates a reasonable likelihood of success on the merits, irreparable harm, and the inadequacy of legal remedies, a court will then "weigh[ ] the balance of harm to the parties if the injunction is granted or denied." *See Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012). The strength of the moving party's likelihood of success on the merits affects the balance of harm, in that "[t]he more likely it is that the moving party will win its case on the merits, the less the balance of harms need weigh in its favor." *Id.* Given the strength of Plaintiffs' likelihood of success on the merits, the Court can quickly dispense with this factor. Nevertheless, the balance of harm weighs heavily in Plaintiffs' favor.

As described above, "[t]he failure to provide an appropriate education is a serious harm." *Massey v. D.C.*, 400 F. Supp. 2d 66, 75 (D.D.C. 2005); *see also R.F.*, 2022 WL 1805099, at \*11. Absent the requested preliminary injunctive relief, Named Plaintiffs and the Plaintiff Class will lose critical time in their educational development, which is likely to result in serious negative outcomes to their employment prospects, well-being, and quality of life, even increasing their likelihood of recidivism. *See* Ex. C, Krezmien Decl. ¶¶ 53, 61.

By contrast, Defendants will suffer no countervailing harm in providing the mandated procedural protections and special education and related services to Named Plaintiffs and the Plaintiff Class because the relief sought will only effectuate rights that Named Plaintiffs and the Plaintiff Class **already have** and that Defendant are **already obligated to provide** under federal and state law. *See United Air Lines, Inc. v. Air Line Pilots Ass'n., Int'l*, 2008 WL 4936847, at \*45 (N.D. Ill. Nov. 17, 2008), *aff'd* 563 F.3d 257 (7th Cir. 2009) (issuing injunction against defendant

"imposes no legally cognizable harm on [the defendant], because it merely requires them to satisfy their existing legal obligations under" federal law); *Haskins v. Stanton*, 794 F.2d 1273, 1277 (7th Cir. 1986) (injunction does not impose any burden on defendants because it merely prevents "the defendants from shirking their responsibilities under" federal law). Public entities' assertions of financial or budgetary hardship do not excuse their obligations under the IDEA, nor do they supply a basis for resisting injunctive relief that would enforce those obligations. *See Massey*, 400 F. Supp. 2d at 75 ("While this Court is sensitive to the budgetary pressures facing any public school district, [the District of Columbia Public Schools] cannot be allowed to violate the IDEA and then plead immunity to sanctions because of its financial situation."). Named Plaintiffs and the Plaintiff Class do not ask Defendants to do any more than what they are ***already required to do*** under federal and state law, and any purported harm Defendants may cite will pale in comparison to the harm Named Plaintiffs and the Plaintiff Class will suffer if the injunction is denied.

## V. THE PUBLIC INTEREST WOULD BE SERVED BY A PRELIMINARY INJUNCTION.

Finally, the Court must evaluate whether granting the preliminary injunction would be in the public interest. *Planned Parenthood of Ind.*, 699 F.3d at 972. Here, the public interest decisively favors a preliminary injunction mandating that Defendants fulfill their statutory obligations under the IDEA. Indeed, "[t]he public interest lies in the proper enforcement of the IDEA and in securing the due process rights of special education students and their parents provided by statute." *See R.F.*, 2022 WL 1805099, at *11. Furthermore, ensuring the provision of special education and related services to eligible incarcerated students enhances their prospects for economic stability upon release from IDOC. This, in turn, reduces their likelihood of criminal recidivism, *see* Ex. C, Krezmien Decl. ¶¶ 18, 52-53, 61, thereby serving the public interest.

## **CONCLUSION**

Defendants have failed to implement policies, procedures, and practices to ensure that Plaintiffs and the Plaintiff Class receive the special education and related services to which they are entitled under the IDEA and Illinois law and have discriminated against them in violation of the Rehabilitation Act and the ADA. Without this Court's swift intervention, Named Plaintiffs and the Plaintiff Class will continue to suffer the serious educational consequences resulting from Defendants' deprivation of this necessary educational support. Accordingly, this Court should issue a preliminary injunction, in the form of the Proposed Order, requiring Defendants to immediately implement their policies to: (i) notify eligible students of their rights and the procedural protections available to them under the IDEA; (ii) convene IEP meetings and conduct evaluations, re-evaluations, and behavioral assessments; and (iii) develop or revise new IEPs as appropriate and necessary.

*/s/ Johanna Spellman*

Johanna Spellman (ARDC No. 6293851)
johanna.spellman@lw.com
Terra Reynolds (ARDC No. 6278858)
terra.reynolds@lw.com
Zeyu Zhao (ARDC No. 6342779)
richard.zhao@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Olga Pribyl (ARDC No. 6190672)
olga@equipforequality.org
Sujatha Jagadeesh Branch (ARDC No. 6350756)
sujatha@equipforequality.org
Rachel Shapiro (ARDC No. 6290735)
Rachel@equipforequality.org
Alexandra Kuske (ARDC No. 6336210)
Alexandra@equipforequality.org
Brianna Hill (ARDC No. 6336043)
brianna@equipforequality.org
EQUIP FOR EQUALITY
20 N. Michigan Avenue, Suite 300
Chicago, IL 60602
Telephone: (312) 341-0022
Facsimile: 312-800-0912

*Attorneys for Plaintiffs and the Plaintiff Class*